Benjamin Konop (OH Bar No. 0073458)
Benjamin.Konop@cfpb.gov
(202) 435-7265
John Thompson (NM Bar No. 139788)
John.Thompson@cfpb.gov
(202) 435-7270
Bureau of Consumer Financial Protection
1700 G Street, NW
Washington, DC 20552

## UNITED STATES DISTRICT COURT
## DISTRICT OF UTAH

| | |
|---|---|
| Bureau of Consumer Financial Protection | Case Number:   2:19cv00877 DB |
| Petitioner, | |
| v. | **DECLARATION OF** |
| Center for Excellence in Higher Education | **BENJAMIN KONOP** |
| Respondent. | |

## DECLARATION OF BENJAMIN KONOP IN SUPPORT OF
## PETITION TO ENFORCE CIVIL INVESTIGATIVE DEMAND

Pursuant to 28 U.S.C. §1746, I, Benjamin Konop, declare as follows:

1.     I am a Senior Litigation Counsel in the Office of Enforcement at the Bureau

   of Consumer Financial Protection (Bureau) in Washington, D.C.

2.      I am the lead attorney on a nonpublic Bureau investigation concerning

        possible violations of § 1036 of the Consumer Financial Protection Act of

        2010 (CFPA), 12 U.S.C. §§ 5531, 5536.

3.      I am authorized to execute this declaration and verify the facts that are set

        forth in the Bureau's Petition to Enforce Civil Investigative Demand. The

        facts set forth in this declaration are based on my personal knowledge or

        information made known to me in the course of my official duties.

4.      On April 12, 2019, the Bureau issued a Civil Investigative Demand (CID) to

        Eric Juhlin, Registered Agent for the Center for Excellence in Higher

        Education (CEHE) at 4021 S 700 E, Suite 400, Salt Lake City, UT 84107,

        via certified mail. *See* Ex. A.

5.      The CID required CEHE to designate a company representative to appear

        and give oral testimony at an investigative hearing on May 21, 2019 in Salt

        Lake City, UT, where CEHE is located.

6.      The CID sought testimony about CEHE's private student-loan program and

        litigation disputes since the beginning of 2012.

7.      On April 26, 2019, the parties met and conferred by telephone to discuss and

        attempt to resolve all issues regarding CEHE's compliance with the

        Bureau's request.

8.     During the meet and confer call, CEHE objected that the Bureau's request

       was too broad because it sought information going back to 2012, and that the

       date set for the investigational hearing did not give CEHE enough time to

       prepare a witness.

9.     On May 1, 2019, the Bureau sent CEHE a letter that modified the CID by

       rescheduling the date for a company representative to give oral testimony at

       an investigative hearing to June 11, 2019. *See* Ex. B.

10.    Following CEHE's receipt of the modification letter, I conferred with

       CEHE's counsel several times by telephone to discuss compliance with the

       CID. These discussions did not resolve disagreements regarding CEHE's

       obligations. CEHE refused to produce a witness unless the Bureau would

       limit the scope of the examination, which the Bureau did not agree to.

11.    On May 21, 2019, CEHE filed with the Bureau an administrative petition to

       set aside or modify the CID (Petition). *See* Ex. C.

12.    On August 18, 2019, the Bureau's Director issued a Decision and Order,

       denying the Petition in its entirety. The Order directed CEHE to comply with

       the CID dated April 12, 2019, as modified by the letter of May 1, 2019, and

       to provide oral testimony at a time and location to be specified by

Enforcement staff, or at another mutually agreeable time and location arranged with Enforcement staff. *See* Ex. D.

13.   On September 19, 2019, the Bureau sent a letter to CEHE, via overnight courier and certified mail, rescheduling the date to provide oral testimony to October 11, 2019. *See* Ex. E. Around the same time, I contacted counsel for CEHE and offered to limit the scope of the examination by eliminating the Bureau's request for information regarding litigation in which CEHE had been a party if CEHE would agree to appear and testify about the colleges' private student-loan program.

14.   On October 7, 2019, CEHE sent a letter to the Bureau's Director asking for reconsideration of the denial of its Petition. This letter made clear that CEHE would not comply with the Bureau's CID without a court order. *See* Ex. F.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on 11 / 8 , 2019.

Benjamin Konop

# Exhibit A

Bureau of Consumer Financial Protection

# Civil Investigative Demand

**To**  Center for Excellence in Higher Education
Eric Juhlin, Registered Agent
4021 S 700 E, Suite 400
Salt Lake City, UT 84107

This demand is issued pursuant to Section 1052 of the Consumer Financial Protection Act of 2010 and 12 C.F.R. Part 1080 to determine whether there is or has been a violation of any laws enforced by the Bureau of Consumer Financial Protection.

---

## Action Required (choose all that apply)

☑  **Appear and Provide Oral Testimony**

| Location of Investigational Hearing | Date and Time of Investigational Hearing |
|---|---|
| U.S. Attorney's Office District of Utah 111 South Main Street, Suite 1800 Salt Lake City, UT 84111 | May 21, 2019 at 10:00am |
| | **Bureau Investigators** Benjamin Konop John Thompson |

☐  Produce Documents and/or Tangible Things, as set forth in the attached document, by the following date _____

☐  Provide Written Reports and/or Answers to Questions, as set forth in the attached document, by the following date _____

---

**Notification of Purpose Pursuant to 12 C.F.R. § 1080.5**

The purpose of this investigation is to determine: (1) whether colleges or associated persons are offering to extend credit, extending credit, or providing financial-advisory services to students; (2) whether these persons, in connection with offering to extend credit, extending credit, or providing financial-advisory services, have misrepresented the true nature of a financing program or enrolled students in a financing program without their knowledge or consent in a manner that is deceptive, unfair, or abusive, in violation of §§ 1031 and 1036 of the Consumer Financial Protection Act of 2010, 12 U.S.C. §§ 5531, 5536; and (3) whether Bureau action to obtain legal or equitable relief would be in the public interest.

---

| Custodian / Deputy Custodian | Bureau Counsel |
|---|---|
| Jeffrey Paul Ehrlich/Maria Ardike Bureau of Consumer Financial Protection 1700 G Street, NW Washington, DC 20552 | Benjamin Konop John Thompson |

| Date Issued 04/12/2019 | Signature **Jeffrey Paul Ehrlich** | Digitally signed by Jeffrey Paul Ehrlich Date: 2019.04.12 11:03:52 -04'00' |
|---|---|---|
| | Name / Title   Jeffrey Paul Ehrlich, Deputy Enforcement Director | |

---

**Service**

The delivery of this demand to you by any method prescribed by the Consumer Financial Protection Act of 2010, 12 U.S.C. § 5562, is legal service. If you fail to comply with this demand, the Bureau may seek a court order requiring your compliance.

**Travel Expenses**

Request a travel voucher to claim compensation to which you are entitled as a witness before the Bureau pursuant to Section 1052 of the Consumer Financial Protection Act of 2010, 12 U.S.C. § 5562.

**Right to Regulatory Enforcement Fairness**

The Bureau is committed to fair regulatory enforcement. If you are a small business subject to Small Business Administration standards, you have a right to contact the Small Business Administration's National Ombudsman at 1-888-REGFAIR (1-888-734-3247) or www.sba.gov/ombudsman regarding the fairness of the compliance and enforcement activities of the agency. You should understand, however, that the National Ombudsman cannot change, stop, or delay a federal agency enforcement action.

**Paperwork Reduction Act**

This demand does not require approval by OMB under the Paperwork Reduction Act of 1980.

# CIVIL INVESTIGATIVE DEMAND FOR
## ORAL TESTIMONY

## I.   Topics for Hearing

1.  The Company's offering and provision of student loans, other forms of financial assistance, or tuition-payment plans to prospective students, including:

    a.  policies, procedures, and practices related to student-loan marketing, underwriting, origination, servicing, or collection;

    b.  the Company's training, supervision, and performance management of its financial aid planners and any other personnel with job duties related to advising students about how to pay for college;

    c.   the Company's policies, procedures, and practices related to the servicing of its student loans and its sale of student debt to third parties; and

    d.  the Company's policies, procedures, and practices related to its furnishing of student-borrower information to consumer-reporting agencies.

2.  Any litigation in which the Company has been a party since January 1, 2012 related to the Company's student loans or other forms of financial assistance to prospective students.

## II.   Definitions

A.   "**CID**" means the Civil Investigative Demand, including the **"Topics for Hearing, Definitions, and Instructions."**

B.   "**Bureau**" means the Bureau of Consumer Financial Protection.

C.   "**Company**" or "**you**" or "**your**" means Center for Excellence in Higher Education, Inc. (CEHE), its parent companies, wholly or partially owned subsidiaries, unincorporated divisions, joint ventures, operations under assumed names, affiliates, and any successors in interest.

D.   "**Deputy Enforcement Director**" refers to a Deputy Assistant Director of the Office of Enforcement.

E.   "**Document**" means any written matter of every type and description, including electronically stored information. "Document" includes any non-identical copy (such as a draft or annotated copy) of another document.

F.   "**Electronically Stored Information**," or "**ESI**," means the complete original and any non-identical copy (whether different from the original because of notations,

different metadata, or otherwise) of any electronically created or stored information, including but not limited to e-mail, instant messaging, videoconferencing, SMS, MMS, or other text messaging, and other electronic correspondence (whether active, archived, unsent, or in a sent or deleted-items folder), word-processing files, spreadsheets, databases, unorganized data, document metadata, presentation files, and sound recordings, regardless of how or where the information is stored, including if it is on a mobile device.

G.     "**Enforcement Director**" refers to the Assistant Director of the Office of Enforcement.

H.     "**Person**" means an individual, partnership, company, corporation, association (incorporated or unincorporated), trust, estate, cooperative organization, or other entity.

## III.   Instructions

A.     **Confidentiality:** This CID relates to a nonpublic, law-enforcement investigation being conducted by the Bureau. We ask that you not disclose the existence of this CID, except to legal counsel, until you have been notified that the investigation has been completed. Premature disclosure of this investigation could interfere with the Bureau's law-enforcement activities.

B.     **Meet and Confer:** As stated in 12 C.F.R. § 1080.6(c), you must contact Enforcement Attorney **Benjamin Konop** at **202-435-7265** as soon as possible to schedule a meeting (telephonic or in person) to discuss your response to the CID. The meeting must be held within **10** calendar days after you receive this CID or before the deadline for filing a petition to modify or set aside the CID, whichever is earlier.

C.     **Document Retention:** Until you are notified otherwise, you are required to retain all documents and other tangible things that you used or relied on in preparation for providing oral testimony in response to this CID. In addition, you must retain, and suspend any procedures that may result in the destruction of, documents, information, or tangible things that are in any way relevant to the investigation, as described in the CID's Notification of Purpose. You are required to prevent the destruction of relevant material irrespective of whether you believe such material is protected from future disclosure or discovery by privilege or otherwise. *See* 18 U.S.C. §§ 1505, 1519.

D.     **Modification of Requests:** If you believe that the scope of the CID can be narrowed consistent with the Bureau's need for information, you are encouraged to discuss such possible modifications, including modifications of the requirements of these instructions, with Enforcement Attorney **Benjamin Konop** at **202-435-7265**. Modifications must be agreed to in writing by the Enforcement Director or a Deputy Enforcement Director. 12 C.F.R. § 1080.6(d).

E.      **Petition for Order Modifying or Setting Aside Demand:** Under
12 U.S.C. § 5562(f) and 12 C.F.R. § 1080.6(e), you may petition the Bureau for an order
modifying or setting aside this CID. To file a petition, you must send it by e-mail to the
Bureau's Executive Secretary at ExecSec@cfpb.gov, copying the Enforcement Director at
Enforcement@cfpb.gov, within 20 calendar days of service of the CID or, if the return
date is less than 20 calendar days after service, before the return date. The subject line
of the e-mail must say "Petition to Modify or Set Aside Civil Investigative Demand." If a
request for confidential treatment is filed, you must file a redacted public petition in
addition to the unredacted petition. All requests for confidential treatment must be
supported by a showing of good cause in light of applicable statutes, rules, Bureau
orders, court orders, or other relevant authority.

F.      **Procedures Governing Hearing:** This CID is issued under section 1052 of the
Consumer Financial Protection Act, 12 U.S.C. § 5562. The taking of oral testimony
pursuant to this CID will be conducted in conformity with that section and
12 C.F.R. §§ 1080.6(a)(4), 1080.7, and 1080.9.

G.      **Scope of Investigational Hearing:** This CID covers information in your
possession, custody, or control, including but not limited to documents in the
possession, custody, or control of your attorneys, accountants, other agents or
consultants, directors, officers, and employees.

H.      **Designation of a Witness:** This CID requires oral testimony from an entity.
Under 12 C.F.R. § 1080.6(a)(4)(ii), you must designate one or more officers, directors,
or managing agents, or designate other persons who consent to testify on your behalf.
The individuals designated must testify about information known or reasonably
available to you, and their testimony is binding on you. Your failure to designate a
witness competent to testify about the topics described will be considered a failure to
comply with this CID.

## § 1081.405   Decision of the Director.

(a) Upon appeal from or upon further review of a recommended decision, the Director will consider such parts of the record as are cited or as may be necessary to resolve the issues presented and, in addition, will, to the extent necessary or desirable, exercise all powers which he or she could have exercised if he or she had made the recommended decision. In proceedings before the Director, the record shall consist of all items part of the record below in accordance with § 1081.306; any notices of appeal or order directing review; all briefs, motions, submissions, and other papers filed on appeal or review; and the transcript of any oral argument held. Review by the Director of a recommended decision may be limited to the issues specified in the notice(s) of appeal or the issues, if any, specified in the order directing further briefing. On notice to all parties, however, the Director may, at any time prior to issuance of his or her decision, raise and determine any other matters that he or she deems material, with opportunity for oral or written argument thereon by the parties.

(b) Decisional employees may advise and assist the Director in the consideration and disposition of the case.

(c) In rendering his or her decision, the Director will affirm, adopt, reverse, modify, set aside, or remand for further proceedings the recommended decision and will include in the decision a statement of the reasons or basis for his or her actions and the findings of fact upon which the decision is predicated.

(d) At the expiration of the time permitted for the filing of reply briefs with the Director, the Office of Administrative Adjudication will notify the parties that the case has been submitted for final Bureau decision. The Director will issue and the Office of Administrative Adjudication will serve the Director's final decision and order within 90 days after such notice, unless within that time the Director orders that the adjudication proceeding or any aspect thereof be remanded to the hearing officer for further proceedings.

(e) Copies of the final decision and order of the Director shall be served upon each party to the proceeding, upon other persons required by statute, and, if directed by the Director or required by statute, upon any appropriate State or Federal supervisory authority. The final decision and order will also be published on the Bureau's Web site or as otherwise deemed appropriate by the Bureau.

## § 1081.406   Reconsideration.

Within 14 days after service of the Director's final decision and order, any party may file with the Director a petition for reconsideration, briefly and specifically setting forth the relief desired and the grounds in support thereof. Any petition filed under this section must be confined to new questions raised by the final decision or final order and upon which the petitioner had no opportunity to argue, in writing or orally, before the Director. No response to a petition for reconsideration shall be filed unless requested by the Director, who will request such response before granting any petition for reconsideration. The filing of a petition for reconsideration shall not operate to stay the effective date of the final decision or order or to toll the running of any statutory period affecting such decision or order unless specifically so ordered by the Director.

## § 1081.407   Effective date; stays pending judicial review.

(a) Other than consent orders, which shall become effective at the time specified therein, an order to cease and desist or for other affirmative action under section 1053(b) of the Dodd-Frank Act becomes effective at the expiration of 30 days after the date of service pursuant to § 1081.113(d)(2), unless the Director agrees to stay the effectiveness of the order pursuant to this section.

(b) Any party subject to a final decision and order, other than a consent order, may apply to the Director for a stay of all or part of that order pending judicial review.

(c) A motion for stay shall state the reasons a stay is warranted and the facts relied upon, and shall include supporting affidavits or other sworn statements, and a copy of the relevant portions of the record. The motion shall address the likelihood of the movant's success on appeal, whether the movant will suffer irreparable harm if a stay is not granted, the degree of injury to other parties if a stay is granted, and why the stay is in the public interest.

(d) A motion for stay shall be filed within 30 days of service of the order on the party. Any party opposing the motion may file a response within five days after receipt of the motion. The movant may file a reply brief, limited to new matters raised by the response, within three days after receipt of the response.

(e) The commencement of proceedings for judicial review of a final decision and order of the Director does not, unless specifically ordered by the Director or a reviewing court, operate as a stay of any order issued by the Director. The Director may, in his or her discretion, and on such terms as he or she finds just, stay the effectiveness of all or any part of an order pending a final decision on a petition for judicial review of that order.

Dated: June 4, 2012.

**Richard Cordray,**

*Director, Bureau of Consumer Financial Protection.*

[FR Doc. 2012–14061 Filed 6–28–12; 8:45 am]

**BILLING CODE 4810–AM–P**

## BUREAU OF CONSUMER FINANCIAL PROTECTION

**12 CFR Part 1080**

**[Docket No.: CFPB–2011–0007]**

**RIN 3170–AA03**

## Rules Relating to Investigations

**AGENCY:** Bureau of Consumer Financial Protection.

**ACTION:** Final rule.

**SUMMARY:** After considering the public comments on its interim final rule for the Rules Relating to Investigations, the Bureau of Consumer Financial Protection (Bureau), pursuant to the Dodd-Frank Wall Street Reform and Consumer Protection Act of 2010 (Dodd-Frank Act), is making revisions to its procedures for investigations under section 1052 of the Dodd-Frank Act.

**DATES:** The final rule is effective June 29, 2012.

**FOR FURTHER INFORMATION CONTACT:** Peter G. Wilson, Office of the General Counsel, Consumer Financial Protection Bureau, 1700 G Street NW., Washington, DC 20552, (202) 435–7585.

**SUPPLEMENTARY INFORMATION:**

## I. Background

The Dodd-Frank Wall Street Reform and Consumer Protection Act of 2010 (Dodd-Frank Act) was signed into law on July 21, 2010. Title X of the Dodd-Frank Act established the Bureau of Consumer Financial Protection (Bureau) to regulate the offering and provision of consumer financial products or services under the Federal consumer financial laws. The Dodd-Frank Act transferred to the Bureau the consumer financial protection functions formerly carried out by the Federal banking agencies, as well as certain authorities formerly carried out by the Department of Housing and Urban Development (HUD) and the Federal Trade Commission (FTC). As required by section 1062 of the Dodd-Frank Act, 12 U.S.C. 5582, the Secretary of the Treasury selected a

designated transfer date and the Federal banking agencies' functions and authorities transferred to the Bureau on July 21, 2011.

The Dodd-Frank Act authorizes the Bureau to conduct investigations to ascertain whether any person is or has been engaged in conduct that, if proved, would constitute a violation of any provision of Federal consumer financial law. Section 1052 of the Dodd-Frank Act sets forth the parameters that govern these investigations. 12 U.S.C. 5562. Section 1052 became effective immediately upon transfer on July 21, 2011 and did not require rules to implement its provisions. On July 28, 2011, the Bureau issued the interim final rule for the Rules Relating to Investigations (Interim Final Rule) to provide parties involved in Bureau investigations with clarification on how to comply with the statutory requirements relating to Bureau investigations.

## II. Summary of the Final Rule

Consistent with section 1052 of the Dodd-Frank Act, the final rule for the Rules Relating to Investigations (Final Rule) describes a number of Bureau policies and procedures that apply in an investigational, nonadjudicative setting. Among other things, the Final Rule sets forth (1) the Bureau's authority to conduct investigations, and (2) the rights of persons from whom the Bureau seeks to compel information in investigations.

Like the Interim Final Rule, the Final Rule is modeled on investigative procedures of other law enforcement agencies. For guidance, the Bureau reviewed the procedures currently used by the FTC, the Securities and Exchange Commission (SEC), and the prudential regulators, as well as the FTC's recently proposed amendments to its nonadjudicative procedures. In light of the similarities between section 1052 of the Dodd-Frank Act and section 20 of the Federal Trade Commission Act (FTC Act), 15 U.S.C. 41 *et seq.,* the Bureau drew most heavily from the FTC's nonadjudicative procedures in constructing the rules.

The Final Rule lays out the Bureau's authority to conduct investigations before instituting judicial or administrative adjudicatory proceedings under Federal consumer financial law. The Final Rule authorizes the Director, the Assistant Director of the Office of Enforcement, and the Deputy Assistant Directors of the Office of Enforcement to issue civil investigative demands (CIDs) for documentary material, tangible things, written reports, answers to questions, or oral testimony. The

demands may be enforced in district court by the Director, the General Counsel, or the Assistant Director of the Office of Enforcement. The Final Rule also details the authority of the Bureau's investigators to conduct investigations and hold investigational hearings pursuant to civil investigative demands for oral testimony.

Furthermore, the Final Rule sets forth the rights of persons from whom the Bureau seeks to compel information in an investigation. Specifically, the Final Rule describes how such persons should be notified of the purpose of the Bureau's investigation. It also details the procedures for filing a petition for an order modifying or setting aside a CID, which the Director is authorized to rule upon. And it describes the process by which persons may obtain copies of or access to documents or testimony they have provided in response to a civil investigative demand. In addition, the Final Rule describes a person's right to counsel at investigational hearings.

## III. Legal Authority

As noted above, section 1052 of the Dodd-Frank Act outlines how the Bureau will conduct investigations and describes the rights of persons from whom the Bureau seeks information in investigations. This section became effective immediately upon the designated transfer date, July 21, 2011, without any requirement that the Bureau first issue procedural rules. Nevertheless, the Bureau believes that the legislative purpose of section 1052 will be furthered by the issuance of rules that specify the manner in which persons can comply with its provisions.

Section 1022 of the Dodd-Frank Act authorizes the Director to prescribe rules as may be necessary or appropriate for the Bureau to administer and carry out the purposes and objectives of Federal consumer financial laws and to prevent evasion of those laws. 12 U.S.C. 5512. The Bureau believes that the Final Rule will effectuate the purpose of section 1052 and facilitate compliance with Bureau investigations.

## IV. Overview of Public Comments on the Interim Final Rule

After publication of the Interim Final Rule on July 28, 2011, the Bureau accepted public comments until September 26, 2011. During the comment period, the Bureau received seven comments. Two of the comments were submitted by individual consumers. Four trade associations and a mortgage company also submitted comments. The trade associations represent credit unions, banks, consumer credit companies, members of

the real estate finance industry, and other financial institutions.

The commenters generally support the Interim Final Rule. Most sections of the Interim Final Rule received no comment and are being finalized without change. The comments did, however, contain questions and recommendations for the Bureau.

Several of the commenters expressed concern that the Interim Final Rule appeared to provide staff-level Bureau employees with unchecked authority to initiate investigations and issue CIDs, or that the Interim Final Rule otherwise did not provide sufficient oversight for particular actions.

A number of commenters expressed concern about sections of the Interim Final Rule that relate to CIDs. One trade association recommended that a statement of ''the purpose and scope'' of a Bureau investigation—in addition to a notification of the nature of the conduct constituting the alleged violation under investigation and the applicable provisions of law—be included in CIDs. A commenter suggested that the Bureau require a conference between CID recipients and the Assistant Director of the Office of Enforcement to negotiate the terms of compliance with the demand. Three of the trade associations noted concern with the statement that extensions of time are disfavored for petitions to modify or set aside CIDs. Two commenters questioned who would rule on such petitions without a confirmed Director. One trade association commented that witnesses should be permitted to object to questions demanding information outside of the scope of the investigation during an investigational hearing pursuant to a CID for oral testimony.

A number of commenters expressed concern about maintaining the confidentiality of demand material, sharing information with other State and Federal agencies, and the duties of the custodians of those materials. For example, one trade association and the mortgage company recommended that investigations should remain confidential in all circumstances. Another trade association asserted that the Bureau is not permitted to engage in joint investigations with State attorneys general.

The Bureau reviewed all of the comments on its Interim Final Rule thoroughly and addresses the significant issues they raise herein. Although most sections of the Interim Final Rule received no comment and are being finalized without change, the Bureau has made several changes to the Interim Final Rule based on the comments it received. The comments and these

changes are discussed in more detail in parts V and VI of the **SUPPLEMENTARY INFORMATION**.

## V. General Comments

Some comments on the Interim Final Rule were not directed at a specific section but rather concerned issues of general applicability. The Bureau addresses those comments in this section and addresses comments related to specific sections of the Interim Final Rule in part VI.

One commenter asked the Bureau to specify who would rule on petitions to set aside or modify CIDs while the Bureau lacked a Director. This commenter also asked who would review requests to the Attorney General under § 1080.12 for authority to immunize witnesses and to order them to testify or provide other information. The President appointed a Director of the Bureau on January 4, 2012. Therefore, both questions posed by this commenter are moot. The Director or any official to whom the Director has delegated his authority pursuant to 12 U.S.C. 5492(b) will rule on petitions to set aside or modify CIDs. Furthermore, the Bureau has revised § 1080.12 to clarify that only the Director has the authority to request approval from the Attorney General for the issuance of an order immunizing witnesses.

A commenter asserted that section 1052(c)(1) of the Dodd-Frank Act prohibits the Bureau from issuing CIDs after the institution of any proceedings under Federal consumer financial laws, including proceedings initiated by a State or a private party. The commenter argued that a CID should be accompanied by a certification that the demand will have no bearing on any ongoing proceeding. Section 1052(c)(1) provides, in relevant part, that "the Bureau may, before the institution of any proceedings under the Federal consumer financial law, issue in writing, and cause to be served upon such person, a civil investigative demand." The language "before the institution of any proceeding under Federal consumer financial law" refers to the institution of proceedings by the Bureau. It does not limit the Bureau's authority to issue CIDs based upon the commencement of a proceeding by other parties.

Another commenter requested that the Bureau exempt all credit unions from Bureau investigations. The Bureau believes that granting an exemption from the Bureau's enforcement authority through the Final Rule would be inappropriate and that there is an insufficient record to support such an exemption.

A commenter recommended that covered persons be allowed to recover attorneys' fees and costs incurred by defending against an investigation that is shown to be without merit. The Dodd-Frank Act does not provide the right to recover fees and costs by defending against an investigation. Further, as explained below, the Bureau believes that the procedures for petitioning to modify or set aside a CID set forth in § 1080.6(d) of the Interim Final Rule (now 1080.6(e) of the Final Rule) provide sufficient protections to a recipient of a demand it believes lacks merit.

## VI. Section-by-Section Summary

### Section 1080.1   Scope

This section describes the scope of the Interim Final Rule. It makes clear that these rules only apply to investigations under section 1052 of the Dodd-Frank Act. The Bureau received no comment on § 1080.1 of the Interim Final Rule and is adopting it as the Final Rule without change.

### Section 1080.2   Definitions

This section of the Interim Final Rule defines several terms used throughout the rules. Many of these definitions also may be found in section 1051 of the Dodd-Frank Act.

A commenter questioned the breadth of the definition of the term "Assistant Director of the Division of Enforcement." The commenter argued that because that term was defined to include "any Bureau employee to whom the Assistant Director of the Division of Enforcement has delegated authority to act under this part," the Interim Final Rule could give Bureau employees inappropriately broad authority to take certain actions, such as issuing CIDs.

The Bureau has revised the Final Rule in response to these comments. The Final Rule identifies those with authority to take particular actions under each section of the Final Rule. Sections 1080.4 (initiating and conducting investigations) and 1080.6 (civil investigative demands) of the Final Rule clarify that the authority to initiate investigations and issue CIDs cannot be delegated by the identified officials. The Final Rule also changes the defined term "Division of Enforcement" to "Office of Enforcement" to reflect the Bureau's current organizational structure.

### Section 1080.3   Policy as to Private Controversies

This section of the Interim Final Rule states the Bureau's policy of pursuing investigations that are in the public interest. Section 1080.3 is consistent with the Bureau's mission to protect consumers by investigating potential violations of Federal consumer financial law. The Bureau received no comments on § 1080.3 of the Interim Final Rule and is adopting it as the Final Rule without change.

### Section 1080.4   Initiating and Conducting Investigations

This section of the Interim Final Rule explains that Bureau investigators are authorized to conduct investigations pursuant to section 1052 of the Dodd-Frank Act.

A commenter observed that this section of the Interim Final Rule did not explicitly provide a procedure for senior agency officials to authorize the opening of an investigation. The commenter argued that only senior agency officials should decide whether to initiate investigations. The commenter questioned whether staff-level employees could open investigations and issue CIDs without sufficient supervision, and noted that the FTC's analogous rule specifically lists the senior officials to whom the Commission has delegated, without power of redelegation, the authority to initiate investigations.

A commenter also expressed concern that the FTC's analogous rule explicitly provides that FTC investigators must comply with the laws of the United States and FTC regulations. According to the commenter, such language is necessary to ensure that the Bureau complies with the Right to Financial Privacy Act (RFPA) to the extent that statute applies to the Bureau. The commenter also believes that this language is needed to guard against investigations undertaken for what the commenter characterized as the impermissible purpose of aiding State attorneys general or State regulators. The commenter suggested that the Bureau add a statement to this section of the Interim Final Rule similar to the FTC's rule requiring compliance with Federal law and agency regulations.

The Final Rule clarifies that only the Assistant Director or any Deputy Assistant Director of the Office of Enforcement has the authority to initiate investigations. The Bureau has significant discretion to determine whether and when to open an investigation, and the public benefits from a process whereby the Bureau can open and close investigations efficiently. But the Bureau did not intend its rules to be interpreted so broadly as to suggest that any staff-level employee could unilaterally open an investigation or issue a CID. The Final

Rule also provides that Bureau investigators will perform their duties in accordance with Federal law and Bureau regulations.

*Section 1080.5   Notification of Purpose*

This section of the Interim Final Rule specifies that a person compelled to provide information to the Bureau or to testify in an investigational hearing must be advised of the nature of the conduct constituting the alleged violation under investigation and the applicable provisions of law. This section of the Interim Final Rule implements the requirements for CIDs described in section 1052(c)(2) of the Dodd-Frank Act.

Commenters noted that although the Dodd-Frank Act and the FTC Act both require CIDs to state "the nature of the conduct constituting the alleged violation which is under investigation and the provision of law applicable to such violation," the two agencies' implementing regulations on this topic differ. Both agencies' regulations require a statement of the nature of the conduct at issue and the relevant provisions of law, but the FTC rule also requires that the recipient of the CID be advised of "the purpose and scope" of the investigation. Commenters argued that the Bureau should add this phrase to its rule because excluding it would lead to requests for materials outside the scope of an investigation. One commenter argued that only senior agency officials should authorize investigations to ensure that CIDs are relevant to the purpose and scope of the Bureau's investigations.

The language in § 1080.5 of the Interim Final Rule mirrors the language of the Dodd-Frank Act, which provides that "[e]ach civil investigative demand shall state the nature of the conduct constituting the alleged violation which is under investigation and the provision of law applicable to such violation." The Bureau believes that the information covered by this statutory language provides sufficient notice to recipients of CIDs. As discussed above, § 1080.4 (initiating and conducting investigations) of the Final Rule limits the authority to open investigations to the Assistant Director or any Deputy Assistant Director of the Office of Enforcement. Similarly, § 1080.6 of the Final Rule (civil investigative demands) limits the authority to issue CIDs to the Director of the Bureau, the Assistant Director of the Office of Enforcement, and the Deputy Assistant Directors of the Office of Enforcement. Thus, one of these identified officials will review and approve the initiation of all investigations and the issuance of all

CIDs. In addition, to the extent recipients of CIDs consider the demands to be for an unauthorized purpose or outside the scope of the investigation, they will have an opportunity to negotiate the terms of compliance pursuant to § 1080.6(c) of the Interim Final Rule (now § 1080.6(d) of the Final Rule) or to petition to set aside or modify the demand pursuant to § 1080.6(d) of the Interim Final Rule (now § 1080.6(e) of the Final Rule).

The Bureau therefore adopts this section of the Interim Final Rule as the Final Rule without change.

*Section 1080.6   Civil Investigative Demands*

This section of the Interim Final Rule lays out the Bureau's procedures for issuing CIDs. It authorizes the Assistant Director of the Office of Enforcement to issue CIDs for documentary material, tangible things, written reports, answers to questions, and oral testimony. This section of the Interim Final Rule details the information that must be included in CIDs and the requirement that responses be made under a sworn certificate. Section 1080.6 of the Interim Final Rule also authorizes the Assistant Director of the Office of Enforcement to negotiate and approve the terms of compliance with CIDs and grant extensions for good cause. Finally, this section of the Interim Final Rule describes the procedures for seeking an order to modify or set aside a CID, which the Director is authorized to rule upon.

One commenter argued that § 1080.6(a) permits almost any Bureau employee to issue CIDs without sufficient supervision. The commenter stated that this lack of oversight is problematic and does not reflect Congress' intent when it enacted the Act.

Section 1080.6(a) of the Final Rule limits the authority to issue CIDs to the Director, the Assistant Director of the Office of Enforcement, and the Deputy Assistant Directors of the Office of Enforcement. This change to the Final Rule balances the efficiency of the Bureau's investigative process with appropriate supervision and oversight.

A commenter suggested that the Bureau require a conference between the CID recipient and the Assistant Director of the Office of Enforcement within ten days of service of the CID to negotiate and approve the terms of compliance. The commenter envisioned a conference analogous to a discovery planning conference under the Federal Rules of Civil Procedure, during which the parties could discuss requests for information, appropriate limitations on

the scope of requests, issues related to electronically stored information (ESI), issues related to privilege and confidential information, and a reasonable time for compliance. The commenter stated that this type of conference would better ensure prompt and efficient production of material and information related to the investigation.

The Bureau agrees that a conference between the parties within ten calendar days of serving a CID is likely to improve the efficiency of investigations, and § 1080.6(c) of the Final Rule provides for such a conference. The Final Rule does not, however, adopt the suggestion that the Assistant Director of the Office of Enforcement preside over all such conferences.

Several commenters also noted concern with the statement in § 1080.6(d) of the Interim Final Rule disfavoring extensions of time for petitioning for an order modifying or setting aside CIDs. One commenter argued that the 20-day period to file petitions, for which extensions of time are disfavored, is inconsistent with the "reasonable" period of time for compliance with the CID set forth in § 1080.6(a). The commenter also argued that this timeframe leaves a short period for the CID recipient to decide which documents are privileged or otherwise protected and to file a petition articulating privilege and scope objections. Another commenter noted that the analogous FTC rules do not include a provision disfavoring extensions for petitions to modify or set aside a CID. These commenters recommended that the Bureau delete the sentence related to disfavoring extensions. One commenter recommended that the rules be corrected to provide an independent review if a covered person believes a CID is without merit.

Like the Interim Final Rule, the Final Rule includes a provision disfavoring extensions of time for petitions to modify or set aside a CID. The Bureau believes its policy of disfavoring extensions is appropriate in light of its significant interest in promoting an efficient process for seeking materials through CIDs. By disfavoring extensions, the Bureau means to prompt recipients to decide within 20 days whether they intend to comply with the CID. The Final Rule also clarifies that this 20-day period should be computed with calendar days.

The Bureau notes that § 1080.6(d) of the Interim Final Rule (now § 1080.6(e) of the Final Rule) only provides the due date for a petition for an order modifying or setting aside a CID. It does not require recipients to comply fully

with CIDs within 20 days. In addition, the Final Rule provides several options to recipients of CIDs that need additional time to respond. For example, the recipient may negotiate for a reasonable extension of time for compliance or a rolling document production schedule pursuant to § 1080.6(c) of the Interim Final Rule (now § 1080.6(d) of the Final Rule).

Section 1080.6(e) of the Final Rule clarifies that recipients of CIDs should not assert claims of privilege through a petition for an order modifying or setting aside a CID. Instead, when privilege is the only basis for withholding particular materials, they should utilize the procedures set forth in § 1080.8 (withholding requested material) of the Final Rule. Section 1080.6(e) of the Final Rule also lays out the authority of Bureau investigators to provide to the Director a reply to a petition seeking an order modifying or setting aside a CID. Specifically, the Final Rule states that Bureau investigators may provide the Director with a statement setting forth any factual and legal responses to a petition. The Bureau will not make these statements or any other internal deliberations part of the Bureau's public records. Section 1080.6(g) of the Final Rule clarifies that the Bureau, however, will make publicly available both the petition and the Director's order in response. Section 1080.6(g) of the Final Rule also clarifies that if a CID recipient wants to prevent the Director from making the petition public, any showing of good cause must be made no later than the time the petition is filed. The Final Rule also adds a provision clarifying how the Bureau will serve the petitioner with the Director's order.

Finally, the Bureau believes the procedures for petitions to modify or set aside a CID set forth in the Final Rule adequately protect a covered person who believes a CID is without merit, and that an additional independent review is unnecessary.

### Section 1080.7   Investigational Hearings

This section of the Interim Final Rule describes the procedures for investigational hearings initiated pursuant to a CID for oral testimony. It also lays out the roles and responsibilities of the Bureau investigator conducting the investigational hearing, which include excluding unauthorized persons from the hearing room and ensuring that the investigational hearing is transcribed, the witness is duly sworn, the transcript is a true record of the testimony, and the

transcript is provided to the designated custodian.

A commenter argued that the Bureau is not authorized to conduct joint investigations with State attorneys general under the Dodd-Frank Act and, correspondingly, State attorneys general cannot attend an investigational hearing as a representative of an agency with whom the Bureau is conducting a joint investigation. The commenter argued that Congress distinguished between State attorneys general and State regulatory agencies in section 1042 of the Dodd-Frank Act and that State attorneys general are therefore not "agencies" with whom the Bureau can partner. The commenter also asserted that the Bureau cannot share a copy of the transcript of an investigational hearing with another agency without the consent of the witness.

Another commenter argued that representatives of agencies with which the Bureau is conducting a joint investigation may be present at an investigational hearing only with the witness's consent. This commenter stated that the Bureau should recognize in the rules that a witness who does not consent to the presence of a representative of another agency at an investigational hearing should not be presumed guilty.

The Dodd-Frank Act states that the Bureau "may engage in joint investigations and requests for information, as authorized under this title." This statutory language permits the Bureau to engage in joint investigations with State or Federal law enforcement agencies, including State attorneys general, with jurisdiction that overlaps with the Bureau's. The Bureau's disclosure rules also permit the Bureau to share certain confidential information, including investigational hearing transcripts, with Federal or State agencies to the extent the disclosure is relevant to the exercise of an agency's statutory or regulatory authority. *See* 12 CFR 1070.43(b). In addition, neither the Dodd-Frank Act nor the rules require the consent of the witness to permit a representative of an agency with which the Bureau is conducting a joint investigation to be present at the hearing. Consent is required only when people other than those listed in the rule are included.

Thus, the Bureau adopts § 1080.7 of the Interim Final Rule as the Final Rule without change.

### Section 1080.8   Withholding Requested Material

This section of the Interim Final Rule describes the procedures that apply when persons withhold material

responsive to a CID. It requires the recipient of the CID to assert a privilege by the production date and, if so directed in the CID, also to submit a detailed schedule of the items withheld. Section 1080.8 also sets forth the procedures for handling the disclosure of privileged or protected information or communications.

The Bureau received no comment on § 1080.8 of the Interim Final Rule and is adopting it as the Final Rule without substantive change.

### Section 1080.9   Rights of Witnesses in Investigations

This section of the Interim Final Rule describes the rights of persons compelled to submit information or provide testimony in an investigation. It details the procedures for obtaining a copy of submitted documents or a copy of or access to a transcript of the person's testimony. This section of the Interim Final Rule also describes a witness's right to make changes to his or her transcript and the rules for signing the transcript.

Section 1080.9 of the Interim Final Rule lays out a person's right to counsel at an investigational hearing and describes his or her counsel's right to advise the witness as to any question posed for which an objection may properly be made. It also describes the witness's or counsel's rights to object to questions or requests that the witness is privileged to refuse to answer. This section of the Interim Final Rule states that counsel for the witness may not otherwise object to questions or interrupt the examination to make statements on the record but may request that the witness have an opportunity to clarify any of his or her answers. Finally, this section of the Interim Final Rule authorizes the Bureau investigator to take all necessary action during the course of the hearing to avoid delay and to prevent or restrain disorderly, dilatory, obstructionist, or contumacious conduct, or contemptuous language.

A commenter noted that under the Interim Final Rule witnesses could not object during an investigational hearing on the ground that a question was outside the scope of the investigation. The commenter argued that a covered person's inability to raise such objections might allow "a fishing expedition." The commenter recommended amending § 1080.9(b) to allow objections based on scope.

Section 1052(c)(13)(D)(iii) of the Dodd-Frank Act states, in relevant part:

[a]n objection may properly be made, received, and entered upon the record when it is claimed that such person is entitled to

refuse to answer the question on grounds of any constitutional or other legal right or privilege, including the privilege against self-incrimination, but the person shall not otherwise object to or refuse to answer any question, and such person or attorney shall not otherwise interrupt the oral examination.

Thus, to the extent the scope objection was grounded in a witness's constitutional or other legal right, it would be a proper objection.

The Final Rule clarifies that counsel may confer with a witness while a question is pending or instruct a witness not to answer a question only if an objection based on privilege or work product may properly be made. The Final Rule also describes counsel's limited ability to make additional objections based on other constitutional or legal rights. The Final Rule provides that if an attorney has refused to comply with his or her obligations in the rules of this part, or has allegedly engaged in disorderly, dilatory, obstructionist, or contumacious conduct, or contemptuous language during an investigational hearing, the Bureau may take further action, including action to suspend or disbar the attorney from further participation in the investigation or further practice before the Bureau pursuant to 12 CFR 1081.107(c). The Final Rule also includes other nonsubstantive changes, including clarifying that the 30-day period that the witness has to sign and submit his or her transcript should be computed using calendar days.

*Section 1080.10 Noncompliance With Civil Investigative Demands*

This section of the Interim Final Rule authorizes the Director, the Assistant Director of the Office of Enforcement, and the General Counsel to initiate an action to enforce a CID in connection with the failure or refusal of a person to comply with, or to obey, a CID. In addition, they are authorized to seek civil contempt or other appropriate relief in cases where a court order enforcing a CID has been violated.

The Bureau received no comment on § 1080.10 of the Interim Final Rule and is adopting it as the Final Rule without substantive change.

*Section 1080.11 Disposition*

This section of the Interim Final Rule explains that an enforcement action may be instituted in Federal or State court or through administrative proceedings when warranted by the facts disclosed by an investigation. It further provides that the Bureau may refer investigations to appropriate Federal, State, or foreign government agencies as appropriate. This section of the Interim Final Rule

also authorizes the Assistant Director of the Office of Enforcement to close the investigation when the facts of an investigation indicate an enforcement action is not necessary or warranted in the public interest.

One commenter indicated that the Bureau's authority to refer investigations to other law enforcement agencies should be limited to circumstances when it is expressly authorized to do so by the Dodd-Frank Act, an enumerated consumer financial law, or other Federal law, because of potential risks to the confidentiality of the investigatory files.

The Bureau's ability to refer matters to appropriate law enforcement agencies is inherent in the Bureau's authority and is a corollary to the Bureau's statutorily recognized ability to conduct joint investigations. The documentary materials and tangible things obtained by the Bureau pursuant to a CID are subject to the requirements and procedures relating to disclosure of records and information in part 1070 of this title. These procedures for sharing information with law enforcement agencies provide significant and sufficient protections for these materials.

The Bureau has amended § 1080.11 to clarify that the Assistant Director and any Deputy Assistant Director of the Office of Enforcement are authorized to close investigations.

The Bureau adopts § 1080.11 of the Interim Final Rule with the changes discussed above.

*Section 1080.12 Orders Requiring Witnesses To Testify or Provide Other Information and Granting Immunity*

This section of the Interim Final Rule authorizes the Assistant Director of the Office of Enforcement to request approval from the Attorney General for the issuance of an order requiring a witness to testify or provide other information and granting immunity under 18 U.S.C. 6004. The Interim Final Rule also sets forth the Bureau's right to review the exercise of these functions and states that the Bureau will entertain an appeal from an order requiring a witness to testify or provide other information only upon a showing that a substantial question is involved, the determination of which is essential to serve the interests of justice. Finally, this section of the Interim Final Rule describes the applicable rules and time limits for such appeals.

A commenter questioned whether this section of the Interim Final Rule would permit any Bureau employee to request that the Attorney General approve the issuance of an order granting immunity

under 18 U.S.C. 6004 and requiring a witness to testify or provide information. The commenter noted that the Dodd-Frank Act authorizes the Bureau, with the Attorney General's permission, to compel a witness to testify under 18 U.S.C. 6004 if the witness invokes his or her privilege against self-incrimination. The commenter argued that this section should delegate the authority to seek permission to compel testimony to a specific individual to provide accountability and ensure that information is not disclosed to the Attorney General in a manner that violates the Right to Financial Privacy Act. The commenter noted that the FTC's analogous rule specifically lists the senior agency officials who are authorized to make such requests to the Attorney General, and identifies a liaison officer through whom such requests must be made. The commenter also suggested that § 1080.12(b) of the Interim Final Rule, which provides that the Assistant Director's exercise of this authority is subject to review by ''the Bureau,'' specify who will conduct this review.

The Final Rule provides that only the Director of the Bureau has the authority to request approval from the Attorney General for the issuance of an order requiring a witness to testify or provide other information and granting immunity under 18 U.S.C. 6004. This change addresses the concern that requests for witness immunity would be made without oversight. Limiting this authority to the Director provides sufficient accountability.

*Section 1080.13 Custodians*

This section of the Interim Final Rule describes the procedures for designating a custodian and deputy custodian for material produced pursuant to a CID in an investigation. It also states that these materials are for the official use of the Bureau, but, upon notice to the custodian, must be made available for examination during regular office hours by the person who produced them.

A commenter suggested that the Bureau should detail the particular duties of custodians designated under this section and that, without an enumerated list of duties, the custodian would not have any responsibilities regarding CID materials. The commenter noted that the FTC Act requires the custodian to take specific actions, while the Dodd-Frank Act does not. The commenter suggested specifying a series of custodial duties, including (1) taking and maintaining custody of all materials submitted pursuant to CIDs or subpoenas that the Bureau issues,

**Federal Register** / Vol. 77, No. 126 / Friday, June 29, 2012 / Rules and Regulations     **39107**

including transcripts of oral testimony taken by the Bureau; (2) maintaining confidentiality of those materials as required by applicable law; (3) providing the materials to either House of Congress upon request, after ten days notice to the party that owns or submitted the materials; (4) producing any materials as required by a court of competent jurisdiction; and (5) complying at all times with the Trade Secrets Act.

Section 1052 of the Dodd-Frank Act sets forth the duties of the Bureau's custodian. Sections 1052(c)(3) through (c)(6) of the Dodd-Frank Act give the custodian responsibility for receiving documentary material, tangible things, written reports, answers to questions, and transcripts of oral testimony given by any person in compliance with any CID. Section 1052(d) of the Dodd-Frank Act, as well as the Bureau's Rules for Disclosure of Records and Information in part 1070 of this title, outline the requirements for the confidential treatment of demand material. Section 1052(g) addresses custodial control and provides that a person may file, in the district court of the United States for the judicial district within which the office of the custodian is situated, a petition for an order of such court requiring the performance by the custodian of any duty imposed upon him by section 1052 of the Dodd-Frank Act or by Bureau rule. These duties and obligations do not require additional clarification by rule.

The Final Rule clarifies that the custodian has the powers and duties of both section 1052 of the Dodd-Frank Act and 12 CFR 1070.3.

The Bureau adopts § 1080.13 of the Interim Final Rule with the changes discussed above.

*Section 1080.14   Confidential Treatment of Demand Material and Non-Public Nature of Investigations*

Section 1080.14 of the Interim Final Rule explains that documentary materials, written reports, answers to questions, tangible things, or transcripts of oral testimony received by the Bureau in any form or format pursuant to a CID are subject to the requirements and procedures relating to disclosure of records and information in part 1070 of this title. This section of the Interim Final Rule also states that investigations generally are non-public. A Bureau investigator may disclose the existence of an investigation to the extent necessary to advance the investigation.

A commenter recommended that the Bureau revise this section to mandate that Bureau investigations remain confidential. The commenter noted the

potential reputation risk to an entity if an investigation is disclosed to the public. In addition, the commenter argued that failing to conduct investigations confidentially will increase litigation risk. One commenter recommended that the Bureau issue a public absolution of a company if the Bureau does not maintain the confidentiality of an investigation.

Section 1080.14 of the Interim Final Rule provides that investigations generally will not be disclosed to the public, but permits Bureau investigators to disclose the existence of an investigation when necessary to advance the investigation. The Interim Final Rule does not contemplate publicizing an investigation, but rather disclosing the existence of the investigation to, for example, a potential witness or third party with potentially relevant information when doing so is necessary to advance the investigation. This limited exception sufficiently balances the concerns expressed by the commenter with the Bureau's need to obtain information efficiently.

Thus, the Bureau adopts § 1080.14 of the Interim Final Rule as the Final Rule without change.

## VII. Section 1022(b)(2) Provisions

In developing the Final Rule, the Bureau has considered the potential benefits, costs, and impacts, and has consulted or offered to consult with the prudential regulators, HUD, the SEC, the Department of Justice, and the FTC, including with regard to consistency with any prudential, market, or systemic objectives administered by such agencies.[1]

The Final Rule neither imposes any obligations on consumers nor is expected to have any appreciable impact on their access to consumer financial products or services. Rather, the Final Rule provides a clear, efficient mechanism for investigating compliance with the Federal consumer financial laws, which benefits consumers by creating a systematic process to protect them from unlawful behavior.

[1] Section 1022(b)(2)(A) of the Dodd-Frank Act addresses the consideration of the potential benefits and costs of regulation to consumers and covered persons, including the potential reduction of access by consumers to consumer financial products or services; the impact on depository institutions and credit unions with $10 billion or less in total assets as described in section 1026 of the Dodd-Frank Act; and the impact on consumers in rural areas. Section 1022(b)(2)(B) addresses consultation between the Bureau and other Federal agencies during the rulemaking process. The manner and extent to which these provisions apply to procedural rules and benefits, costs and impacts that are compelled by statutory changes rather than discretionary Bureau action is unclear. Nevertheless, to inform this rulemaking more fully, the Bureau performed the described analyses and consultations.

The Final Rule imposes certain obligations on covered persons who receive CIDs in Bureau investigations. Specifically, as described above, the Final Rule sets forth the process for complying with or objecting to CIDs for documentary material, tangible things, written reports or answers to questions, and oral testimony. Most obligations in the Final Rule stem from express language in the Dodd-Frank Act and do not impose additional burdens on covered persons.

To the extent that the Final Rule includes provisions not expressly required by statute, these provisions benefit covered persons by providing clarity and certainty. In addition, the Final Rule vests the Bureau with discretion to modify CIDs or extend the time for compliance for good cause. This flexibility benefits covered persons by enabling the Bureau to assess the cost of compliance with a civil investigative demand in a particular circumstance and take appropriate steps to mitigate any unreasonable compliance burden.

Moreover, because the Final Rule is largely based on section 20 of the FTC Act and its corresponding regulations, it should present an existing, stable model of investigatory procedures to covered persons. This likely familiarity with these procedures should further reduce the compliance costs for covered persons.

The Final Rule provides that requests for extensions of time to file petitions to modify or set aside CIDs are disfavored. This may impose a burden on covered entities in some cases, but it may also lead to a more expeditious resolution of matters, reducing uncertainty. Furthermore, the Final Rule has no unique impact on insured depository institutions or insured credit unions with less than $10 billion in assets as described in section 1026(a) of the Dodd-Frank Act. Nor does the Final Rule have a unique impact on rural consumers.

A commenter suggested that the Bureau conduct a nonpublic study of the impact of complying with a CID on the entities who have been subjected to them by other agencies, with specific focus on those that were found not to have violated the law. As the commenter implicitly recognizes, such data does not currently exist and thus was not reasonably available to the Bureau in finalizing the Interim Final Rule. Moreover, as explained above, most of the costs associated with complying with a CID result from the Dodd-Frank Act, which authorizes the Bureau to issue such demands.

A commenter asserted that disfavoring extensions of petitions to

modify or set aside CIDs will require the recipient to conduct a full review of the demanded material within the normal 20-day period in order to comply with the deadline for filing a petition. Under the Final Rule, recipients of a CID are not required to comply fully within twenty days; rather, they are required simply to decide whether they will comply with the demand at all. The Assistant Director of the Office of Enforcement and the Deputy Assistant Directors of the Office of Enforcement have the discretion to negotiate and approve the terms of satisfactory compliance with CIDs and, for good cause shown, may extend the time prescribed for compliance. Thus, the Final Rule provides reasonable steps to mitigate compliance burden while simultaneously protecting the Bureau's law enforcement interests.

Another commenter stated that the four interim final rules that the Bureau promulgated together on July 28, 2011 failed to satisfy the rulemaking requirements under section 1022 of the Dodd-Frank Act. Specifically, the commenter stated that ''the CFPB's analysis of the costs and benefits of its rules does not recognize the significant costs the CFPB imposes on covered persons.'' The Bureau believes that it appropriately considered the benefits, costs, and impacts of the Interim Final Rule pursuant to section 1022. Notably, the commenter did not identify any specific costs to covered persons that are not discussed in Part C of the **SUPPLEMENTARY INFORMATION** to the Interim Final Rule.

### VIII. Procedural Requirements

As noted in publishing the Interim Final Rule, under the Administrative Procedure Act, 5 U.S.C. 553(b), notice and comment is not required for rules of agency organization, procedure, or practice. As discussed in the preamble to the Interim Final Rule, the Bureau confirms its finding that this is a procedural rule for which notice and comment is not required. In addition, because the Final Rule relates solely to agency procedure and practice, it is not subject to the 30-day delayed effective date for substantive rules under section 553(d) of the Administrative Procedure Act, 5 U.S.C. 551 *et seq.* Because no notice of proposed rulemaking is required, the requirements of the Regulatory Flexibility Act, 5 U.S.C. 601(2) do not apply. Finally, the Bureau has determined that this Final Rule does not impose any new recordkeeping, reporting, or disclosure requirements on covered entities or members of the public that would be collections of

information requiring approval under 44 U.S.C. 3501. *et seq.*

### List of Subjects in 12 CFR Part 1080

Administrative practice and procedure, Banking, Banks, Consumer protection, Credit, Credit unions, Investigations, Law enforcement, National banks, Savings associations, Trade practices.

For the reasons set forth in the preamble, the Bureau of Consumer Financial Protection revises Part 1080 to Chapter X in Title 12 of the Code of Federal Regulations to read as follows:

## PART 1080—RULES RELATING TO INVESTIGATIONS

Sec.
1080.1   Scope.
1080.2   Definitions.
1080.3   Policy as to private controversies.
1080.4   Initiating and conducting investigations.
1080.5   Notification of purpose.
1080.6   Civil investigative demands.
1080.7   Investigational hearings.
1080.8   Withholding requested material.
1080.9   Rights of witnesses in investigations.
1080.10   Noncompliance with civil investigative demands.
1080.11   Disposition.
1080.12   Orders requiring witnesses to testify or provide other information and granting immunity.
1080.13   Custodians.
1080.14   Confidential treatment of demand material and non-public nature of investigations.

**Authority:** Pub. L. 111–203, Title X, 12 U.S.C. 5481 *et seq.*

### §1080.1   Scope.

The rules of this part apply to Bureau investigations conducted pursuant to section 1052 of the Dodd-Frank Act, 12 U.S.C. 5562.

### §1080.2   Definitions.

For the purposes of this part, unless explicitly stated to the contrary:
*Bureau* means the Bureau of Consumer Financial Protection.
*Bureau investigation* means any inquiry conducted by a Bureau investigator for the purpose of ascertaining whether any person is or has been engaged in any conduct that is a violation.
*Bureau investigator* means any attorney or investigator employed by the Bureau who is charged with the duty of enforcing or carrying into effect any Federal consumer financial law.
*Custodian* means the custodian or any deputy custodian designated by the Bureau for the purpose of maintaining custody of information produced pursuant to this part.
*Director* means the Director of the Bureau or a person authorized to

perform the functions of the Director in accordance with the law.
*Documentary material* means the original or any copy of any book, document, record, report, memorandum, paper, communication, tabulation, chart, log, electronic file, or other data or data compilation stored in any medium, including electronically stored information.
*Dodd-Frank Act* means the Dodd-Frank Wall Street Reform and Consumer Financial Protection Act of 2010, as amended, Public Law 111–203 (July 21, 2010), Title X, codified at 12 U.S.C. 5481 *et seq.*
*Electronically stored information (ESI)* means any information stored in any electronic medium from which information can be obtained either directly or, if necessary, after translation by the responding party into a reasonably usable form.
*Office of Enforcement* means the office of the Bureau responsible for enforcement of Federal consumer financial law.
*Person* means an individual, partnership, company, corporation, association (incorporated or unincorporated), trust, estate, cooperative organization, or other entity.
*Violation* means any act or omission that, if proved, would constitute a violation of any provision of Federal consumer financial law.

### §1080.3   Policy as to private controversies.

The Bureau shall act only in the public interest and will not initiate an investigation or take other enforcement action when the alleged violation is merely a matter of private controversy and does not tend to affect adversely the public interest.

### §1080.4   Initiating and conducting investigations.

The Assistant Director of the Office of Enforcement and the Deputy Assistant Directors of the Office of Enforcement have the nondelegable authority to initiate investigations. Bureau investigations are conducted by Bureau investigators designated and duly authorized under section 1052 of the Dodd-Frank Act, 12 U.S.C. 5562, to conduct such investigations. Bureau investigators are authorized to exercise and perform their duties in accordance with the laws of the United States and the regulations of the Bureau.

### §1080.5   Notification of purpose.

Any person compelled to furnish documentary material, tangible things, written reports or answers to questions, oral testimony, or any combination of

such material, answers, or testimony to the Bureau shall be advised of the nature of the conduct constituting the alleged violation that is under investigation and the provisions of law applicable to such violation.

### § 1080.6   Civil investigative demands.

(a) *In general.* In accordance with section 1052(c) of the Act, the Director of the Bureau, the Assistant Director of the Office of Enforcement, and the Deputy Assistant Directors of the Office of Enforcement, have the nondelegable authority to issue a civil investigative demand in any Bureau investigation directing the person named therein to produce documentary material for inspection and copying or reproduction in the form or medium requested by the Bureau; to submit tangible things; to provide a written report or answers to questions; to appear before a designated representative at a designated time and place to testify about documentary material, tangible things, or other information; and to furnish any combination of such material, things, answers, or testimony.

(1) *Documentary material.* (i) Civil investigative demands for the production of documentary material shall describe each class of material to be produced with such definiteness and certainty as to permit such material to be fairly identified, prescribe a return date or dates that will provide a reasonable period of time within which the material so demanded may be assembled and made available for inspection and copying or reproduction, and identify the custodian to whom such material shall be made available. Documentary material for which a civil investigative demand has been issued shall be made available as prescribed in the civil investigative demand.

(ii) Production of documentary material in response to a civil investigative demand shall be made under a sworn certificate, in such form as the demand designates, by the person to whom the demand is directed or, if not a natural person, by any person having knowledge of the facts and circumstances relating to such production, to the effect that all of the documentary material required by the demand and in the possession, custody, or control of the person to whom the demand is directed has been produced and made available to the custodian.

(2) *Tangible things.* (i) Civil investigative demands for tangible things shall describe each class of tangible things to be produced with such definiteness and certainty as to permit such things to be fairly identified, prescribe a return date or

dates which will provide a reasonable period of time within which the things so demanded may be assembled and submitted, and identify the custodian to whom such things shall be submitted.

(ii) Submissions of tangible things in response to a civil investigative demand shall be made under a sworn certificate, in such form as the demand designates, by the person to whom the demand is directed or, if not a natural person, by any person having knowledge of the facts and circumstances relating to such production, to the effect that all of the tangible things required by the demand and in the possession, custody, or control of the person to whom the demand is directed have been submitted to the custodian.

(3) *Written reports or answers to questions.* (i) Civil investigative demands for written reports or answers to questions shall propound with definiteness and certainty the reports to be produced or the questions to be answered, prescribe a date or dates at which time written reports or answers to questions shall be submitted, and identify the custodian to whom such reports or answers shall be submitted.

(ii) Each reporting requirement or question in a civil investigative demand shall be answered separately and fully in writing under oath. Responses to a civil investigative demand for a written report or answers to questions shall be made under a sworn certificate, in such form as the demand designates, by the person to whom the demand is directed or, if not a natural person, by any person responsible for answering each reporting requirement or question, to the effect that all of the information required by the demand and in the possession, custody, control, or knowledge of the person to whom the demand is directed has been submitted to the custodian.

(4) *Oral testimony.* (i) Civil investigative demands for the giving of oral testimony shall prescribe a date, time, and place at which oral testimony shall be commenced, and identify a Bureau investigator who shall conduct the investigation and the custodian to whom the transcript of such investigation shall be submitted. Oral testimony in response to a civil investigative demand shall be taken in accordance with the procedures for investigational hearings prescribed by §§ 1080.7 and 1080.9 of this part.

(ii) Where a civil investigative demand requires oral testimony from an entity, the civil investigative demand shall describe with reasonable particularity the matters for examination and the entity must designate one or more officers, directors, or managing

agents, or designate other persons who consent to testify on its behalf. Unless a single individual is designated by the entity, the entity must designate the matters on which each designee will testify. The individuals designated must testify about information known or reasonably available to the entity and their testimony shall be binding on the entity.

(b) *Manner and form of production of ESI.* When a civil investigative demand requires the production of ESI, it shall be produced in accordance with the instructions provided by the Bureau regarding the manner and form of production. Absent any instructions as to the form for producing ESI, ESI must be produced in the form in which it is ordinarily maintained or in a reasonably usable form.

(c) *Meet and confer.* The recipient of a civil investigative demand shall meet and confer with a Bureau investigator within 10 calendar days after receipt of the demand or before the deadline for filing a petition to modify or set aside the demand, whichever is earlier, to discuss and attempt to resolve all issues regarding compliance with the civil investigative demand. The Assistant Director of the Office of Enforcement and the Deputy Assistant Directors of the Office of Enforcement may authorize the waiver of this requirement for routine third-party civil investigative demands or in other circumstances where he or she determines that a meeting is unnecessary. The meeting may be in person or by telephone.

(1) *Personnel.* The recipient must make available at the meeting personnel with the knowledge necessary to resolve any issues relevant to compliance with the demand. Such personnel could include individuals knowledgeable about the recipient's information or records management systems and/or the recipient's organizational structure.

(2) *ESI.* If the civil investigative demand seeks ESI, the recipient shall ensure that a person familiar with its ESI systems and methods of retrieval participates in the meeting.

(3) *Petitions.* The Bureau will not consider petitions to set aside or modify a civil investigative demand unless the recipient has meaningfully engaged in the meet and confer process described in this subsection and will consider only issues raised during the meet and confer process.

(d) *Compliance.* The Assistant Director of the Office of Enforcement and the Deputy Assistant Directors of the Office of Enforcement are authorized to negotiate and approve the terms of satisfactory compliance with civil investigative demands and, for good

cause shown, may extend the time prescribed for compliance.

(e) *Petition for order modifying or setting aside demand—in general.* Any petition for an order modifying or setting aside a civil investigative demand shall be filed with the Executive Secretary of the Bureau with a copy to the Assistant Director of the Office of Enforcement within 20 calendar days after service of the civil investigative demand, or, if the return date is less than 20 calendar days after service, prior to the return date. Such petition shall set forth all factual and legal objections to the civil investigative demand, including all appropriate arguments, affidavits, and other supporting documentation. The attorney who objects to a demand must sign any objections.

(1) *Statement.* Each petition shall be accompanied by a signed statement representing that counsel for the petitioner has conferred with counsel for the Bureau pursuant to section 1080.6(c) in a good-faith effort to resolve by agreement the issues raised by the petition and has been unable to reach such an agreement. If some of the matters in controversy have been resolved by agreement, the statement shall specify the matters so resolved and the matters remaining unresolved. The statement shall recite the date, time, and place of each such meeting between counsel, and the names of all parties participating in each such meeting.

(2) *Extensions of time.* The Assistant Director of the Office of Enforcement and the Deputy Assistant Directors of the Office of Enforcement are authorized to rule upon requests for extensions of time within which to file such petitions. Requests for extensions of time are disfavored.

(3) *Bureau investigator response.* Bureau investigators may, without serving the petitioner, provide the Director with a statement setting forth any factual and legal response to a petition for an order modifying or setting aside the demand.

(4) *Disposition.* The Director has the authority to rule upon a petition for an order modifying or setting aside a civil investigative demand. The order may be served on the petitioner via email, facsimile, or any other method reasonably calculated to provide notice of the order to the petitioner.

(f) *Stay of compliance period.* The timely filing of a petition for an order modifying or setting aside a civil investigative demand shall stay the time permitted for compliance with the portion challenged. If the petition is denied in whole or in part, the ruling will specify a new return date.

(g) *Public disclosure.* All such petitions and the Director's orders in response to those petitions are part of the public records of the Bureau unless the Bureau determines otherwise for good cause shown. Any showing of good cause must be made no later than the time the petition is filed.

### § 1080.7   Investigational hearings.

(a) Investigational hearings, as distinguished from hearings in adjudicative proceedings, may be conducted pursuant to a civil investigative demand for the giving of oral testimony in the course of any Bureau investigation, including inquiries initiated for the purpose of determining whether or not a respondent is complying with an order of the Bureau.

(b) Investigational hearings shall be conducted by any Bureau investigator for the purpose of hearing the testimony of witnesses and receiving documentary material, tangible things, or other information relating to any subject under investigation. Such hearings shall be under oath or affirmation and stenographically reported, and a transcript thereof shall be made a part of the record of the investigation. The Bureau investigator conducting the investigational hearing also may direct that the testimony be recorded by audio, audiovisual, or other means, in which case the recording shall be made a part of the record of the investigation as well.

(c) In investigational hearings, the Bureau investigators shall exclude from the hearing room all persons except the person being examined, his or her counsel, the officer before whom the testimony is to be taken, any investigator or representative of an agency with which the Bureau is engaged in a joint investigation, and any individual transcribing or recording such testimony. At the discretion of the Bureau investigator, and with the consent of the person being examined, persons other than those listed in this paragraph may be present in the hearing room. The Bureau investigator shall certify or direct the individual transcribing the testimony to certify on the transcript that the witness was duly sworn and that the transcript is a true record of the testimony given by the witness. A copy of the transcript shall be forwarded promptly by the Bureau investigator to the custodian designated in section 1080.13.

### § 1080.8   Withholding requested material.

(a) Any person withholding material responsive to a civil investigative demand or any other request for production of material shall assert a claim of privilege not later than the date set for the production of material. Such person shall, if so directed in the civil investigative demand or other request for production, submit, together with such claim, a schedule of the items withheld which states, as to each such item, the type, specific subject matter, and date of the item; the names, addresses, positions, and organizations of all authors and recipients of the item; and the specific grounds for claiming that the item is privileged. The person who submits the schedule and the attorney stating the grounds for a claim that any item is privileged must sign it.

(b) A person withholding material solely for reasons described in this subsection shall comply with the requirements of this subsection in lieu of filing a petition for an order modifying or setting aside a civil investigative demand pursuant to section 1080.6(e).

(c) Disclosure of privileged or protected information or communications produced pursuant to a civil investigative demand shall be handled as follows:

(1) The disclosure of privileged or protected information or communications shall not operate as a waiver with respect to the Bureau if:

(i) The disclosure was inadvertent;

(ii) The holder of the privilege or protection took reasonable steps to prevent disclosure; and

(iii) The holder promptly took reasonable steps to rectify the error, including notifying a Bureau investigator of the claim of privilege or protection and the basis for it.

(2) After being notified, the Bureau investigator must promptly return, sequester, or destroy the specified information and any copies; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if he or she disclosed it before being notified; and, if appropriate, may sequester such material until such time as a hearing officer or court rules on the merits of the claim of privilege or protection. The producing party must preserve the information until the claim is resolved.

(3) The disclosure of privileged or protected information or communications shall waive the privilege or protection with respect to the Bureau as to undisclosed information or communications only if:

(i) The waiver is intentional;

(ii) The disclosed and undisclosed information or communications concern the same subject matter; and

(iii) They ought in fairness to be considered together.

**Federal Register** / Vol. 77, No. 126 / Friday, June 29, 2012 / Rules and Regulations **39111**

## § 1080.9 Rights of witnesses in investigations.

(a) Any person compelled to submit documentary material, tangible things, or written reports or answers to questions to the Bureau, or to testify in an investigational hearing, shall be entitled to retain a copy or, on payment of lawfully prescribed costs, request a copy of the materials, things, reports, or written answers submitted, or a transcript of his or her testimony. The Bureau, however, may for good cause deny such a request and limit the witness to inspection of the official transcript of the testimony. Upon completion of transcription of the testimony of the witness, the witness shall be offered an opportunity to read the transcript of his or her testimony. Any changes by the witness shall be entered and identified upon the transcript by the Bureau investigator with a statement of the reasons given by the witness for making such changes. The transcript shall then be signed by the witness and submitted to the Bureau unless the witness cannot be found, is ill, waives in writing his or her right to signature, or refuses to sign. If the signed transcript is not submitted to the Bureau within 30 calendar days of the witness being afforded a reasonable opportunity to review it, the Bureau investigator, or the individual transcribing the testimony acting at the Bureau investigator's direction, shall sign the transcript and state on the record the fact of the waiver, illness, absence of the witness, or the refusal to sign, together with any reasons given for the failure to sign.

(b) Any witness compelled to appear in person at an investigational hearing may be accompanied, represented, and advised by counsel as follows:

(1) Counsel for a witness may advise the witness, in confidence and upon the initiative of either counsel or the witness, with respect to any question asked of the witness where it is claimed that a witness is privileged to refuse to answer the question. Counsel may not otherwise consult with the witness while a question directed to the witness is pending.

(2) Any objections made under the rules in this part shall be made only for the purpose of protecting a constitutional or other legal right or privilege, including the privilege against self-incrimination. Neither the witness nor counsel shall otherwise object or refuse to answer any question. Any objection during an investigational hearing shall be stated concisely on the record in a nonargumentative and nonsuggestive manner. Following an objection, the examination shall proceed and the testimony shall be taken, except for testimony requiring the witness to divulge information protected by the claim of privilege or work product.

(3) Counsel for a witness may not, for any purpose or to any extent not allowed by paragraphs (b)(1) and (2) of this section, interrupt the examination of the witness by making any objections or statements on the record. Petitions challenging the Bureau's authority to conduct the investigation or the sufficiency or legality of the civil investigative demand shall be addressed to the Bureau in advance of the hearing in accordance with § 1080.6(e). Copies of such petitions may be filed as part of the record of the investigation with the Bureau investigator conducting the investigational hearing, but no arguments in support thereof will be allowed at the hearing.

(4) Following completion of the examination of a witness, counsel for the witness may, on the record, request that the Bureau investigator conducting the investigational hearing permit the witness to clarify any of his or her answers. The grant or denial of such request shall be within the sole discretion of the Bureau investigator conducting the hearing.

(5) The Bureau investigator conducting the hearing shall take all necessary action to regulate the course of the hearing to avoid delay and to prevent or restrain disorderly, dilatory, obstructionist, or contumacious conduct, or contemptuous language. Such Bureau investigator shall, for reasons stated on the record, immediately report to the Bureau any instances where an attorney has allegedly refused to comply with his or her obligations under the rules in this part, or has allegedly engaged in disorderly, dilatory, obstructionist, or contumacious conduct, or contemptuous language in the course of the hearing. The Bureau will thereupon take such further action, if any, as the circumstances warrant, including actions consistent with those described in 12 CFR 1081.107(c) to suspend or disbar the attorney from further practice before the Bureau or exclude the attorney from further participation in the particular investigation.

## § 1080.10 Noncompliance with civil investigative demands.

(a) In cases of failure to comply in whole or in part with Bureau civil investigative demands, appropriate action may be initiated by the Bureau, including actions for enforcement.

(b) The Director, the Assistant Director of the Office of Enforcement, and the General Counsel of the Bureau are authorized to:

(1) Institute, on behalf of the Bureau, an enforcement proceeding in the district court of the United States for any judicial district in which a person resides, is found, or transacts business, in connection with the failure or refusal of such person to comply with, or to obey, a civil investigative demand in whole or in part if the return date or any extension thereof has passed; and

(2) Seek civil contempt or other appropriate relief in cases where a court order enforcing a civil investigative demand has been violated.

## § 1080.11 Disposition.

(a) When the facts disclosed by an investigation indicate that an enforcement action is warranted, further proceedings may be instituted in Federal or State court or pursuant to the Bureau's administrative adjudicatory process. Where appropriate, the Bureau also may refer investigations to appropriate Federal, State, or foreign governmental agencies.

(b) When the facts disclosed by an investigation indicate that an enforcement action is not necessary or would not be in the public interest, the investigational file will be closed. The matter may be further investigated, at any time, if circumstances so warrant.

(c) The Assistant Director of the Office of Enforcement and the Deputy Assistant Directors of the Office of Enforcement are authorized to close Bureau investigations.

## § 1080.12 Orders requiring witnesses to testify or provide other information and granting immunity.

The Director has the nondelegable authority to request approval from the Attorney General of the United States for the issuance of an order requiring a witness to testify or provide other information and granting immunity under 18 U.S.C. 6004.

## § 1080.13 Custodians.

(a) The Bureau shall designate a custodian and one or more deputy custodians for material to be delivered pursuant to a civil investigative demand in an investigation. The custodian shall have the powers and duties prescribed by 12 CFR 1070.3 and section 1052 of the Act, 12 U.S.C. 5562. Deputy custodians may perform all of the duties assigned to custodians.

(b) Material produced pursuant to a civil investigative demand, while in the custody of the custodian, shall be for the official use of the Bureau in accordance with the Act; but such material shall upon reasonable notice to the custodian

be made available for examination by the person who produced such material, or his or her duly authorized representative, during regular office hours established for the Bureau.

### § 1080.14 Confidential treatment of demand material and non-public nature of investigations.

(a) Documentary materials, written reports, answers to questions, tangible things or transcripts of oral testimony the Bureau receives in any form or format pursuant to a civil investigative demand are subject to the requirements and procedures relating to the disclosure of records and information set forth in part 1070 of this title.

(b) Bureau investigations generally are non-public. Bureau investigators may disclose the existence of an investigation to potential witnesses or third parties to the extent necessary to advance the investigation.

Dated: June 4, 2012.

**Richard Cordray,**

*Director, Bureau of Consumer Financial Protection.*

[FR Doc. 2012–14047 Filed 6–28–12; 8:45 am]

**BILLING CODE 4810–AM–P**

---

## BUREAU OF CONSUMER FINANCIAL PROTECTION

### 12 CFR Part 1082

**[Docket No. CFPB–2011–0005]**

**RIN 3170–AA02**

### State Official Notification Rule

**AGENCY:** Bureau of Consumer Financial Protection.

**ACTION:** Final rule.

**SUMMARY:** The Dodd-Frank Wall Street Reform and Consumer Financial Protection Act of 2010 (Dodd-Frank Act) requires the Bureau of Consumer Financial Protection (Bureau) to prescribe rules establishing procedures that govern the process by which State Officials notify the Bureau of actions undertaken pursuant to the authority granted to the States to enforce the Dodd-Frank Act or regulations prescribed thereunder. This final State Official Notification Rule (Final Rule) sets forth the procedures to govern this process.

**DATES:** The Final Rule is effective June 29, 2012.

**FOR FURTHER INFORMATION CONTACT:** Veronica Spicer, Office of Enforcement, Consumer Financial Protection Bureau, 1700 G Street NW., Washington, DC 20552, at (202) 435–7545.

**SUPPLEMENTARY INFORMATION:**

## I. Background

The Dodd-Frank Wall Street Reform and Consumer Financial Protection Act of 2010 (Dodd-Frank Act) was signed into law on July 21, 2010. Title X of the Dodd-Frank Act established the Bureau to regulate the offering and provision of consumer financial products or services under the Federal consumer financial laws. Section 1042 of the Dodd-Frank Act, 12 U.S.C. 5552, governs the enforcement powers of the States under the Dodd-Frank Act. Under section 1042(a), a State attorney general or regulator (State Official) may bring an action to enforce Title X of the Dodd-Frank Act and regulations issued thereunder. Prior to initiating any such action, the State Official is required to provide notice of the action to the Bureau and the prudential regulator, if any, pursuant to section 1042(b) of the Dodd-Frank Act. Section 1042(b) further authorizes the Bureau to intervene in the State Official's action as a party, remove the action to a Federal district court, and appeal any order or judgment.

Pursuant to section 1042(c) of the Dodd-Frank Act, the Bureau is required to issue regulations implementing the requirements of section 1042. On July 28, 2011, the Bureau promulgated the State Official Notification Rule (Interim Final Rule) with a request for comment. The comment period for the Interim Final Rule ended on September 26, 2011. After reviewing and considering the issues raised by the comments, the Bureau now promulgates the Final Rule establishing a procedure for the timing and content of the notice required to be provided by State Officials pursuant to section 1042(b) of the Dodd-Frank Act, 12 U.S.C. 5552(b).

## II. Summary of the Final Rule

Like the Interim Final Rule, the Final Rule implements a procedure for the timing and content of the notice required by section 1042(b), sets forth the responsibilities of the recipients of the notice, and specifies the rights of the Bureau to participate in actions brought by State Officials under section 1042(a) of the Dodd-Frank Act. In drafting the Final Rule, the Bureau endeavored to create a process that would provide both the Bureau and, where applicable, the prudential regulators with timely notice of pending actions and account for the investigation and litigation needs of State regulators and law enforcement agencies. In keeping with this approach, the Final Rule provides for a default notice period of at least ten calendar days, with exceptions for emergencies and other extenuating circumstances,

and requires substantive notice that is both straightforward and comprehensive. The Final Rule further makes clear that the Bureau can intervene as a party in an action brought by a State Official under Title X of the Dodd-Frank Act or a regulation prescribed thereunder, provides for the confidential treatment of non-public information contained in the notice if a State so requests, and provides that provision of notice shall not be deemed a waiver of any applicable privilege. In addition, the Final Rule specifies that the notice provisions do not create any procedural or substantive rights for parties in litigation against the United States or against a State that brings an action under Title X of the Dodd-Frank Act or a regulation prescribed thereunder.

## III. Legal Authority

Section 1042(c) of the Dodd-Frank Act authorizes the Bureau to prescribe regulations implementing the requirements of section 1042(b). In addition, the Bureau has general rulemaking authority pursuant to section 1022(b)(1) of the Dodd-Frank Act to prescribe rules to enable the Bureau to administer and carry out the purposes and objectives of the Federal consumer financial laws and to prevent evasions thereof.

## IV. Overview of Comments Received

In response to the Interim Final Rule, the Bureau received several comments. Four letters were received from associations representing the financial industry, two letters were received from financial industry regulators and supervisors, and one letter was received from an individual consumer. The Bureau also received a comment letter from a financial industry regulator in response to its **Federal Register** notification of November 21, 2011, regarding the information collection requirements associated with the Interim Final Rule pursuant to the Paperwork Reduction Act of 1995 (PRA), Public Law 104–13. All of the comments are available for review on *www.regulations.gov*.

The financial industry associations' comments fell into several general categories. Several comments expressed concerns about the Bureau's ability to maintain confidentiality for notification materials received by the Bureau. Other commenters requested clarity as to the type of actions for which the Bureau requires notification. One commenter requested that the Bureau require uniform interpretation by States of all Federal law within the Bureau's jurisdiction.

**BUREAU OF CONSUMER FINANCIAL PROTECTION**
**Washington, D.C. 20552**

**Notice to Persons Supplying Information**

You have been asked to supply information or speak voluntarily, or directed to provide sworn testimony, documents, or answers to questions in response to a civil investigative demand (CID) from the Bureau of Consumer Financial Protection (Bureau). This notice discusses certain legal rights and responsibilities. Unless stated otherwise, the information below applies whether you are providing information voluntarily or in response to a CID.

**A.     False Statements; Perjury**

*False Statements*. Section 1001 of Title 18 of the United States Code provides as follows:

[W]hoever, in any matter within the jurisdiction of the executive … branch of the Government of the United States, knowingly and willfully-- **(1)** falsifies, conceals, or covers up by any trick, scheme, or device a material fact; **(2)** makes any materially false, fictitious, or fraudulent statement or representation; or **(3)** makes or uses any false writing or document knowing the same to contain any materially false, fictitious, or fraudulent statement or entry; shall be fined under this title …[or] imprisoned not more than 5 years …, or both.

*Perjury*. Section 1621 of Title 18 of the United States Code provides as follows:

Whoever … having taken an oath before a competent tribunal, officer, or person, in any case in which a law of the United States authorizes an oath to be administered, that he will testify, declare, depose, or certify truly or that any written testimony, declaration, deposition, or certificate by him subscribed, is true willfully and contrary to such oath states or subscribes any material matter which he does not believe to be true … is guilty of perjury and shall, except as otherwise expressly provided by law, be fined under this title or imprisoned not more than five years, or both. This section is applicable whether the statement or subscription is made within or without the United States.

**B.     The Fifth Amendment; Your Right to Counsel**

*Fifth Amendment*. Information you provide may be used against you in any federal, state, local or foreign administrative, civil or criminal proceeding brought by the Bureau or any other agency. If you are an individual, you may refuse, in accordance with the rights guaranteed to you by the Fifth Amendment to the Constitution of the United States, to give any information that may tend to incriminate you or subject you to criminal liability, including fine, penalty or forfeiture.

*Counsel*. You have the right to be accompanied, represented and advised by counsel of your choice. For further information, you should consult Bureau regulations at 12 C.F.R. § 1080.9(b).

## C. Effect of Not Supplying Information

*Persons Directed to Supply Information Pursuant to CID.* If you fail to comply with the CID, the Bureau may seek a court order requiring you to do so. If such an order is obtained and you still fail to supply the information, you may be subject to civil and criminal sanctions for contempt of court.

*Persons Requested to Supply Information Voluntarily.* There are no sanctions for failing to provide all or any part of the requested information. If you do not provide the requested information, the Bureau may choose to send you a CID or subpoena.

## D. Privacy Act Statement

The information you provide will assist the Bureau in its determinations regarding violations of Federal consumer financial laws. The information will be used by and disclosed to Bureau personnel and contractors or other agents who need the information to assist in activities related to enforcement of Federal consumer financial laws. The information may also be disclosed for statutory or regulatory purposes, or pursuant to the Bureau's published Privacy Act system of records notice, to:

- a court, magistrate, administrative tribunal, or a party in litigation;
- another federal or state agency or regulatory authority;
- a member of Congress; and
- others as authorized by the Bureau to receive this information.

This collection of information is authorized by 12 U.S.C. §§ 5511, 5562.

# Exhibit B



1700 G Street, NW
Washington, DC 20552

May 1, 2019

<u>Via Email</u>

Steven M. Gombos, Esquire
Gombos | Leyton, P.C.
11350 Random Hills Road, Suite 400
Fairfax, VA 22030

Re:     Civil Investigative Demand served on the Center for Excellence in Higher
        Education on April 12, 2019

Dear Mr. Gombos:

This letter modifies the terms for compliance with the civil investigative demand (CID)
issued to the Center for Excellence in Higher Eduction (CEHE) by the Bureau of
Consumer Financial Protection (Bureau), as permitted by 12 C.F.R. § 1080.6(d). This
letter sets forth the only modifications to the CID. The Bureau's willingness to approve
these modifications is based, in part, on CEHE's representations described or referenced
below. The production of information and documents in accordance with the
modifications described below constitutes compliance with the CID.

**Date of Hearing**

The CID as issued on April 12, 2019 required a representative of CEHE to appear and
provide testimony on May 21, 2019 at 10:00 a.m. at the U.S. Attorney's Office in Salt Lake
City, UT.  **<u>The Bureau agrees to modify the date of the hearing to June 11, 2019.</u>**

**Modification to Instructions**

CEHE pointed out the inadvertent omission of an instruction pertaining to the "Applicable
Period for Responsive Materials." The Bureau modifies the CID to add the following
Instruction:

> "**Applicable Period for Responsive Materials**." Unless otherwise
> directed, the applicable period for the request is from January 1, 2012 until
> the date of this CID.

**Nature of the Modifications**

To assist in construing any terms of this letter, the definitions set forth in the CID are incorporated by reference. This letter does not change the Company's responsibilities described in the Document Retention instruction in the CID. Further, nothing in this letter precludes the Bureau from issuing additional CIDs or seeking discovery from the Company.

If you have any questions regarding the terms outlined above, contact Enforcement Attorney Benjamin Konop at 202-435-7265.

Sincerely,

# Jeffrey Paul Ehrlich

Digitally signed by Jeffrey Paul Ehrlich
Date: 2019.05.01 16:36:46 -04'00'

Jeffrey Paul Ehrlich
Deputy Enforcement Director

Exhibit C

UNITED STATES OF AMERICA
BEFORE THE BUREAU OF CONSUMER FINANCIAL PROTECTION

IN THE MATTER OF
Center for Excellence In
Higher Education

## RESPONDENT'S PETITION TO SET ASIDE OR MODIFY CIVIL INVESTIGATIVE DEMAND

Pursuant to section 1052(f) of the Consumer Financial Protection Act ("CFPA"), 12 U.S.C. § 5562 and 12 C.F.R. § 1080.6(e), Center For Excellence In Higher Education ("CEHE") hereby respectfully petitions the Bureau of Consumer Financial Protection ("Bureau") to set aside, or in the alternative to modify, the Civil Investigative Demand dated April 15 ("CID"), as amended by Bureau letter dated May 1.

I.    **Grounds for CEHE's Petition**

   a.  The CID is unreasonably overbroad and unduly burdensome in seeking testimony about every aspect of CEHE's loan programs, other forms of financial assistance, tuition-payment plans to prospective students, and litigation for a period of seven years.

   b.  While on its face the CID purports to be issued for a proper purpose, the Bureau's conduct suggests that the true purposes of the CID are to harass and humiliate CEHE and its former owner and to exploit the Bureau's investigative process to improperly assist the Colorado's Attorney General's Office.

## II.    <u>Background</u>

**<u>The Institution</u>**

CEHE is a private, non-profit organization that operates four institutions of higher education (Stevens-Henager College, CollegeAmerica, California College San Diego, and Independence University, collectively the "Institutions").

**<u>The CID</u>**

CEHE recently received a CID from the Bureau demanding oral testimony at an investigatory hearing to be conducted by the Bureau on two topics.

The first topic calls for oral testimony about activities of the Institutions related to offering and providing student loans, other forms of financial assistance, or tuition-payment plans to prospective students.  The topic is subdivided into the following: (a) policies and procedures related to student loan marketing, underwriting, origination, servicing, or collection; (b) training, supervision, and performance management of personnel with job duties related to advising students how to pay for college; (c) policies, procedures, and practices related to servicing student loans and the sale of student debt to third parties; and (d) policies, procedures, and practices related to furnishing student-borrower information to consumer reporting agencies ("Topic No. 1").

The second topic calls for oral testimony about litigation to which CEHE is a party involving claims related to CEHE's loans to students or other forms of financial assistance to prospective students since January 1, 2012 ("Topic No. 2").

**Collaboration between the Bureau and Colorado's Attorney General's Office**

Within hours of receiving the CID on April 15, 2019, the Colorado Attorney General's office ("COAG") notified CEHE that it had improperly shared a non-public confidential document that is subject to a judicial sealing order issued by a Colorado State court.  COAG said it shared the document after receiving a request from a "government agency."  Only after an inquiry by CEHE's counsel in that case did COAG eventually admit that it actually shared multiple sealed documents with the Bureau.

At a recent hearing about COAG's violation of the sealing order, the Colorado State court found that COAG's conduct warranted sanctions.  The court ordered COAG to provide:  i) a comprehensive log of all verbal communications between COAG and the Bureau; ii) the substance of those communications; and iii) identification of the documents COAG provided to the Bureau. Those items are due by May 31, 2019. Further sanctions may be warranted depending on the nature and content of those communications.

**Efforts to Date to Resolve CEHE's Concerns and Objections**

Counsel for CEHE and the Bureau first met and conferred by telephone on April 26, 2019. During that conference, counsel for CEHE questioned why there was no time frame associated with Topic No. 1.  The Bureau represented that the failure to include a date-range was an inadvertent omission that it would correct after discussing it

internally.  It promised to reissue the CID.[1]  CEHE's counsel requested that the Bureau reschedule the return date due to a scheduling conflict, and the Bureau agreed.

During the April 26 meet and confer, Bureau counsel denied that the Bureau was participating in a joint investigation regarding CEHE and indicated that only Bureau staff would be present at the hearing.

Respective counsel continued to exchange email communications about rescheduling the hearing.  CEHE proposed dates in June.  On April 29, 2019, Bureau counsel identified June 11 as a viable date.  The following day, Bureau counsel sent a letter identifying a June 11, 2019 hearing date. Regarding the time frame for Topic No. 1, the Bureau's letter stated, "[u]nless otherwise directed, the applicable period for the request is from January 1, 2012 until the date of this CID." *See* Exhibit A – Bureau's May 1, 2019 Letter Amending CID.

After receiving the May 1 letter, counsel for CEHE reminded Bureau counsel that the over-seven-year time frame for the oral testimony was overbroad and rendered the June 11, 2019 return date infeasible. CEHE requested a further meet and confer to discuss relevant issues.

---

[1] The Bureau's attorneys dispute that they offered to revisit the time frame during the April 26 meet and confer.  They have incorrectly stated that CEHE agreed to a January 1, 2012 time frame to the Topic No. 1 items.  CEHE never agreed to any such time frame. The lack of any defined time frame was CEHE's primary objection.  Having a time frame that is more than seven years is no more reasonable under the circumstances than having no limitation at all.  Topic No. 1 calls for a much wider field of information than Topic No. 2 which seeks testimony related to institutional student loan-related litigation since January 1, 2012.  Based on knowledge and belief, there has been just one such lawsuit in which CEHE has been a party during that time frame.

On May 14, counsel for CEHE and the Bureau again conferred telephonically about the CID.  On this call, Bureau counsel contended that the parties had agreed to a 2012 investigative start date for Topic No. 1 during the April 26 telephone conference.  This contention is simply not true.  CEHE has consistently opposed that time period on the basis of being overbroad.  Counsel asked Bureau counsel to cite a legal basis to support its desire to investigate back to 2012. Bureau counsel refused to do so.

CEHE expressed concern over the apparent coordinated effort by COAG and the Bureau and, in support, referenced the proceedings in Colorado and COAG's violation of the sealing order.  It asked whether the CID was sent at COAG's urging. Without responding to the question, Bureau counsel replied that it had numerous reasons why it could investigate CEHE.  And counsel referenced a 2015 New York Times article about the Institution's former owner as justification.  They also claimed there were "numerous complaints about your Company." However, Bureau counsel would not provide any specifics to this sweeping claim.  To verify the Bureau's claim, CEHE searched the Bureau's public complaint database without finding any such complaints.  Bureau counsel refused to answer whether any of the complaints related back to 2012.

### III.  **The Bureau's demand for oral testimony should be set aside or modified because it calls for a time period that is unreasonably overbroad and unduly burdensome.**

   a. *The CID is overbroad based on the request for testimony covering more than 7 years' worth of information.*

The baseline attributes of a valid exercise of governmental investigative power have been established in law for almost seventy years. *United States v. Morton Salt Co.,* 338 U.S. 632, 653 (1950) (J. Jackson) ("it is sufficient if the inquiry is within the

authority of the agency, the demand is not too indefinite and the information sought is reasonably relevant.")  However, even when the agency demonstrates the existence of the *Morton Salt* factors, an agency's subpoena cannot be valid if the party subpoenaed proves the inquiry is unreasonably overbroad or unduly burdensome. *Solis v. Laborer's Int'l Union of N. Am., Local 368*, 775 F. Supp. 2d 1191, 1204 (D. Haw. 2010)(internal citations omitted).

CEHE seeks to set aside or, alternatively, to modify the CID because the timeframe for Topics Nos. 1 and 2 are overbroad and unreasonable.  Analyzing whether the CID is unreasonable or overly burdensome requires a fact-specific inquiry.   *McLane Co. v. EEOC*, 137 S. Ct. 1159, 1162 (2017); *see also In re Grand Jury Subpoena Duces Tecum, etc.*, 203 F. Supp. 575, 578. (S.D.N.Y. 1961) ("The facts of each case determine whether the period of time covered by the records sought is reasonable. The period of time with which the records deal should bear some relation to the subject of the investigation.")

The CID requires CEHE to designate one or more witnesses to appear at an investigative hearing to answer a broad range of questions.  It seeks testimony about its student lending policies, procedures, practices, training, and employee management and supervision, involving every aspect of its student loan programs.  The extensive breadth includes topics ranging from marketing to collections to the sale of student borrower's obligations to a third party.  All this for over a seven-year period.

Without proper relief, CEHE's witnesses will be required to testify under oath and on the record about this wide-ranging list of subjects for a period spanning over three-

6

quarters of a decade.  12 C.F.R. § 1080.7(b). Under the Bureau's rules, the witness is not permitted to refuse to answer any question. 12 C.F.R. § 1080.9(b)(1). Nor is there a time limit on how long the hearing can last.  Indeed, witness rights to be represented by counsel are significantly limited by these harsh procedural rules.  12 C.F.R. § 1080.9(b)

This is not an instance in which the facts and details regarding the subject matter encompassing Topic No. 1 have remained static or unchanged since January 1, 2012. Instead, CEHE has modified its student loan policies and procedures numerous times since 2012.  Revisions have included numerous changes in offered loan terms and the administration of student loans. CEHE has at various times contracted with third parties to service its student loans, while at other times it has done so in-house.  Still further, over the course of this period of time many student borrowers and CEHE employees have come and gone.  *See* Exhibit B – Juhlin Affidavit.

The CID, as amended by the Bureau's May 1 letter, only gives 40 days for CEHE to identify and prepare responsive witnesses for testimony. Even with preparation, witnesses subject to the Bureau's procedures are provided little protection usually offered in the law. For example, it is entirely left to the discretion of the Bureau's investigator to allow the witness to clarify or correct inaccurate testimony—even if the witness makes an inadvertent or unintentional misstatement or mischaracterization of fact. 12 C.F.R. § 1080.9(b)(4).  The Bureau's rules threaten any person that even innocently fails to comply in whole or in part with the CID with a civil contempt order. 12 C.F.R. § 1080.10(b)(2). The stakes at such hearings are not insignificant given the draconian enforcement tactics available to the Bureau.

The combination of the Bureau's rules and its demand for in-person witness testimony about innumerable details of CEHE's lending program, the actions of hundreds of employees, and a multitude of transactions over more than 7 years, exposes CEHE to considerable risk that is completely independent of its compliance with fair lending laws.  Further amplifying the risk, the compressed timeframe in which the Bureau seeks to conduct this hearing ensures that witnesses will have insufficient time to prepare.  For these reasons, the CID should be set aside, or amended to restrict the temporal scope of Topic No. 1.

> b. *Topic No. 2 of the CID is overbroad in seeking testimony related to litigation between COAG and CEHE.*

COAG initiated an investigation into CEHE's Colorado campuses in June 2012, after it received anonymous complaints.  Over the course of two and a half years, the investigation involved extensive subpoenas and twenty civil investigative demand hearings. *See* Exhibit B – Juhlin Aff., ¶¶ 9-12. COAG filed suit against CEHE on December 1, 2014, asserting three claims under the Colorado Consumer Protection Act, C.R.S. § 6-1-101, *et. seq.* ("CCPA"), and one claim under the Uniform Consumer Credit Code, C.R.S. § 5-6-101, *et seq*. ("UCCC") ("COAG Litigation").[2]

The case culminated in a four-week bench trial from October 16, 2017 through November 9, 2017, involving 48 witnesses and 366 exhibits.  The trial followed a four-day evidentiary hearing on COAG's motion for a preliminary injunction, which was denied.

---

[2] State of Colorado, *ex rel*. John W. Suthers, Attorney General, and Julie Mead, Administrator, Uniform Consumer Credit Code v. Center for Excellence in Higher Education, Inc., *et al*. Case No: 2014-cv-34530 (Dist. Court of Denver City and County, Colo.).

At that hearing the court commented that he detected "a bias against these type of schools…" Trans., Preliminary Injunction Hr'g, May 8, 2015, 124:4-6.

The COAG Litigation involved five and a half years of investigation and discovery. COAG examined CEHE's business activities over an eleven-year period. During this period, more than 10,000 students enrolled in CEHE's Colorado Campuses. CEHE produced hundreds of thousands of pages of business records, files, and documents, and the parties took more than 50 depositions.

Trial concluded November 9, 2017, and the parties are waiting for the court's opinion. The CID could require witnesses on Topic No. 2 to testify about four causes of action, thousands of documents, and the deposition and trial testimony of 50 or more witnesses.

The COAG Litigation is based upon two consumer protection statutes that have a purpose very similar to that of the CFPA. The same student lending, marketing, and admissions processes are used at each CEHE campus. Requiring CEHE to provide testimony on Topics Nos. 1 and 2 would put CEHE in the inevitable position of providing additional testimony under oath. At a minimum, witnesses will be required to review all of the trial and deposition testimony.

  c. *The CID is overbroad and unduly burdensome because it calls for disclosure of Personally Identifiable Information that CEHE is obligated to protect under federal law.*

The Institutions that CEHE operates are required to comply with the Family Educational Rights and Privacy Act (20 U.S.C. § 1232g and 34 C.F.R. Part 99) ("FERPA"). They are also subject to the Gramm-Leach-Bliley Act Safeguards Rule (15 U.S.C. §§ 6801-6809) and 12 C.F.R. §§ 6801 – 6809) ("GLBA"). Both laws require covered

entities to protect against the unauthorized disclosure of personally identifiable information ("PII"). However, FERPA deals with PII that is sourced in education records, whereas GLBA protects personally identifiable financial information. Compare 34 C.F.R. § 99.3 and 15 C.F.R. § 6809(5).  Although covered entities are permitted to disclose GLBA protected PII to the Bureau under 15 C.F.R. § 6802(e)(5), there is no analogous provision in statute or regulation for CEHE's obligations under FERPA.

FERPA provides a limited exception to its default requirement that institutions obtain prior written consent from affected individuals before the disclosure of PII contained in their education records. *See* 34 C.F.R. § 99.31(9). An institution must make a reasonable effort to notify the affected individuals prior to disclosing the protected information.  Alternatively, the subpoena must have been issued for a law enforcement purpose, and the issuing agency must order that the existence or contents of the subpoena and the information furnished cannot be disclosed.

The protections of 34 C.F.R. § 99.31(9)(ii)(B) are not available to CEHE because the Bureau did not take sufficient steps in issuing the CID to provide any assurances about the redisclosure of information furnished during the hearing.  Similarly, CEHE can not avail itself of the protections afforded by 34 C.F.R. § 99.31(9)(ii) because there is no practical way for CEHE to provide reasonable notice to affected individuals before the request to disclose specific information will be made.  Consequently, CEHE will be forced into making the choice between violating the Bureau's rules by withholding information at the hearing or violating its duty to protect student PII under FERPA. Because such violations could lead to sanctions enforced by the Department of Education, including the

loss of participation in federal student aid programs, 20 U.S.C. § 1232g(b)(1), CEHE

must obtain relief from the current CID.

> d. *The CID is overbroad and burdensome because it seeks information about conduct which, if assumed arguendo constituted a violation of law, the Bureau would have no legal remedy to address due to applicable statute of limitations.*

The scope of the time period for Topic No. 1 vastly exceeds the applicable statute of

limitations for the various statutes the Bureau enforces. CEHE's student loan origination

and collection practices are the primary focus of Topic No. 1. The federal consumer laws

most likely applicable to those practices have either a one or two-year statute of

limitations.   A one-year statute of limitation applies to the Fair Debt Collection Practices

Act, 15 U.S.C. § 1692k(d), and the Truth in Lending Act, 15 U.S.C. § 1640(e).  A two-year

statute of limitation applies to the Equal Credit Opportunity Act, 15 U.S.C. § 1691e(f),

and the Fair Credit Reporting Act, 15 U.S.C. § 1681p.  The extent to which the CID far

exceeds applicable statutes of limitations raises questions about whether the Bureau's

investigatory power is being properly exercised where the information sought is

unrelated to any matter properly under inquiry or for which it can obtain any remedy at

law. *See Carvel v. Lefkowitz*, 431 N.Y.S. 2.d 609, 614 (N.Y. Sup. Ct 1979).

If confronted with such a question, the Bureau is likely to argue that,

notwithstanding the fact that any claims for violations of law it may discover may be

time barred long ago, the CID is not overbroad because even the collection of stale facts

could lead to the discovery of more recent violations of law.  *See, e.g. Consumer Fin. Prot.*

*Bureau v. Harbour Portfolio Advisor, LLC*, 2017 U.S. Dist. LEXIS 21576 *14-15 (E.D.

Mich. 2017).  Notwithstanding predictable axiomatic arguments regarding the supposed

relevancy of facts years older than the applicable statute of limitations, the first principle

that must apply is "that the disclosure sought shall not be unreasonable." *Oklahoma Press Publishing Co.* 327 U.S. 186, 208 (1946).  In this case, because of the numerous substantive changes to CEHE's loan program since 2012, there is little continuity to lend credence to the contention that activity from several years ago reasonably relates to CEHE's recent conduct. And, as the calendar pages turn, the likelihood only increases that the only purpose served by the collection of stale information is the accumulation of "brownie points for a thorough and complete investigation." *Carvel* at p. 13.

        *e.*  *The COAG Litigation may preclude a CFPB enforcement action against CEHE upon a final judgment being entered.*

CEHE acknowledges the final judgment on the merits remains pending in the COAG Litigation.  But the potential that the court's ruling will have preclusive effect against the Bureau is enough to justify a delay in the Bureau's investigation or a significant narrowing of the CID's scope.

Policy considerations underlying the preclusive effect of prior litigation, such as avoiding unnecessary burdens of time and expense, are as relevant to the administrative process as to the judicial process. *Painters Dist. Council No. 38, etc. v. Edgewood Contracting Co.*, 416 F.2d 1081, 1084 (citing *Old Dutch Farms, Inc. v. Milk Drivers and Dairy Employees Local Union Number 584*, 281 F. Supp. 971, 974 (E.D.N.Y. 1968).  As Justice Thurgood Marshall cautioned in *Oklahoma Press Pub. Co. v. Walling*, "[o]fficious examination can be expensive.  So much so that it eats up men's substance.  It can be time consuming, clogging the process of business.  It can become persecution when carried beyond reason."  327 U.S. 186, 213 (1946).

The CID duplicates the issues already investigated by the COAG. Continued investigation carries beyond reason the need for the broad scope sought by the Bureau. Indeed, further investigation will amount to persecution.  It was precisely for this reason that CEHE sought to engage Bureau counsel in a meaningful discussion as to the scope of the CID during multiple meet and confers.  Rather than consider CEHE's suggestion that the Bureau first examine CEHE's current and recent practices, Bureau counsel insisted instead on its unreasonable broad timeframe, dismissing CEHE's suggestion out of hand.

Recently ordered discovery in the COAG Litigation may reveal a sufficient representative nexus between COAG and the Bureau. If that is the case, a ruling in favor of CEHE would have preclusive effect (*e.g.* collateral estoppel)—further underscoring the overly broad nature of the CID.  In fact, such a ruling appears likely given the court's prior rulings.  The court's order denying COAG's request for a preliminary injunction is instructive of the broad scope of the issues in the COAG Litigation and CEHE's probability of success on the merits.  The court ruled:

> EduPlan loans help students who may otherwise be unable to attend CollegeAmerica pay for tuition.  No credit check is required for EduPlan loans.  The terms of the EduPlan loans are clearly disclosed.  The loan amount, interest rate, and total payments are clearly provided.  CollegeAmerica monitors its financial planners' interaction with prospective students to ensure that they are following the College's rules and procedures.  There is no evidence of the College providing any false or misleading information about EduPlan loans.  Further, CollegeAmerica's statements that EduPlan helps make college 'affordable' is not misleading . . . Without EduPlan, many students would not be able to pay tuition; therefore, the loans do help students to afford college.

Order Denying Preliminary Injunction, July 16, 2015 at 8.

13

**IV.    Serious questions about the Bureau's involvement with the COAG undermine the CID's validity**.

Although the CID purports on its face to be issued for a proper purpose, the Bureau's conduct suggests the true purpose of the CID is to harass and humiliate CEHE and its former owner.  The CID also seems to reflect an impermissible desire to exploit the CFPA by relitigating claims on behalf of Colorado's Attorney General.

Upon information and belief, the Bureau and COAG have had extensive communications about CEHE.  The issuance of the CID following the recent improper disclosure of sealed court documents to the Bureau strongly suggests that the Bureau and COAG are collaborating to target CEHE.  According to documents filed by COAG in court, the Bureau requested sealed documents.

Pursuant to the recent order of the Denver County Court, COAG must disclose the extent and substance of its communications with the Bureau.  To do so, COAG must provide a log of such communications showing: a) the identity of the people involved in the communication; b) the date of the communications; and c) the substance of the communications.  The log is due no later than May 31, 2019.

COAG's decision to violate the court's order by providing information to the Bureau raises substantial questions about the Bureau's role in that transaction and propriety of the concurrently issued CID.   Until those questions are investigated and resolved in the Colorado proceeding, it is premature to require compliance with the CID.  Given Bureau counsels' representation that it has received numerous complaints about CEHE, the apparent lack of any such complaints in the Bureau's public complaint database further undermines the basis for issuing the CID.

14

Courts have frequently held that evidentiary hearings and/or discovery are appropriate in advance of compliance with an agency investigation or summons where non-frivolous allegations of bad-faith or improper purpose are asserted. *See, e.g.*, *SEC v. Wheeling-Pittsburgh Steel Corp.*, 648 F.2d 118 (3rd Cir. 1981) (finding that "non-frivolous allegations of senatorial interference do constitute sufficient grounds for further proceedings, including discovery"); *United States v. Fensterwald*, 553 F.2d 231, 232-33 (D.C. Cir. 1977) (finding limited discovery appropriate where a taxpayer—who served as counsel in several high-profile cases involving embarrassing revelations about members of the Executive Branch—asserted unproven allegations challenging the good faith of the Internal Revenue Service in conducting a special audit); *United States v. Church of Scientology*, 520 F.2d 818, 824-25 (9th Cir. 1975) (finding that "thin" allegations of bad faith entitled a church to an evidentiary hearing to determine whether discovery into agency's purpose in issuing a summons was appropriate).

In the instant case, a Colorado State court has already concluded that sufficient allegations of impropriety exist in COAG's communications and disclosures to the Bureau. The court concluded they were sufficient to warrant discovery into the matter. Once COAG complies with the court's order, additional revelations may further confirm the CID is tainted because it was not issued for a proper purpose or because it relied on improperly obtained documents, or both. In the interest of transparency and the maintenance of propriety of the Bureau's actions, the Bureau should rescind the CID until COAG's submissions in response to the court order have been made and analyzed.

## V.   Conclusion

For the reasons set forth above, the Bureau should set aside the CID.

Alternatively, the Bureau should modify the scope of the CID to establish a reasonable

timeframe to not exceed three (3) years.

Respectfully submitted,

Steven M. Gombos, Esq.
Stephen T. Chema II, Esq.
Gombos Leyton, PC
11350 Random Hills Road
Suite 400
Fairfax, VA 22030
Counsel to Petitioner
Center for Excellence in Higher Education

## STATEMENT IN CONFORMITY WITH 12 C.F.R. § 1080(e)

The undersigned counsel hereby represent that they conferred with counsel for the Bureau in a good faith effort to reach an agreement to resolve CEHE's objections to the CID but have been unable to reach such an agreement.

The good faith efforts referenced above included two separate telephone conferences between counsel for both parties, the first occurring between attorneys Ben Konop and John Thompson representing the Bureau and Steven Gombos and Stephen Chema on CEHE's behalf at 12:00 p.m., April 26, 2019.  The April 26 meet and confer was followed by a second telephone conference between attorney Konop and Steven Gombos and Stephen Chema on May 14, 2019 at approximately 5:15 p.m.  Although communications between the parties' representatives resulted in the modification of the original CID to change the original return date and to rectify the omission of a timeframe for Topic No. 1, the parties were unable to resolve the impasse related to objections stated in CEHE's petition to which this statement is attached.

Steven M. Gombos, Esq.
Stephen T. Chema II, Esq.
Gombos Leyton, PC
11350 Random Hills Road
Suite 400
Fairfax, VA 22030
Counsel to Petitioner
Center for Excellence in Higher Education

1700 G Street, NW
Washington, DC 20552



May 1, 2019

<u>Via Email</u>

Steven M. Gombos, Esquire
Gombos | Leyton, P.C.
11350 Random Hills Road, Suite 400
Fairfax, VA 22030

Re:   Civil Investigative Demand served on the Center for Excellence in Higher
      Education on April 12, 2019

Dear Mr. Gombos:

This letter modifies the terms for compliance with the civil investigative demand (CID)
issued to the Center for Excellence in Higher Eduction (CEHE) by the Bureau of
Consumer Financial Protection (Bureau), as permitted by 12 C.F.R. § 1080.6(d). This
letter sets forth the only modifications to the CID. The Bureau's willingness to approve
these modifications is based, in part, on CEHE's representations described or referenced
below. The production of information and documents in accordance with the
modifications described below constitutes compliance with the CID.

**Date of Hearing**

The CID as issued on April 12, 2019 required a representative of CEHE to appear and
provide testimony on May 21, 2019 at 10:00 a.m. at the U.S. Attorney's Office in Salt Lake
City, UT.   **<u>The Bureau agrees to modify the date of the hearing to June 11, 2019.</u>**

**Modification to Instructions**

CEHE pointed out the inadvertent omission of an instruction pertaining to the "Applicable
Period for Responsive Materials." The Bureau modifies the CID to add the following
Instruction:

> "**Applicable Period for Responsive Materials**." Unless otherwise
> directed, the applicable period for the request is from January 1, 2012 until
> the date of this CID.

**consumerfinance.gov**

**Nature of the Modifications**

To assist in construing any terms of this letter, the definitions set forth in the CID are incorporated by reference. This letter does not change the Company's responsibilities described in the Document Retention instruction in the CID. Further, nothing in this letter precludes the Bureau from issuing additional CIDs or seeking discovery from the Company.

If you have any questions regarding the terms outlined above, contact Enforcement Attorney Benjamin Konop at 202-435-7265.

Sincerely,

# Jeffrey Paul Ehrlich

Digitally signed by Jeffrey Paul Ehrlich
Date: 2019.05.01 16:36:46 -04'00'

Jeffrey Paul Ehrlich
Deputy Enforcement Director

CEHE EXHIBIT A - 2

UNITED STATES OF AMERICA
BEFORE THE BUREAU OF CONSUMER FINANCIAL PROTECTION

IN THE MATTER OF
Center For Excellence In
Higher Education

## AFFIDAVIT OF ERIC JUHLIN

I, Eric Juhlin, being duly sworn under oath, state as follows:

1.     I am over eighteen years of age and reside in Utah. I hold the position of Chief Executive Officer for Center for Excellence in Higher Education, Inc. d/b/a Stevens-Henager College, CollegeAmerica, California College San Diego, and Independence University ("CEHE"). I have been so employed since May 2010. I have primary day-to-day responsibility for each of the colleges CEHE operates.

2.     I either have direct personal knowledge of the facts presented in this declaration based on my participation, involvement, or awareness for the related events and occurrences or have conducted sufficient inquiry to determine the balance of facts presented in this declaration. If called as a witness I could competently testify to these facts as a representative of CEHE.

3.     This declaration is offered in support of CEHE's Petition to Set Aside the Consumer Financial Protection Bureau's (the "Bureau") Civil Investigative

1

Demand dated April 15, 2019 and amended by the Bureau's letter dated May 1 (the "CID").

4. The CID seeks oral testimony related to institutional student loan programs offered by postsecondary institutions operated by CEHE: Stevens-Henager College, CollegeAmerica, California College San Diego, and Independence University (collectively the "Institutions") for the time period beginning January 1, 2012 through the date of the CID.

5. Since January 1, 2012, CEHE revised its written policies and procedures related to Institutions' loan program approximately [4] times. In general, the reasons for such policy changes related to structural changes in the administration process. For example, during the applicable period, the loan programs were managed on a decentralized basis at each campus for a period of time, then for another period of years, management of several key functions were delegated by contract to a third party, before those functions were again brought in-house to be managed centrally.

6. The loan program evolved in numerous other ways since January 1, 2012; for example, there have been changes made to the loan program's interest rate, the duration of the loan, and in all of the informational documents and loan disclosures that reflect the program's basic terms.

7. As a result, to fully catalog the components and changes to the loan program since January 1, 2012 would require the identification and review of an expansive amount of documentation.

2

8.      Additionally, CEHE estimates that as many as 200 to 400 employees may have had some role related to the loan program related to topics appearing on the CID: marketing, underwriting, origination, servicing, and collection, and in the training, supervision, and management functions related to those processes.

9.      The CID also seeks testimony related to litigation involving the loan program for the same time frame: January 1, 2012 through May 1, 2019. During that time, CEHE has been a party to one significant piece of litigation. The Colorado Attorney General brought suit against CEHE in the District Court of Denver City and County in 2014.

10.     That case, which remains ongoing, involved five-and-a-half years of investigation and discovery into CEHE's operations at three Colorado campuses, including the administration of the loan program.

11.     In responding to the Attorney General's requests in discovery, CEHE produced hundreds of thousands of pages of business records, files, and documentation. Over 50 depositions were taken in the case, and the Colorado Attorney General took testimony at an additional 20 civil investigative hearings.

12.     The case went to trial before Judge Ross B.H. Buchanan from October 16, 2017 through November 9, 2017. During this four-week bench trial, 48 witnesses were examined, and 366 exhibits were admitted into evidence.

CEHE EXHIBIT B - 3

I declare under penalty of perjury under the laws of the United States of America that the forgoing is true and correct to the best of my knowledge.

Executed on May 21, 2019, at Salt Lake City, Utah.

Eric Juhlin

4

Exhibit D

Bureau of Consumer Financial Protection
1700 G Street NW
Washington, D.C.  20552



IN RE CENTER FOR EXCELLENCE
IN HIGHER EDUCATION

2019-MISC-Center for Excellence in Higher Education-0001

### DECISION AND ORDER ON PETITION BY CENTER FOR EXCELLENCE IN HIGHER EDUCATION TO SET ASIDE OR MODIFY THE APRIL 12, 2019, CIVIL INVESTIGATIVE DEMAND

On May 21, 2019, the Center for Excellence in Higher Education (CEHE) filed a Petition with the Bureau seeking to set aside or modify a civil investigative demand (CID) that the Bureau served on it on April 12, 2019, and that the Bureau modified by a letter dated May 1, 2019.  For the reasons set forth below, I deny CEHE's Petition.

### FACTUAL BACKGROUND

On April 12, 2019, the Bureau issued a CID to CEHE seeking information about whether it is extending credit to college students, and whether in connection with any such credit, it has misrepresented the nature of the credit it is offering, or has enrolled students in financing programs without their consent or knowledge.  As explained in the CID's Notification of Purpose, the Bureau seeks:

> to determine (1) whether colleges or associated persons are offering to extend credit, extending credit, or providing financial-advisory services to students; (2) whether these persons, in connection with offering to extend credit, extending credit, or providing financial-advisory services, have misrepresented the true nature of a financing program or enrolled students in a financing program without their knowledge or consent in a manner that is deceptive, unfair, or abusive, in violation of §§ 1031 and 1036 of the Consumer Financial Protection Act of 2010, 12 U.S.C. §§ 5531, 5536; and (3) whether Bureau action to obtain legal or equitable relief would be in the public interest.

The CID seeks oral testimony regarding two topics:

1

1) CEHE's offering and provision of student loans, other forms of financial assistance, or tuition-payment plans to prospective students, including: a) policies, procedures, and practices related to student-loan marketing, underwriting, origination, servicing, or collection; b) CEHE's training, supervision, and performance management of its financial aid planners and any other personnel with job duties related to advising students about how to pay for college; c) CEHE's policies, procedures, and practices related to the servicing of its student loans and its sale of student debt to third parties; and d) CEHE's policies, procedures and practices related to its furnishing of student-borrower information to consumer-reporting agencies.

2) Any litigation in which CEHE has been a party since January 1, 2012, related to CEHE's student loans or other forms of financial assistance to prospective students.

The CID set the investigational hearing for May 21, 2019. The Bureau's rules require that CEHE meet with a Bureau investigator and confer regarding compliance. 12 C.F.R. § 1080.6(c). As a result of this process, on May 1, 2019, the Bureau issued a letter that modified the CID, changing the date for the investigational hearing to June 11, 2019, and limiting topic 1 so that CEHE was only required to provide responsive information from January 1, 2012, until the date of the CID. CEHE then filed its Petition to Set Aside or Modify the CID (Pet.), which was docketed on May 21, 2019.

## LEGAL DETERMINATION

Although CEHE divides its argument into two parts, it actually presents three arguments. It contends that 1) compliance with the CID would be unduly burdensome; 2) the CID seeks information that is not relevant to any law enforcement action the Bureau might bring; and 3) the Bureau has an improper purpose for serving the CID on CEHE. I reject CEHE's first argument because it has failed to show that it would be unduly burdened by complying with the CID. I reject the second argument because it is based on a misunderstanding of the nature of the Bureau's investigation, which is focused on potential violations of the Consumer Financial Protection Act. I reject the third argument, which suggests that the Bureau is acting in bad faith, because CEHE has provided no credible basis for such a claim.

### I. Burden

CEHE's burden argument has seven parts. It argues that: 1) the CID seeks testimony regarding every aspect of its student loan program and covers a seven-year period; 2) the Bureau's rules do not permit CEHE's witnesses to refuse to answer any question; 3) there is no time limit on the length of the Bureau's investigational hearing; 4) the Bureau's May 1, 2019, letter modifying the CID allowed CEHE too little time (40 days) to prepare its witnesses for the hearing; 5) if it fails to comply with the CID, CEHE faces civil contempt; 6) complying with CID topic 2 could require witnesses to testify regarding four causes of action; and 7) the CID forces CEHE to make a choice between withholding responsive information or violating its obligation under the Family Educational Rights and Privacy Act (FERPA), which requires

2

educational institutions to protect the confidentiality of educational records. None of these arguments justifies setting aside or modifying the CID.

The standard for judging burden in connection with an administrative agency's investigative compulsory process (such as a CID) is set forth in *FTC v. Texaco*:

> the question is whether the demand is unduly burdensome or unreasonably broad. Some burden on subpoenaed parties is to be expected and is necessary in furtherance of the agency's legitimate inquiry and the public interest. The burden of showing that the request is unreasonable is on the subpoenaed party. Further, that burden is not easily met where . . . the agency inquiry is pursuant to a lawful purpose and the requested documents are relevant to that purpose. Broadness alone is not sufficient justification to refuse enforcement of a subpoena. Thus courts have refused to modify investigative subpoenas unless compliance threatens to unduly disrupt or seriously hinder normal operations of a business.

555 F.2d 862, 882 (D.C. Cir. 1977) (emphasis in original). *See FTC v. Jim Walter Corp.*, 651 F.2d 251, 258 (5th Cir. 1981) (an administrative subpoena "is not unreasonably burdensome unless compliance threatens to unduly disrupt or seriously hinder normal operations of a business"); *United States v. Chevron U.S.A., Inc.*, 186 F.3d 644, 649 (5th Cir. 1999) (denying claim of undue burden where "Chevron offers no explanation ... why, relative to Chevron's size, the compliance cost and effort 'unduly disrupt or seriously hindered normal operations'"); *FTC v. Texaco*, 555 F.2d at 881-883 (enforcing CID against, among others, Standard Oil, even though it claimed compliance costs of $4 million).

CEHE has failed to show that it would be unduly burdened by complying with the CID. In none of its arguments does CEHE suggest that complying with the CID would in any way disrupt its operations. For that reason alone, I reject its claim of burden. Nor do any of its seven separate arguments demonstrate undue burden. It complains that the CID seeks testimony regarding every aspect of its student loan program and covers a seven-year period. Pet. at 6-7. It also complains that any witness or witnesses testifying in response to the CID's second topic might be required to testify regarding four causes of action. Pet. at 9. But CEHE never contends that it would be burdensome, or even difficult for a witness, or witnesses, to provide the information requested by the CID regarding either CEHE's policies and procedures or its litigation. A CID is not unduly burdensome merely because the target characterizes the requested information as "extensive." *CFPB v. Future Income Payments, LLC*, 252 F. Supp. 3d 961, 970 (C.D. Cal. 2017) ("To show that an administrative subpoena imposes an undue burden, a subpoenaed party cannot merely point to an agency's 'extensive' requests or assert that compliance would be costly"), and cases cited therein.

CEHE argues that the Bureau's rules do not permit CEHE's witnesses to refuse to answer any question, and that if a witness fails to comply even innocently with any part of the CID, that witness that witness will face civil contempt. Pet. at 7. First, CEHE has misread the Bureau's rules regarding the rights of witnesses. Those rules specifically provide that witnesses may refuse to answer any questions that call for the disclosure of privileged information. 12 C.F.R. §§ 1080.8-.9. Further, with respect to innocent mistakes in a witness's testimony, the Bureau's

rules provide witnesses with an opportunity to review their testimony, to make changes, and to provide an explanation for those changes. 12 C.F.R. § 1080.9(a). Nor are Bureau CIDs self-enforcing. Thus, if a witness refuses to provide information that is not privileged, that witness can only face contempt if the Bureau first obtains a court order enforcing the CID, and that witness then violates the court order. Were that to occur, it would be the court, not the Bureau, that would have the authority to impose civil contempt. In any event, such highly speculative arguments – that a CEHE witness would refuse to provide information that was not privileged, or that such a witness would subject him- or herself to contempt of a final court order – provide no basis for setting aside or modifying a CID.

CEHE complains that there is no time limit on the length of the Bureau's investigational hearings, and that the CID did not allow it sufficient time to prepare its witnesses for the investigational hearing. Pet. at 7. There is no basis for CEHE's speculation that, during the course of an investigational hearing, the Bureau would somehow subject its witnesses to excessive questioning. Moreover, were that somehow to occur, CEHE could raise objection at that time. And although CEHE complains that it has only 40 days to prepare its witnesses, it is mistaken. As amended by the Bureau's letter of May 1, the hearing date was set for June 11. Moreover, as a result of its Petition, that date has been delayed even further. CEHE received the Bureau's subpoena on April 12, 2019. Thus, it will have had more than three full months to prepare its witnesses. CEHE has provided no explanation as to why it needs any more time than that to prepare its witnesses to respond to the CID.

Finally, CEHE contends that if it complies with the CID, it "will be forced" to violate the privacy protection provisions of the Family Educational Rights and Privacy Act, 20 U.S.C. § 1232g (FERPA). Pet. at 9-11. FERPA protects the privacy of students and parents by limiting the authority of educational institutions to disclose personally identifiable information that is contained in a student's educational records. 34 C.F.R. § 99.30. Neither of the Topics for Hearing set forth in the CID requires CEHE to provide personally identifiable information from students' educational records. In particular, Topic 1 seeks testimony regarding CEHE's policies, procedures, and practices related to student-loan marketing, training, loan servicing, furnishing of information to consumer reporting agencies. There is nothing about this topic that would require CEHE to disclose personally identifiable information. Indeed, if it were necessary for CEHE to disclose information from students' records, it could comply with FERPA by disclosing this information in de-identified form. *See Ke v. Drexel University*, No. 11-cv-6708, 2015 WL 5316491, *20 n.18 (E.D. Pa. Sept. 4, 2015). Topic 2 seeks information regarding litigation as to which CEHE has been a party. There is nothing about this topic that would require CEHE to provide personally identifiable information. Although CEHE expresses concern that the CID would require it to violate FERPA, its petition provides no explanation as to how this would actually occur.

Accordingly, CEHE has failed to show that complying with the CID would impose any undue burden on it, or require it to violate its obligations under FERPA.

4

## II. Relevance

CEHE makes two arguments that attack the relevance of the information sought by the CID. First, CEHE speculates that the Bureau has served it with the CID so as to identify violations of either the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692, *et seq.* (FDCPA), the Truth in Lending Act, 15 U.S.C. §§ 1601, *et seq.* (TILA), the Equal Credit Opportunity Act, 15 U.S.C. §§ 1691, *et seq.* (ECOA), or the Fair Credit Reporting Act, 15 U.S.C. §§ 1681, *et seq.* (FCRA). Then, CEHE contends that the CID seeks information that is outside the statutes of limitations that apply to those four statutes. Pet. at 11-12. CEHE's second argument regarding relevance relates to a law enforcement action that the State of Colorado brought against it. Pet. at 12-13, citing *Colorado v. Ctr. for Excellence in Higher Educ., Inc.*, No. 2014-cv-34530 (Dist. Ct. of Denver City and Cty., filed Dec. 1, 2014). In that case, Colorado alleged that CEHE had violated the Colorado Consumer Protection Act, Colo. Rev. Stat. §§ 6-1-101, *et seq.*, and the Colorado Uniform Consumer Credit Code, Colo. Rev. Stat. §§ 5-1-101, *et seq.* A bench trial was held in this case in October and November 2017, but the court has yet to reach its decision. CEHE argues, however, that the Bureau's CID duplicates issues investigated by Colorado, and that once the court reaches a decision, that decision will have a preclusive effect on any action that the Bureau might bring. CEHE argues that this justifies either delaying the Bureau's CID or narrowing its scope. Pet. 12-13.

"'[T]he standard for judging relevancy in an investigatory proceeding is more relaxed than in an adjudicatory one.'" *Resolution Trust Corp. v. Walde*, 18 F.3d 943, 947 (D.C. Cir. 1994), quoting *FTC v. Invention Submission*, 965 F.2d 1086, 1090 (D.C. Cir. 1992). The test is whether the information requested is "not plainly incompetent or irrelevant to any lawful purpose of the agency." *Invention Submission*, 965 F.2d at 1089 (quotation marks omitted). "So long as the material the [agency] seeks is relevant to the investigation, the boundary of which may be defined quite generally ... the district court must enforce the agency's demand." *FTC v. Church & Dwight Co.*, 665 F.3d 1312, 1316 (D.C. Cir. 2011) (emphasis in original, internal quotation marks omitted). Further, "[t]he relevance of the material sought by the [agency] must be measured against the scope and purpose of the [agency's] investigation, as set forth in the [agency's] resolution." *FTC v. Texaco*, 555 F.2d at 874. Thus, "in light of the broad deference we afford the investigating agency, it is essentially the respondent's burden to show that the information is irrelevant." *Invention Submission*, 965 F.2d at 1090.

The first of CEHE's two arguments is based on a misreading of the CID's Notification of Purpose. The Notification explains that the Bureau is investigating whether CEHE has committed unfair, deceptive, or abusive acts or practices in violation of §§ 1031 and 1036 of the Consumer Financial Protection Act (CFPA), 12 U.S.C. §§ 5531, 5536, in connection with offering or extending credit, or providing financial-advisory services to students. The CFPA's statute of limitations provides that "no action may be brought ... more than 3 years after the date of discovery of the violation to which an action relates." 12 U.S.C. § 5564(g)(1). So it is irrelevant that the Bureau might be investigating conduct that falls outside the statutes of limitations for the FDCPA, TILA, ECOA, and FCRA. In any event, a CID is not limited merely to information that is actionable. Instead, what counts is whether the information is relevant to conduct for which liability can be lawfully imposed. Even assuming that the CID does seek

information regarding conduct outside the CFPA's statute of limitations,[1] such information may be essential to the Bureau's ability to develop a complete understanding of CEHE's practices and operations. CEHE contends that, because it has made changes to its loan program since 2012, facts regarding previous versions of its program do not relate to its current practices. Pet. at 12. However, it is well settled that that "courts should not refuse to enforce an administrative subpoena when confronted by a fact-based claim regarding coverage ...." *EEOC v. Karuk Tribe Housing Auth.*, 260 F.3d 1071, 1076 (9th Cir. 2001), citing *Okla. Press Publ'g Co. v. Walling*, 327 U.S. 186, 216 (1946); *United States v. Morton Salt Co.*, 338 U.S. 632, 652-53 (1950); *United States v. Powell*, 379 U.S. 48, 57-58 (1964). Thus, this argument fails.

CEHE's second argument is highly speculative. It speculates that *Colorado v. Center for Excellence* will result in a final judgment on the merits, that the Bureau will bring a law enforcement action against CEHE, that in that action, CEHE will be able to establish that the Bureau and the Colorado Attorney General are in privity, and that every cause of action the Bureau brings (necessarily under federal law) will be the same as a cause of action brought by Colorado under Colorado state law. *See Smalls v. United States*, 471 F.3d 186, 192 (D.C Cir. 2006) (setting forth the elements of claim preclusion). However, "[a]t the pre-complaint stage, the court is not free to speculate as to possible charges in a future complaint, and then determine the relevance of the subpoena requests on that basis."[2] *FTC v. Church & Dwight Co.*, 747 F. Supp. 2d 3, 9 (D.D.C. 2010), *aff'd*, 665 F.3d 1312 (D.C. Cir. 2011). I reject CEHE's claim-preclusion argument because it is based upon multiple speculations, any one of which undermines the argument.

### III.   Improper Purpose

CEHE's final argument is that the Bureau's true purpose in issuing the CID is not to investigate a possible law violation, but to "harass and humiliate." Pet. at 14. According to CEHE, "upon information and belief," it contends that the Bureau and the office of the Colorado Attorney General have had extensive communications regarding CEHE, and Colorado disclosed "sealed court documents" to the Bureau.[3] CEHE contends that this "strongly suggests that the Bureau and [the Colorado Attorney General] are collaborating to target CEHE." Pet. at 14. In particular, CEHE argues that Colorado's "decision to violate the court's order by providing information to the Bureau raises substantial questions about the Bureau's role in that transaction

---

[1] Since the CFPA's statute of limitations begins to run on the date of discovery of a violation, it is not possible during an investigation to make blanket statements as to whether particular conduct falls outside the limitations period.

[2] CEHE also ignores that, even if Colorado prevails in its enforcement action, it could not obtain relief for consumers nationwide.

[3] In its Petition, CEHE notes that the court in *Colorado v. Center for Excellence in Higher Education* required Colorado to file logs of its communications with the Bureau. Those logs were filed by May 31, 2019, ten days after CEHE filed its Petition. On June 17, 2019, CEHE submitted a Supplement to its Petition, and it attached the logs of those communications as exhibits to its Supplement.

and propriety of the concurrently issued CID." *Id.* CEHE also notes that, although the Bureau's counsel represented that the Bureau had received complaints regarding CEHE, there are no such complaints on the Bureau's online complaint database.

The Bureau is entitled to a presumption of good faith in the conduct of its investigations. *United States v. Garden State Nat'l Bank*, 607 F.2d 61, 68 (3d Cir. 1979). Because CEHE is challenging that presumption, it carries a heavy burden if it wants to show that the CID was issued for an improper purpose. It must "assert non-frivolous allegations and submit meaningful evidence sufficient to make the allegation factually credible." *Taggart v. Department of Justice*, No. 16-cv-4040, 2017 WL 319062, *11 (E.D. Pa. Jan. 20, 2017) (cleaned up).

CEHE has failed to meet its heavy burden. That burden is not met where the evidence is supported by only "information and belief." In fact, CEHE's suggestion of improper purpose appears to have no basis whatsoever. Both the Bureau and the states have a role with respect to consumer protection. So it is appropriate for the Bureau to contact state law enforcement authorities and to obtain information from those authorities relevant to the Bureau's investigation.[4] The fact that Colorado may have released documents to the Bureau that were subject to a protective order in state court litigation hardly establishes that the Bureau acted in bad faith. And, as soon as the Bureau learned of the improper release, it destroyed those documents. Finally, the mere fact that there are no complaints regarding CEHE listed on the Bureau's website hardly demonstrates bad faith, because not all complaints received by the Bureau are listed on the website. In any event, there is no merit to CEHE's suggestion that the Bureau must have some specific quantity of evidence of a violation before it may issue a CID. *See United States v. Morton Salt Co.*, 338 U.S. 632, 642-43 (1950) (agency may investigate because it wants assurance that the law is not being violated). Thus, I conclude that the Bureau has an appropriate purpose for this investigation, and CEHE's argument regarding improper purpose is meritless.

## CONCLUSION

For the foregoing reasons, I deny CEHE's Petition. CEHE is directed to comply with the CID dated April 12, 2019, as modified by the letter of May 1, and provide oral testimony at a time and location to be specified by Enforcement staff, or at another mutually agreeable time and location arranged with Enforcement staff.

August 18, 2019

Kathleen L. Kraninger, Director

---

[4] There is nothing in the communications logs, which CEHE attached as exhibits to its Supplement, indicating any inappropriate purpose.

Exhibit E



1700 G Street, NW
Washington, DC 20552

September 19, 2019

**<u>Via Overnight and Certified Mail</u>**

Steven M. Gombos
Gombos & Leyton P. C.
11350 Random Hills Road, Suite 400
Fairfax, Virginia 22030

Re:   Center for Excellence in Higher Education

Dear Mr. Gombos:

Following Director Kraninger's August 18 Order denying the CEHE's petition to set aside the Bureau's CID, the Bureau will conduct its investigative hearing of CEHE at 10 a.m. on October 11, 2019. The hearing will take place at the U.S. Attorney's Office in Salt Lake City, UT and it will cover the topics set forth in the Bureau's CID of April 12, as modified on May 1.

Please let me know if you have any questions.

Best regards,

/s/ Ben Konop

Benjamin Konop
Senior Litigation Counsel
Office of Enforcement

# Exhibit F

Stephen T. Chema
Also admitted to practice in Maryland
and the District of Columbia

703-934-9835 Direct
stchema@glpclaw.com



# GOMBOS | LEYTON PC

### ATTORNEYS

11350 Random Hills Road │ Suite 400 │ Fairfax, Virginia 22030
703.934.2660 Main │ 703.934.9840 Fax │ www.glpclaw.com

October 7, 2019

**By email only**
Kathleen L. Kraninger, Director
Consumer Financial Protection Bureau
1700 G Street NW
Washington, D.C. 20552
Re: Reconsideration of the CFPB's August 18, 2019 decision

Dear Director Kraninger:

This letter follows discussions with CFPB counsel Ben Konop to reach a compromise as to the scope of the civil investigative demand ("CID"). We write to ask the CFPB to reconsider its August 18, 2019 decision denying Center for Excellence in Higher Education's ("CEHE") petition to set aside or modify the CFPB's civil investigative demand.

First, the scope of the CID exceeds the period in which CEHE offered any loan program. The CID describes CEHE to include the four colleges it owns (defining "the Company" and "you" and "your" to include CEHE's wholly owned subsidiaries).  However, CEHE did not acquire ownership of the referenced colleges until December 31, 2012—a full year **after** the CID's opening timeframe. Prior to December 31, 2012, CEHE had no ownership interest in any institution of higher education and did not offer any loan or tuition-assistance program of any kind.

Second, the CID's notice of purpose and the corresponding topics for oral testimony are described in such broad language that CEHE cannot reasonably evaluate its own practice or policies or adequately prepare to testify without unduly disrupting its operations. The CID may target only one aspect of CEHE's operations, but as currently framed, it targets the entirety of that operation. Indeed, the detailed subpoints describing the topics for the hearing stretch the CID over every corner of CEHE's loan or tuition-assistance program.

Kathleen L. Kraninger, Director
October 7, 2019
Page 2

The CFPB's decision shields the CID from criticism by claiming that broadness alone does not justify refusal **to enforce** a subpoena. (Dec. at 3).  However, CEHE's petition asked the CFPB, as the issuing entity, to set aside **or modify** the scope of its CID in a more reasonable manner. In short, CEHE asked the CFPB to follow its own public comments about "provid[ing] more information about the potentially wrongful conduct under investigation." *See* April 23, 2019 Press Release: *CFPB Announces Policy Change Regarding Bureau Civil Investigative Demands*, available at https://www.consumerfinance.gov/about-us/newsroom/cfpb-announces-policy-change-regarding-bureau-civil-investigative-demands/.

Let us be clear: CEHE is not opposed to providing testimony.  Our remaining request (and concern) is that the scope of the testimony be appropriate for CEHE's ownership and modified to minimize the preparatory burden on CEHE's Chief Executive Officer.

It would greatly help CEHE's preparation, for example, if the CFPB provided redacted copies of the complaints Mr. Konop indicated the Bureau has received about CEHE's loan or tuition-assistance program. Mr. Konop mentioned the complaints in one of our prior calls, but he has refused our request for information about the complaints. At this time, CEHE does not know when the complaints were filed, what period of time they address, or what aspects of its loan program elicited the complaints. Redacted copies of the complaints would make CEHE's preparation easier and would not impede the CFPB's ability to analyze CEHE's loan program.

The CFPB's decision also treats the words "unduly disrupt" as a talisman, rather than as a conclusion inferred from facts, all the while ignoring CEHE's description of the demands the CID imposes.

There is no doubt that compliance with the CID, as it is drafted, will unduly disrupt or seriously hinder CEHE's operations. As CEHE's petition explained, preparing for Hearing Topic number 1 would require a comprehensive review and evaluation of the activities of more than 40 individuals who are employees or former employees of CEHE, or representatives of various third party vendors who participated in CEHE's institutional student loan program or other forms of



Kathleen L. Kraninger, Director
October 7, 2019
Page 3

financial assistance, or tuition-payment plans since 2012. It would also require
the review of thousands of pages of documents produced by those individuals.
Meanwhile the second topic related to litigation would require a similar review
of the 2017 trial described in the Petition, which lasted 4 weeks and included
testimony from 48 witnesses and 366 trial exhibits.

CEHE's CEO has estimated that he will need at least 3 full weeks, or 120 hours, to
fully prepare for his testimony. That time is necessary to review the full history
of CEHE's loan program dating back to the beginning of 2013 and the colleges'
practices back to January 2012, examine reports and data, meet with critical
people, review the trial testimony and exhibits from relevant litigation, and any
other miscellaneous work. (See Ex. A, Declaration of Eric Juhlin).

As CEHE explained in its petition, the number of individuals with discrete
information responsive to the CID will require significant one-on-one meetings to
prepare Mr. Juhlin for his testimony. (See Petition at 8-9). Mr. Juhlin has
conservatively estimated that he will need to have multiple meetings with
CEHE's Director of Information Technology, current and former directors of
Central Financial Aid, numerous representatives from multiple outside vendors
with whom CEHE has contracted aspects of its loan program, and a meaningful
sample size of employees who worked as campus directors or financial planners
between 2012 and 2016. (See Ex. A, Declaration of Eric Juhlin). In addition, Mr.
Juhlin estimates that he will have to review no less than 1,000 pages of material
to fully prepare for his testimony. (*See id.*)

Absent some reasonable limit on the CID's scope or specificity about what the
CFPB is investigating, the CID will unduly disrupt or seriously hinder CEHE's
operations. Simply put, CEHE would have to operate without its CEO for
approximately three full weeks.

The CFPB rejected those concerns about time constraints in its decision (see
Decision at 4), explaining that CEHE had the summer to prepare while its petition
was pending before the Bureau. Setting aside that CEHE could not know in
advance how long the CFPB would deliberate, the decision suggests that CEHE
should have considered its petition to set aside or modify the CID dead when it
was filed.



Kathleen L. Kraninger, Director
October 7, 2019
Page 4

On the other hand, the decision suggests that the CFPB rules protect witnesses who may make inadvertent mistakes. The decision notes, in response to CEHE's petition, that witnesses may make changes to their testimony and provide an explanation for those changes. (See Decision at 4). That's at best a half-truth. While a witness may be free to submit changes to his or her testimony, it is an issue for the fact finder to determine what weight to give to the original testimony or to the errata sheet. And by all indications so far, the Bureau has made clear that there is no impartial ear for CEHE to bend so long as the CFPB holds all the cards (as investigator, jury, and judge). We are hopeful that has not been the intended message.

Fourth, the August 18, 2019 decision elides CEHE's supplemental petition. The decision rejected as insufficient CEHE's argument "on information and belief" that the CFPB had been communicating with the Colorado Attorney General's Office (see Decision at 6-7), while ignoring (minus one conclusory footnote) that CEHE later substantiated the basis for its information and belief allegation in a supplemental petition to set aside or modify the CID.

Finally, the CID is unenforceable because the CFPB is unconstitutionally structured. *See CFPB v. RD Legal Funding, LLC*, 332 F. Supp. 3d 729, 785 (S.D.N.Y. 2018) (terminating the Bureau as a party to the case because the Bureau is unconstitutionally structured and lacks authority to bring claims under the Consumer Financial Protection Act); Brief of the Solicitor General of the United States, *Seila Law LLC v. CFPB*, No. 19-7 (Sept. 17, 2019) (expressing the view of the Department of Justice and Director Kraninger that the CFPB is unconstitutionally structured).



Kathleen L. Kraninger, Director
October 7, 2019
Page 5

For these reasons, CEHE will not comply with the Bureau's CID as written, absent an enforcement order entered by an authorized federal court. We ask that you reconsider the decision and narrow the scope as argued above.

Respectfully,

Stephen T. Chema



# Exhibit A

Affidavit of Eric Juhlin

I, Eric Juhlin, hereby declare as follows:

1.   I am over eighteen years of age and reside in Utah. I am the President and Chief Executive Officer ("CEO") for Center for Excellence in Higher Education, Inc. ("CEHE"), d/b/a Stevens-Henager College, CollegeAmerica, California College San Diego, and Independence University. I have served as CEHE's CEO since December 31, 2012. I have senior-level oversight and responsibility for the colleges that CEHE operates.

2.   I have direct personal knowledge of the facts presented in this affidavit and, if called as a witness, I could competently testify to these facts as a representative of CEHE.

3.   This declaration is offered in support of CEHE's letter requesting that Director Kraninger reconsider her August 18, 2019 decision denying CEHE's petition to set aside or modify the Consumer Financial Protection Bureau's civil investigative demand ("CID").

4.   Following the Director's August 18, 2019 decision, and at the request of CEHE's counsel, I further analyzed how much time I would need to prepare to testify on CEHE's behalf under the CID's current terms. I conservatively estimate that I would need at least 3 full weeks (120 hours) to fully prepare my testimony.

5.   In arriving at that estimate, I included the time I would need to review the full history of CEHE's loan program dating back to 2013 (when CEHE acquired the colleges) as well as the loan programs the colleges offered in 2012, examine

reports and data, meet with critical employees and vendors, and familiarize myself with virtually every aspect of the trial testimony and exhibits from the enormous record in CEHE's Colorado litigation (*Colorado v. CEHE*).

6.   Specifically, I concluded that to fully prepare I would need to have multiple meetings with CEHE's director of information technology, CEHE's former directors of Central Financial Aid, Lana Moon and Ed Kraus; CEHE's current director of Central Financial Aid, Scott Schuler; 2-3 representatives from a third-party vendor CEHE used to service internal loans for a portion of the period at issue; representatives from multiple third-party collection agencies that were used during the relevant period; at least 15 of CEHE's current financial planners (one or more from each campus) to verify and assess adherence to CEHE's policies and practices; 6-8 former financial planners who worked at the campuses during the earliest years at issue; 3-4 employees working in CEHE's collections department; 3-4 Campus Directors to gather materials, reports, and data about the loan program dating back to 2012; and 3-4 additional former employees who may have useful knowledge about the loan program in the past.

7.   I also estimated the volume of documents I would need to review in order to fully prepare for my testimony. And while difficult to predict before conducting the review, I reasonably estimate that I would need to review at least 200-400 pages of material from the Colorado litigation to fully prepare to testify to the CID's second hearing topic. I anticipate having to review approximately 300-500 pages of reports and materials to prepare to testify about how CEHE's loan

program was run, processed, and implemented for all time periods since 2012. Although I cannot know with certainty at this time, I anticipate reviewing another 200-400 pages of reports, data, and materials provided by multiple third-party collections agencies CEHE has contracted with and another 100-200 pages of reports, data, and materials from the third-party vendor CEHE previously contracted with to service loans.

8.   The demands on my time as a result of the CID would significantly disrupt and impair my management and leadership of CEHE on a day-to-day basis.  As CEO of CEHE, I am presently in charge of several critical matters relative to the operation of our colleges and our ability to serve students.  These critical and time-consuming matters include the following.

(a) CEHE is in the process of recertifying and reapplying with the U.S. Department of Education ("USDOE") for all its colleges (15 locations) to renew their eligibility to participate in the federal Title IV financial aid programs.  CEHE submitted its applications to the USDOE on September 25, 2019, and we have already received additional requests from the USDOE relative to these applications.  CEHE must secure new approvals from the USDOE on or before December 30, 2019, before the colleges' current Program Participation Agreements expire.  As CEO, it is my direct responsibility to respond to additional information requests from the USDOE, facilitate the ongoing review of CEHE's renewal applications and

ensure that the applications are reviewed and approved by the USDOE before the December deadline.

(b) CEHE's colleges are currently on a system-wide probation with the colleges' accreditor, the Accrediting Commission of Career Schools and Colleges ("ACCSC").  CEHE provided ACCSC with a 15,000 page response on December 19, 2018 and a 7,000 page response on May 30, 2019.  CEHE expects ACCSC to require an additional response sometime this fall. CEHE must clear the probation items with ACCSC on or before September 2020. I am directly responsible for, and leading the implementation of, 2-3 strategies throughout CEHE's colleges to address areas of concerns from ACCSC.

(c) CEHE recently made the strategic decision to suspend the enrollment of **new** students in CEHE's ground campuses.  While CEHE is making this strategic shift, I am directly responsible for ensuring that all of CEHE's ground campuses remain fully staffed to provide all of the necessary education and services to existing students so that they can complete their degree programs and graduate.  To keep staff employed and motivated, I am personally visiting several on-ground campuses each month to oversee their continued smooth operation.

(d) Leading 2020 strategic planning.  Each fall (September – November) CEHE conducts company-wide strategic planning for the upcoming year.  During our planning cycle, CEHE develops and finalizes budgets for 2020, develops

marketing plans for 2020, develops student service plans for 2020, develops student retention plans for 2020, and finalizes capital expenditure plans and budgets for 2020. In addition, CEHE reviews, updates, and modifies its 5-year plan each fall planning cycle. As CEO, I lead, coordinate, and manage each of these important and critical planning events. I am ultimately the single person responsible to CEHE Board of Directors for the development and completion of annual plans, budgets, and strategies.

Devoting up to three full weeks of my time to sufficiently prepare for the scope of the requested CID will jeopardize CEHE's ability to respond to current demands, prepare for the upcoming year, address important matters with the U.S. Department of Education and the Accrediting Council for Career Schools and Colleges, and, most importantly, provide services and support to current students.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Executed on October 7, 2019, at Salt Lake City, Utah.

_____

Eric Juhlin