Paul W. Shakespear (14113)
Snell & Wilmer (UT)
15 W. South Temple, Ste. 1200
Gateway Tower West
Salt Lake City, Utah 84101
Telephone: (801) 257-1900
Email: pshakespear@swlaw.com

Steven M. Gombos (*pro hac vice*)
David A. Obuchowicz (*pro hac vice*)
Jacob C. Shorter (*pro hac vice*)
Gombos Leyton, P.C.
11350 Random Hills Road
Suite 400
Fairfax, VA 22030
Telephone: (703) 934-2660
Email: sgombos@glpclaw.com
        dobuchowicz@glpclaw.com
        jshorter@glpclaw.com

Attorneys for Respondent, Center for Excellence in Higher Education, Inc.

# United States District Court
## for the District of Utah

| | |
|---|---|
| Bureau of Consumer Financial Protection,<br><br>Petitioner,<br><br>vs.<br><br>Center for Excellence in Higher Education, Inc.,<br><br>Respondent. | **Response to Petition to Enforce Civil Investigative Demand**<br><br>Case No. 2:19-cv-00877-DB-CMR<br><br>Magistrate Judge Cecilia M. Romero |

# Table of Contents

RESPONSE TO PETITION TO ENFORCE CIVIL INVESTIGATIVE DEMAND AND SUPPORTING MEMORANDUM............................................................................... 1

INTRODUCTION .................................................................................................................. 1

FACTUAL AND PROCEDURAL BACKGROUND.................................................................. 2

    *1.   COAG thoroughly investigated CEHE's EduPlan policies and practices, culminating in a four-week trial.*.................................................................................................. 3

    *2.   After the Colorado court indicated its skepticism of COAG's claims, the Bureau used its immense power to redo the COAG investigation.*.............................................. 5

    *3.   Without any explanation or justification, the Bureau issues an unreasonably broad and burdensome CID to CEHE.*.......................................................................... 6

ARGUMENT ......................................................................................................................... 8

  I.    The CID is Unenforceable Because the Bureau is not Constitutionally Structured .......... 8

      A.     The Bureau's Structure Violates the Separation of Powers..................................... 8

      B.     The Bureau Lacks Authority to Enforce the CID. ................................................. 11

      C.     In the Alternative, the Court Should Stay its Ruling Until the Supreme Court Decides *Seila Law*.............................................................................................. 12

  II.   The Scope of the CID is Unreasonably Oppressive and Threatens Liability Through a Fundamentally Unfair Hearing Process. .......................................................................... 13

      A.     The Bureau's Improper Interest in Redoing the COAG Investigation Does not Justify the Substantial Burden to CEHE............................................................. 15

          *1.  Congress has deemed COAG capable of investigating alleged deceptive and abusive practices.*................................................................................. 16

          2.  *Because CEHE has had its day in court on the issues the Bureau seeks to investigate, it is entitled to finality on those matters*. ......................................... 16

      B.     The Bureau has not Justified the Burden Imposed by the Expansive CID........... 18

          *1.  The Bureau's interest in investigating an overly broad seven-year period is low.*.................................................................................................. 19

i

     2.   *Forcing CEHE to testify about seven years of policies and practices and a trial involving dozens of witnesses and hundreds of exhibits is overly burdensome.* ... 20

  C.    The CID was Issued for an Improper Purpose:   The Bureau Exploits its Investigative Process to Harass CEHE. .............................................................. 22

     1.   *The Bureau was created to protect consumers, not give state Attorneys General a second bite at the apple when they disagree with a court's ruling* ...................... 22

     2.   *The Bureau's unsupported justification that it received multiple complaints further calls into question its true motives in investigating CEHE* .................................. 23

     3.   *The unreasonable scope of the CID testimony creates a "perjury trap."* ............ 24

CONCLUSION ........................................................................................................... 25

Certificate of Service ................................................................................................ 27

**Cases**

*A. Duda & Sons Cooperative Ass'n v. United States*,
295 F.2d 193 (5th Cir. 1974) ..................................................................... 17

*CFPB v. RD Legal Funding, LLC*,
332 F. Supp. 3d 729 (S.D.N.Y. 2018).............................................. 8, 11, 12

*Collins v. Mnuchin*,
 938 F.3d 553 (5th Cir. 2019) (*en banc*) .............................................. 9, 10

*Colorado, ex rel. Suthers, et al. v. Center for Excellence in Higher Education, Inc., et al.*,
Case No. 2014CV34530 (Colo. Denver City & County Dist. Ct.)........................................ 4, 5, 6

*FEC v. NRA Political Victory Fund*,
6 F.3d 821 (D.C. Cir. 1993)............................................................. 8, 11, 12

*Fed. Trade Com. v. Texaco, Inc.*,
555 F.2d 862 (D.C. Cir.1977) .................................................... 15, 17, 19

*Free Enterprise Fund v. Public Co. Accounting Oversight Bd.*,
561 U.S. 477 (2010)................................................................................ 8, 10

*Humphrey's Executor v. United States*,
295 U.S. 602 (1935)...................................................................................... 10

*Lucia v. SEC*,
138 S.Ct. 2044 (2018)............................................................................ 11, 12

*Oklahoma Press Publishing, Co. v. Walling*,
327 U.S. 186 (1946).............................................................................. passim

*PHH Corp. v. CFPB*,
881 F.3d 75 (D.C. Cir. 2018) (*en banc*).......................................... passim

*Resolution Tr. Corp. v. Greif*,
906 F. Supp. 1457 (D. Kan. 1995) ...................................................... 14, 19

*Safir v. Gibson*,
432 F.2d 137 (2d Cir. 1970)....................................................................... 16

*SEC v. Wheeling-Pittsburgh Steel Corp.*,
648 F.2d 118 (3d Cir. 1981)....................................................................... 23

*United States v. Morton Salt Co.*,
338 U.S. 632 (1950)..................................................................................... 17

**Statutes**

12 USC § 5552 (a)(1) .................................................................................. 17

12 USC § 5552(a) ....................................................................................... 16

12 USC § 5491(b) ......................................................................................... 9

12 USC § 5491(c)(3) ..................................................................................... 9

12 USC § 5497(a)(1)-(2) ............................................................................... 9

12 USC § 5564 ............................................................................................ 12

12 USC § 5497(a)(1) ..................................................................................... 9

12 USC§ 5497(2)(A)(iii)…………………………………………………………9

**Other Authorities**

Brief of Petitioner, *Seila Law v. CFPB*,
No. 19-7 (S.Ct. Dec. 9, 2019) ..................................................................... 12

Brief of the United States, *All-American Check Cashing, Inc. v. CFPB*,
No. 19-432 (S.Ct. Nov. 6, 2019) ................................................................. 11

Brief of United States, *Seila Law v. CFPB*, No. 19-7
(S.Ct. Sept. 17, 2019)......................................................................... 9, 10, 11

Motion to Adjourn Oral Argument, *CFPB v. RD Legal Funding, LLC*,
No. 18-2743 (2d Cir. 2019) (Doc. 208) ...................................................... 12

Order Adjourning Oral Argument, *CFPB v. RD Legal Funding, LLC,*
No. 18-2743 (2d Cir. 2019) (Doc. 217) ...................................................... 13

**Constitutional Provisions**

U.S. Const. Art. II, § 1, cl. 1 ........................................................................ 8

U.S. Const. Art. II, § 3 .................................................................................. 8

**RESPONSE TO PETITION TO ENFORCE CIVIL INVESTIGATIVE DEMAND
AND SUPPORTING MEMORANDUM**

Respondent, Center for Excellence in Higher Education, Inc. ("CEHE" or "Respondent"), seeks entry of an Order denying the Bureau of Consumer Financial Protection's ("Bureau" or "Petitioner") Petition to enforce its Civil Investigative Demand dated April 15, 2019 ("CID"), as amended by letter dated May 1, 2019.  In the alternative, CEHE requests that this Court modify the scope of the CID from the current seven-year scope to a more reasonable two-years.

**INTRODUCTION**

The Bureau boldly asserts it has nearly unlimited power to impose a costly and burdensome investigation into every aspect of CEHE's admissions and financial aid policies, covering nearly a decade, without any justification and free of any meaningful judicial scrutiny.  It claims this Court has no authority to consider that the CID relitigates policies and practices that were at the center of a five-and-a-half-year investigation by a State Attorney General and a four-week state court trial.  More alarmingly, the Bureau takes this position without offering any justification for the CID's overly broad seven-year scope or any explanation of how reopening these matters serves its interests. Considering current constitutional questions about the Bureau's structure and lack of political accountability, the Bureau's positions are deeply concerning, and this case exemplifies why the judiciary must provide some check on the Bureau's draconian tactics.

The Bureau's investigatory powers are broad but not unlimited. This Court is not a rubber stamp for the Bureau's unreasonable demands.  Indeed, it must weigh the interests served by imposing a duplicative seven-year investigation against the burden caused to CEHE.

On one side of the scale is CEHE's entitlement to finality from the state litigation and the substantial burden it will take to prepare its testimony for the CID hearing.  And that burden is high.  The scope of the CID covers every aspect of CEHE's financial aid and admissions practices

1

over seven years and a four-week bench trial. That trial involved 48 witnesses and 366 exhibits and culminated five-and-a-half years of investigation and discovery in which CEHE produced hundreds of thousands of pages of documents, and the parties took more than 50 depositions. Preparing for the CID hearing will require CEHE's CEO to review and virtually memorize an untenable amount of information.  Such efforts will greatly disrupt CEHE's operations.

On the other side of that scale is the Bureau's interest in protecting consumers from abusive and deceptive financing practices.  Yet the Bureau does not explain how forcing CEHE to testify about matters previously litigated in a four-week trial—all of which is transcribed in a publicly available record—furthers those interests.

What is more, the Bureau could easily tailor its investigation to remove CEHE's burden by telling CEHE what, specifically, it seeks to review at the CID hearing.  In seeking a one-day hearing, the Bureau clearly has specific questions in mind.  But, without justification, the Bureau has refused to provide any specifics and insists that CEHE must prepare to testify about everything within the oppressive scope of the CID.  The Bureau could also easily review the trial record from the state court trial proceedings instead of forcing CEHE to testify about its prior testimony. This demand is patently unreasonable, but it is even more so when the Bureau refuses to provide any justification as to why the process must be conducted this way.

Absent any explanation for the CID's oppressive scope, this Court is precluded from any meaningful review, and the Bureau remains unchecked to relitigate a multi-year state litigation or, worse, use its power to harass CEHE and cause it to incur significant time and expense.

## FACTUAL AND PROCEDURAL BACKGROUND

CEHE is a private, non-profit organization that operates multiple institutions of higher education under four brand names (Stevens-Henager College, CollegeAmerica, California College

2

San Diego, and Independence University, collectively the "Institutions"), consisting of fifteen physical campuses and one online college. (Ex. 1, Declaration of Eric Juhlin, "Juhlin Decl.," at ¶ 4)

In order to make its educational programs more affordable to its students, CEHE offers a private financing program, referred to as an EduPlan loan. *Id.* at ¶ 6. For all relevant time periods, EduPlan is the only institutional consumer financing program offered by CEHE or any of its colleges. *Id.* at ¶ 7. In instances where a student is unable, through a combination of their own available resources and other external financial aid resources, to afford the full projected cost of his or her tuition, CEHE offers the student an EduPlan loan to cover the gap. *Id.* at ¶ 9. Notwithstanding the millions of dollars in institutional scholarships and grants CEHE has provided to students, not all students can afford to pay tuition up front, and CEHE has been committed to removing that limitation for these less-fortunate students in obtaining valuable career education. *Id.* at ¶¶ 8,19.

CEHE's EduPlan program, and its policies and practices related to that program, have been the subject of review from its accreditor, the Accrediting Commission of Career Schools and Colleges; the Department of Education; and most notably, the Colorado Attorney General ("COAG") and the Administrator of the Colorado Consumer Credit Code ("ACCC") (collectively "COAG"). *Id.* at ¶ 10. Despite this substantial oversight, the Bureau now seeks to impose yet another costly investigation, seeking to review the same policies and practices over a period of seven years, without any supporting explanation or justification.

*1. COAG thoroughly investigated CEHE's EduPlan policies and practices, culminating in a four-week trial.*

In December 2012 and September 2013, COAG served two subpoenas on CEHE seeking records dating back to 2006. (Exs. 3 and 4; Juhlin Decl. at ¶ 12). The expansive requests included

90 combined requests for documents. (Exs. 3 and 4).  CEHE worked diligently with COAG over the course of fifteen months to produce over 46,000 pages of documents relating to nearly every aspect of CEHE's admissions, financial aid, advertising, recruitment, and its EduPlan loan program. (Juhlin Decl. at ¶ 13). The subpoenas sought documents on every conceivable representation made to any student or prospective student about CEHE's educational programs, job prospects for graduates, financial aid availability, private financing options, scholarships, and countless other aspects of attending a CEHE school.  (*See* Exs. 3 and 4).  Additionally, COAG took testimony at 20 civil investigative hearings. (Juhlin Decl. at ¶ 14).

After two years of investigation, and CEHE's refusal to enter into a settlement agreement with COAG, in December 2014 COAG served CEHE with a complaint alleging violations of Colorado's Consumer Protection Act, §§ 6-1-101, *et seq.*, and the Colorado Uniform Consumer Credit Code, §§ 5-1-101, *et seq*. (Ex. 5, Compl. in *Colorado, ex rel. Suthers, et al. v. CEHE, et al.*, Case No. 2014CV34530; Juhlin Decl. at ¶ 15).  As with its prior investigation, COAG's claims touched every aspect of CEHE's advertising, advising, recruiting, financial aid, admissions, student disclosures, and the EduPlan loan program. With respect to the EduPlan loans, COAG alleged that "[CEHE's] "conduct was fraudulent and unconscionable in inducing consumers to enter into EduPlan loans" and that "[b]y means of [] unlawful deceptive trade practices, [CEHE] deceived, misled, and unlawfully acquired money from consumers." *Id.* at 32-33.

Over the course of that litigation CEHE produced hundreds of thousands of pages of documents in discovery, and the parties took more than fifty depositions. (Juhlin Decl. at ¶ 16). After five and a half years of investigation and discovery, covering an eleven-year period, CEHE participated in a four-week bench trial from October 16 to November 9, 2017, involving 48

4

witnesses and 366 exhibits.  *Id.* at ¶¶ 17,18.  As expected, CEHE's EduPlan loan program was a central point in that case.[1]  *Id.* at ¶ 19.

2.  *After the Colorado court indicated its skepticism of COAG's claims, the Bureau used its immense power to redo the COAG investigation.*

It is believed that the Bureau was aware of the Colorado trial proceedings.  In fact, COAG's primary expert in that case was Rohit Chopra, who previously served as the Bureau's Assistant Director and Student Loans Ombudsman.  *Id.* at ¶ 20.  In the context of a meet and confer after issuance of the CID, the Bureau refused to comment whether it had collaborated with COAG at any time during that litigation. (Ex. 2, Declaration of Stephen Chema "Chema Decl.," at ¶ 11).  However, the Bureau communicated with COAG and surreptitiously sought to obtain exhibits and testimony from the trial, some of which COAG provided in violation of a court protective order. (Juhlin Decl. at ¶ 21).  After learning that it violated the protective order, COAG waited five days to disclose that it provided records to Bureau, presumably in order to allow the Bureau time to issue the CID as part of an apparent effort to relitigate that case. (Ex. 6, Call Log of COAG and Bureau Phone Communications[2]; Juhlin Decl. at ¶¶ 22,23).  It strains credulity to believe it a mere coincidence that COAG notified CEHE of COAG's violation of the protective order just hours after CEHE received the CID from the Bureau.

And it is not surprising that COAG and the Bureau engaged in these efforts to attack CEHE. From the beginning, the state court indicated skepticism of COAG's claims.  At an initial five-day hearing on COAG's requests for preliminary injunctions, all of which the court denied, the court

---

[1] Evidence closed on November 9, 2017.  However, no final order has yet been entered in that case.  It is CEHE's expectation that the court will issue its ruling by the end of the year.

[2] After discovering COAG's violation of the protective order, CEHE filed a Motion for Sanctions, and pursuant to the court's order on that Motion, COAG produced the Call Log at Exhibit 4. (Juhlin Decl. at ¶ 24-26).

commented that it detected "a bias against these types of schools . . ." (Ex. 7, Excerpt from Prelim. Inj. Hr'g Tr., May 8, 2015, 124:4-6).   And in issuing its ruling on the injunctions, the court held that COAG did not have a reasonable probability of success for its EduPlan program claims, stating:

> EduPlan loans help students who may otherwise be unable to attend CollegeAmerica pay for tuition.  No credit check is required for EduPlan loans. The terms of the EduPlan loans are clearly disclosed.  The loan amount, interest rate, and total payments are clearly provided.   CollegeAmerica monitors its financial planners' interaction with prospective students to ensure that they are following the College's rules and procedures.   *There is no evidence of the College providing any false or misleading information about EduPlan loans.* Further, CollegeAmerica's statements that EduPlan helps make college 'affordable' is not misleading . . . Without EduPLan, many students would not be able to pay tuition; therefore, the loans do help students to afford college."

(Ex. 8, Order Denying Preliminary Injunction, July 16, 2015 at 8) (emphasis added). On notice of the weaknesses in its case, COAG apparently collaborated with the Bureau to continue the effort against CEHE regardless of its potential vindication in the Colorado trial.

3.  *Without any explanation or justification, the Bureau issues an unreasonably broad and burdensome CID to CEHE.*

At the same time COAG was violating a protective order by improperly providing the Bureau documents from the Colorado trial, the Bureau issued the CID to CEHE.  The April 12, 2019 CID seeks testimony in two exceedingly broad areas.  First, it seeks testimony about every aspect of CEHE's loan programs, other forms of financial assistance, and tuition-payment plans to prospective students dating back to 2012.  (Ex. 9, CID). This request covers conceivably every aspect of CEHE's admissions and financial aid practices over a seven-year period.  And the first version of the CID contained no date limitations at all.  It was only after efforts to meet and confer that the Bureau acknowledged the request should have some date limit.  (Chema Decl. at ¶ 5).

Second, the CID seeks testimony on any litigation in which CEHE has been a party since January 1, 2012 related to CEHE's private loans or other forms of financial assistance. (Ex. 9).  As

discussed above, this topic covers the five-and-a-half-year state investigation and discovery period, hundreds of thousands of pages of documents, 20 CID hearings, testimony from 48 witnesses over a four-week trial, and 366 trial exhibits.

Counsel for CEHE and the Bureau first met and conferred by telephone on April 26, 2019. (Chema Decl. at ¶ 4). At that meeting, counsel for CEHE asked the Bureau to explain the need for testimony relating to matters that occurred seven years prior. *Id.* at ¶ 6. The Bureau refused to provide any justification for the expansive timeframe and refused to even consider any limitations. *Id.* Following several emails about dates for the hearing, on May 1, 2019, the Bureau sent a letter identifying a June 11, 2019 hearing date and stating, "[u]nless otherwise directed, the applicable period for the request is from January 1, 2012 until the date of this CID." (Ex. 10, May 1, 2019 Letter from the Bureau to CEHE).

The parties again conferred on May 14, 2019. Counsel for CEHE expressed concern over the apparent coordination between COAG and the Bureau and asked whether the CID was issued at COAG's request. (Chema Decl. at ¶ 11). Without answering the question, the Bureau asserted that it had multiple reasons why it could investigate CEHE, claiming that there were numerous complaints against it. *Id.* at ¶¶ 11-13.

However, counsel for the Bureau refused to provide any specifics to this claim and refused to answer whether any of these alleged complaints dated back to 2012. *Id.* at ¶ 14. The Bureau also refused to offer any information about the dates of the complaints, whether they were made by students or former employees, or even whether they involved the EduPlan loans or any other matters within the Bureau's jurisdiction. *Id.* Counsel for CEHE searched the Bureau's public complaint database without finding any complaints against CEHE or its schools, and when he confronted the Bureau with this fact, the Bureau asserted there was a secret complaint database

which it would not allow CEHE to see. *Id.* at ¶¶ 9, 13. Further, in an October 7, 2019 letter, counsel for CEHE again asked the Bureau for information on the complaints, and the Bureau again declined to respond. (Ex. 11, October 7, 2019 Letter from CEHE to the Bureau; Chema Decl. at ¶ 17). Thus, the Bureau has shielded CEHE and this Court from examining the Bureau's decision-making process in any critical way.

## ARGUMENT

## I.  The CID is Unenforceable Because the Bureau is not Constitutionally Structured

The Consumer Financial Protection Act (CFPA) violates the separation of powers by conferring substantial executive powers on the Bureau's director without subjecting the director to Presidential control. *See* Brief of United States, *Seila Law v. CFPB*, 19-7 at 7-16 (Sept. 17, 2019) (Bureau agreeing it is unconstitutionally structured). Because the Bureau is unconstitutionally structured, it lacks authority to enforce the CID. *CFPB v. RD Legal Funding, LLC*, 332 F. Supp. 3d 729, 785 (S.D.N.Y. 2018); *see FEC v. NRA Political Victory Fund*, 6 F.3d 821, 822 (D.C. Cir. 1993). CEHE therefore asks this Court to dismiss this action with prejudice. In the alternative, CEHE asks the Court to stay its ruling until the Supreme Court resolves the Bureau's constitutionality in *Seila Law v. CFPB*, No. 19-7 (cert. granted Oct. 18, 2019) available at https://tinyurl.com/w6t8gm5.

### A.  The Bureau's Structure Violates the Separation of Powers.

Article II of the Constitution vests the executive power in the President, who must take care that the laws be faithfully executed. U.S. Const. Art. II, § 1, cl. 1; *id*, § 3. Of course, the President cannot alone execute the laws and must often rely on subordinate executive officers. But the Constitution "makes the President accountable to the people for executing the laws" and "gives him the power to do so." *Free Enterprise Fund v. Public Co. Accounting Oversight Bd.*, 561 U.S. 477, 513 (2010). And "[t]hat power includes, as a general matter, the authority to remove those

who assist him in carrying out his duties." *Id.*; *see also Collins v. Mnuchin*, 938 F.3d 553, ___ (5th Cir. 2019) (*en banc*) (holding unconstitutional a restriction on the President's authority to remove an agency head only for cause).

The Bureau is an unprecedented agency, with broad powers and no accountability. When Congress enacted the CFPA, it gave the Bureau unilateral authority over 19 consumer statutes—"covering everything from home finances to student loans to credit cards to banking practices." *See PHH Corp. v. CFPB*, 881 F.3d 75, 165 (D.C. Cir. 2018) (*en banc*) (Kavanaugh, J., dissenting). And that complete authority "over a vital sector of our economy," *Free Enter. Fund.*, 561 U.S. at 508, is controlled by a single director who serves a 5-year term and cannot be removed by the President except for "inefficiency, neglect of duty, or malfeasance in office." 12 USC §§ 5491(b), (c)(3).

On top of that, the Bureau is exempt from the ordinary congressional appropriations process. 12 USC §§ 5497(a)(1); *id.* at (2)(A)(iii). The Bureau instead receives its annual funding from the Federal Reserve Board. 12 USC § 5497(a)(1)-(2) (explaining that the Federal Reserve is required to transfer at the Bureau director's request up to twelve percent of the "combined earnings of the Federal Reserve System"). Simply put, the Bureau director is beyond the reach of any elected branch. *PHH Corp.*, 881 F.3d at 137-38 (Henderson, J., dissenting).

This combination of "power that is massive in scope, concentrated in a single person, and unaccountable to the President" violates the separation of powers. *Id.* at 166 (Kavanaugh, J., dissenting). Indeed, even the Bureau agrees "that the structure of the Bureau, including the for-cause restriction on the removal of its single director, violates the Constitution's separation of powers." Brief of the United States, *Seila Law v. CFPB*, No. 19-7 at 7 (Sept. 17, 2019).

"Since 1789, the Constitution has been understood to empower the President to keep [executive] officers accountable—by removing them from office, if necessary." *Free Enter. Fund*, 561 U.S. at 483. The Supreme Court "has recognized only one limited exception to the President's authority under Article II to remove principal officers of the United States," Brief of the United States, *Seila Law v. CFPB*, No. 19-7 at 9 (citing *Free Enterprise Fund*, 561 U.S. at 495), and that exception is limited to independent agencies led by multi-member commissions. *See Humphrey's Executor v. United States*, 295 U.S. 602, 624 (1935).

In *Humphrey's Executor*, the Supreme Court sustained a for-cause removal restriction on the President's ability to remove commissioners on the Federal Trade Commission. In doing so, the Court stressed that the President's removal power "will depend upon the character of the office" at issue and noted that the FTC acted as a "quasi-legislative" and "quasi-judicial" body of experts and "exercise[d] no part of the executive power vested by the Constitution in the President." 295 U.S. at 624-25, 28, 31. And since, then the Court has declined to expand this exception to "new situation[s]" that have not come before it and reiterated the general rule that the President retains the power to remove executive officers. *See Free Enter. Fund*, 561 U.S. at 483.

The limited exception to this general rule for multi-member commissions does not encompass the Bureau.[3] "A single agency director lacks the checks inherent in multilateral decision making and is more difficult for the President to influence." *Collins*, 938 F.3d 553 at ___. And those differences are critical to specific enforcement actions like this one. A constitutional

---

[3] *See PHH Corp.*, 881 F.3d at 146-51 (Henderson, J., dissenting) (explaining differences between CFPB and FTC structure); *id.* at 174-79 (Kavanaugh, J., dissenting) (discussing the CFPB's single director as a historical anomaly); *see also Collins*, 938 F.3d 553 at ___ (limiting *Humphrey's Executor* exception to multi-member boards).

agency structure serves "to protect liberty and prevent arbitrary decision making by a single unaccountable director." *PHH Corp.*, 881 F.3d at 186 (Kavanaugh, J., dissenting).

### B. The Bureau Lacks Authority to Enforce the CID.

An agency whose structure violates the separation of powers lacks authority to bring enforcement actions. *FEC v. NRA Political Victory Fund*, 6 F.3d 821, 822 (D.C. Cir. 1993). When a litigant timely challenges an enforcement action based on an agency's violation of the separation of powers—as CEHE has here—there is no theory under which the court can "declare the [agency's] structure unconstitutional without providing relief to [the litigant]." *Id.* at 828. Indeed, the Supreme Court has instructed that litigants who timely raise challenges to agency structure are "entitled to relief," *Lucia v. SEC*, 138 S.Ct. 2044, 2055 (2018); otherwise, litigants like CEHE would have no "incentive[] to raise" such challenges, *id.* at 2055 n.5.

The Bureau has argued for a different remedy in related cases. It has argued that the for-cause removal provision can simply be severed from the remainder of the CFPA. Brief of the United States, *Seila Law v. CFPB*, No. 19-7 (Sept. 17, 2019) at 16. And it asserts that the Bureau director can ratify prior agency actions after the removal restriction is revoked. Brief of the United States, *All-American Check Cashing, Inc. v. CFPB*, No. 19-432 (Nov. 6, 2019) at 16.

There is strong reason, however, to doubt Congress would have passed the CFPA absent the removal provision. *See PHH Corp.*, 881 F.3d at 160-64 (Henderson, J., dissenting); *CFPB v. RD Legal Funding, LLC.*, 332 F. Supp. 3d at 784 (S.D.N.Y. 2019) (adopting Judge Henderson's severability analysis). And even more reason to doubt Congress would have given up its control over the Bureau—i.e., by exempting the Bureau from the appropriations process—while making the director directly accountable to the President. Finally, the Bureau's argument provides no relief to entities who were subject to actions taken while the Bureau was unconstitutionally structured.

*But see Lucia*, 138 S.Ct. at 2055 (stating that the party challenging the SEC's structure was "entitled to relief").

Dismissal is the appropriate remedy here. When an agency's structure violates the Constitution's separation of powers, it lacks authority to bring enforcement actions. *NRA Political Victory Fund*, 6 F.3d at 822. That rule is particularly appropriate here, because the Bureau's authority to bring actions like this one is given exclusively to the Bureau director. 12 USC § 5564. Accordingly, this Court should dismiss the Bureau's petition to enforce the CID with prejudice. *See RD Legal Funding, LLC*, 332 F. Supp. 3d at 785 (dismissing the Bureau as a party to the action because it "lack[ed] authority to bring this enforcement action").

### C.  In the Alternative, the Court Should Stay its Ruling Until the Supreme Court Decides *Seila Law*.

If this Court thinks the Bureau's structure is consistent with Article II, or if it finds the Bureau's structure inconsistent with Article II but harbors doubts about severability or the proper legal remedy, it should stay its ruling pending *Seila Law*.

The arguments on both sides of these issues have been well canvassed. There is no need for another analysis—only a definitive answer. The Supreme Court is poised to provide a definitive answer to the questions in *Seila Law*. Initial briefing has been filed. *See* Brief of Petitioners, *Seila Law v. CFPB*, No. 19-7 (Dec. 9, 2019); CFPB Brief (Dec. 9, 2019).  Oral argument is scheduled for March 3. The parties anticipate the Supreme Court's decision before the close of the current term. *See CFPB v. RD Legal Funding, LLC*, No. 18-2743 (2d Cir. 2019) (Doc. #208) (Bureau asserting in ¶3 that the Bureau anticipates the Supreme Court's decision this term).

The Supreme Court's decision in *Seila Law* will substantially affect this case. It may resolve the action by striking down the CFPA as a whole. It may also clarify the appropriate remedy in separation of power cases. Brief of Petitioners, *Seila Law v. CFPB*, No. 19-7 (Dec. 9,

2019) at 35-37.  In either event, the Supreme Court's decision may obviate the need for this Court to resolve CEHE's challenges that do not rely on the separation of powers.

A short stay will not cause the Bureau any harm. The Bureau has not sought to accelerate its investigation of CEHE. Moreover, CEHE believes the Bureau has been aware of the COAG litigation for years and yet it took no action until 2019.  There is no credible concern that witness memories will fade in the short duration requested. And the Bureau itself has asked courts to stay proceedings pending the Supreme Court's decision in *Seila Law*. *See, e.g., RD Legal, LLC*, No. 18-2743 (2d Cir. 2019) (Doc. #208) (Bureau requesting the court postpone oral argument until after the Supreme Court decides *Seila Law*); *id.* (Doc. #217) (adjourning oral argument).

In contrast, CEHE will suffer irreparable harm if the Court enforces the CID now only for the Supreme Court to later hold that the Bureau is unconstitutionally structured and lacks authority to bring enforcement actions. This case is a paradigmatic example when judicial prudence warrants staying action.

## II. <u>The Scope of the CID is Unreasonably Oppressive and Threatens Liability Through a Fundamentally Unfair Hearing Process.</u>

The Bureau claims that, without any justification, it can force CEHE to submit to an investigation covering seven years—well beyond the statutes of limitations for any claims it could bring—and covering matters already investigated and litigated by a capable state agency.  It argues that this Court is powerless to intervene so long as the Bureau invokes the talismanic assertion that it deems the request "relevant" to its investigatory functions.  In light of the questions surrounding the constitutionality of the Bureau's structure and the apparent lack of accountability for its acts, this Court should be deeply concerned by the Bureau's position on this matter.

Despite the Bureau's contentions, it is well settled that courts should not just rubber stamp a federal agency's investigation. *Oklahoma Press Publishing, Co. v. Walling,* 327 U.S. 186, 217

n. 57 (1946) (noting that the court's function in assessing the propriety of an administrative subpoena is "neither minor nor ministerial").  Nonetheless, the Bureau contends that this Court must put on blinders to the circumstances under which it issued the CID, and instead inquire only whether the investigation touches on any matter, which—in the Bureau's own judgment—*may* be relevant to a potential violation.

But a court's judgment on whether a CID is unreasonably broad and unduly burdensome is not determined by the Bureau's subjective opinion on relevancy. Under that standard, the Bureau's power remains completely unchecked.  Rather, the Court must balance the burden caused to CEHE with the Bureau's need for the information. *Oklahoma Press*, 327 U.S. at 209 ("relevancy and adequacy or excess in the breadth of the subpoena are matters variable in relation to the nature, purposes, and scope of the inquiry"); *Resolution Tr. Corp. v. Greif*, 906 F. Supp. 1457, 1464 (D. Kan. 1995) (the scope of an administrative subpoena must not be excessive for the purpose of the relevant inquiry).

The Bureau has failed to justify its need for CEHE to testify about every aspect of its admissions and financial aid policies over seven years and about a four-week trial with a publicly available record.  CEHE's practices have been thoroughly investigated and documented over the majority of this period.

And even without the existence of the COAG investigation, a seven-year investigatory period is overly broad without some explanation for the length. The Bureau has not identified any circumstances warranting such an expansive window and claims from that far back are now time-barred.

Further, by refusing to help tailor the investigation by providing information about specific complaints or concerns, the Bureau forces CEHE to incur far more burden and expense than

14

necessary.  Because the Bureau offers no reason for the oppressive scope of its investigation and no explanation for why it cannot be more narrowly tailored, the CID is overly broad and unduly burdensome.

It also appears the Bureau is using its immense investigatory powers for an improper purpose.  By forcing CEHE's CEO to virtually memorize an unreasonable amount of information for the hearing, the Bureau aims to create liabilities that have nothing to do with CEHE's compliance with consumer financial protection laws.

### A. The Bureau's Improper Interest in Redoing the COAG Investigation Does not Justify the Substantial Burden to CEHE.

COAG has thoroughly investigated the same issues the Bureau seeks to investigate, and there is a publicly available record of the trial. But because the Bureau itself has said that these already-litigated issues are "relevant," it contends that it is free to impose whatever burden it may on CEHE so long as that burden falls short of closing down the business.  This is simply not the case.  *Fed. Trade Com. v. Texaco, Inc.*, 555 F.2d 862, 927 (D.C. Cir. 1977) (Wilkey, C.J., dissenting) ("No administrative agency . . . has carte blanche authority to reinvestigate and relitigate a factual issue simply because it disagrees with another agency's finding.  The collateral estoppel doctrine serves the essential purpose of protecting the agencies, the courts, and the parties from such unnecessary and wasteful expenditures of time and money").

The Bureau does not have power, free from judicial review, to reopen and reinvestigate matters litigated in the COAG litigation absent a compelling justification for doing so.  Because the Bureau has not even attempted to justify its oppressive seven-year investigatory period through the meet and confer process, CEHE asks this Court to limit the CID's temporal scope to the time following the close of evidence in the COAG litigation.

1.  *Congress has deemed COAG capable of investigating alleged deceptive and abusive practices.*

The Bureau offers no explanation why COAG's investigation and prosecution of CEHE's EduPlan loan practices were insufficient in protecting the interests of consumers. Congress specifically gave states Attorneys General the power to pursue federal consumer financial protection claims in state court proceedings. 12 U.S.C. § 5552(a). Thus, Congress has spoken that the COAG and the Colorado court system are capable of investigating and prosecuting the same claims the Bureau seeks to investigate.

And COAG did, in fact, fully investigate and prosecute those claims. As discussed above, COAG reviewed hundreds of thousands of pages of documents and took testimony from dozens of witnesses. Based on information obtained in that investigation, COAG brought claims challenging nearly every aspect of CEHE's advertising, recruiting, admissions, financial aid, and EduPlan loan policies and practices from at least 2006 to the close of evidence in November 2017. And the EduPlan loan was at issue in both the investigation and trial.

Because Congress authorized COAG to investigate the same issues raised in the CID, absent some basis that those proceedings were deficient, it is unreasonable for the Bureau to reinvestigate the same conduct, over the same time period, for the same alleged violations. *See Safir v. Gibson*, 432 F.2d 137, 143 (2nd Cir. 1970) ("It would be quite unseemly for the Maritime Administration to conclude that its sister agency had been wrong on a fully litigated an issue the decision of which Congress had confided to it").

2.  *Because CEHE has had its day in court on the issues the Bureau seeks to investigate, it is entitled to finality on those matters.*

COAG and the Bureau have the same interests with respect to CEHE's EduPlan loan:  the protection of consumers from unfair or deceptive practices related to consumer financial products. And Congress has recognized that COAG is capable of carrying out that interest.  See 12 U.S.C. §

5552 (a)(1).  Thus, before it opens up a duplicative and costly investigation, the Bureau must explain why the important policies of finality and avoidance of unnecessary burdens of time and expense are not worthy of consideration here.  *Texaco*, 555 F.2d at 926-27 (Wilkey, C.J., dissenting) (The fairness and public policy considerations implicated by collateral estoppel including " . . . finality to litigation, prevention of needless litigation, [and] avoidance of unnecessary burdens of time and expense [ ] are as relevant to the administrative process as to the judicial") (quoting *A. Duda & Sons Cooperative Ass'n v. United States*, 295 F.2d 193, 197 (5th Cir. 1974)).

Instead, the Bureau invokes the standard set out in *United States v. Morton Salt Co.*, 338 U.S. 632 (1950), and claims that so long as the CID seeks information within the scope of its investigative authority, CEHE must submit.  But even under that lax standard, the Bureau cannot justify the overly expansive scope of the CID because its authority is limited to investigating potential violations of the law.  *Id.* at 642-43 (likening an administrative subpoena to "the Grand Jury, which . . . can investigate merely on suspicion that the law is being violated, or even just because it wants assurance that it is not").

Here, the Bureau cannot now reasonably contend there is a potential violation of the law because COAG litigated CEHE's EduPlan policies, and it had an opportunity to investigate or litigate any issues then.  As discussed above, the Bureau was almost certainly aware of the Colorado proceedings. And to be sure, the Bureau certainly has not articulated any basis, reasonable or not, to suggest that a second bite at the apple is appropriate, particularly to the extent such claims are now untimely.  Should the Colorado court rule in CEHE's favor that its EduPlan practices and polices did not violate the law, that issue will be concussively determined, eliminating the need to expand the CID to that period.

In its Decision and Order on Petition by CEHE to Set Aside or Modify the April 12, 2019 CID ("Denial Order"), the Bureau cast aside CEHE's entitlement to finality from the Colorado litigation, deeming these concerns "speculative." (Exhibit 9, Denial Order at 6).  This is simply not accurate.  It requires no speculation at all to limit the Bureau's investigation from reopening matters already litigated by COAG. The Bureau is still free to investigate any matter not covered by those proceedings, and it may investigate all of CEHE's EduPlan practices and policies after the close of evidence in that trial (assuming, of course, the Bureau has a good faith basis for doing so).

The Bureau has broad authority to investigate CEHE for potential violations of federal consumer financing protection law.  But again, that power is not unlimited.  Certainly, the Bureau must be required to articulate some basis for finding the Colorado proceedings were insufficient before it may completely disregard them and subject CEHE to an investigation covering those same matters.  The Colorado proceedings are closed, and a decision could issue any day (it is CEHE's understanding that the court will enter an order by the end of the year).  If CEHE is vindicated, it is entitled to finality.  And if the Bureau is not satisfied with COAG's handling of that matter (despite Congress' vote of confidence), it must provide a reasonable basis for that contention before forcing CEHE to incur additional expense to defend itself yet again.

**B.  The Bureau has not Justified the Burden Imposed by the Expansive CID.**

Even if this Court determines that CEHE is not entitled to finality with respect to the issues investigated and litigated in Colorado, the Bureau still must establish whether forcing CEHE to submit to a duplicative, seven-year investigation is *reasonable* given the circumstances. *Oklahoma Press*, 327 U.S. at 209 ("relevancy and adequacy or excess in the breadth of the subpoena are matters variable in relation to the nature, purposes, and scope of the inquiry");

18

*Resolution Tr. Corp. v. Greif*, 906 F. Supp. 1457, 1464 (D. Kan. 1995) (the scope of an administrative subpoena must not be excessive for the purpose of the relevant inquiry).

> 1.   *The Bureau's interest in investigating an overly broad seven-year period is low.*

The general reasoning for deferring to agencies in reviewing the propriety of an administrative subpoena is "the important government interest in the expeditious investigation of possible unlawful activity." *Texaco*, 555 F.2d at 872.  But here, that interest has been protected by COAG and the Colorado court, and the Bureau has not explained how its proposed duplicative and burdensome investigation otherwise furthers the goal.  Absent that showing, the Bureau's interest amounts to "double checking" COAG, an action which reflects a minimal interest.

Also, the record from the trial provides everything the Bureau should need regarding the second topic of the CID (litigation from 2012 to the present).  The Bureau has not identified any basis that the record is insufficient.  Forcing CEHE's CEO to virtually memorize and testify to a publicly available trial serves no interest but to relitigate that trial.

And the Bureau has similarly not offered any explanation for why the investigation must go back seven years.  Instead, the Bureau appears to contend that a seven-year investigation is *per se* reasonable, which is not true.  Reasonableness is measured based on the specific circumstances at issue, and the Bureau has refused to identify any circumstances justifying a seven-year scope.  *Oklahoma Press*, 327 U.S. at 209.  Here, any violations occurring seven years ago would be time-barred.  And while the Bureau was surely aware of the Colorado litigation at the time, it waited years to issue the CID seeking information on those same issues.  The Bureau should have to explain the reasons for this delay before asserting the CID's seven-year window is reasonable.

CEHE agreed to submit to the CID to the extent the Bureau seeks information regarding events occurring after the Colorado litigation (a period covering more than two years).  This would

allow the Bureau to pursue its interest in investigating potential violations of the law without imposing the unnecessary burden of covering the same ground as COAG.  But the Bureau refuses to offer any explanation why this seemingly reasonable limitation prevents it from pursuing its interests.  Instead, it asserts its self-proclaimed authority that it has no obligation to provide a plausible justification for the seven-year scope of the investigation. This position is unreasonable.

> 2. *Forcing CEHE to testify about seven years of policies and practices and a trial involving dozens of witnesses and hundreds of exhibits is overly burdensome.*

As Justice Thurgood Marshall noted, "[o]fficious examination can be expensive.  So much so that it eats up men's substance.  It can be time consuming, clogging the process of business.  It can become persecution when carried beyond reason." *Oklahoma Press*, 327 U.S. at 213.  CEHE has come to know this sentiment well over the course of COAG's multiyear investigation and lawsuit.  And now, the Bureau asks this Court to force CEHE to rehash these same matters, over the same timeframe, without any reasonable explanation as to why.

The Bureau downplays the burden it imposes on CEHE by disingenuously arguing the CID is limited in scope because it "requires only one day of testimony."  (Petition at 9).  But this belies the fact that it has refused to give CEHE any information about the specific concerns it seeks to address at that hearing.  So, to avoid the risk of being held in contempt under the Bureau's rules, CEHE must prepare to discuss everything relating to the Colorado trial and everything about its EduPlan policies and practices over a seven-year period.  As discussed above, these matters cover a massive amount of information and documents.

Indeed, if it had truly "made every reasonable effort to ease CEHE's compliance burden," as it claims in its Petition, the Bureau would allow CEHE to tailor its preparation by giving some indication as to the Bureau's actual concerns and the related time periods of those concerns.  The fact that the Bureau seeks only a one-day hearing indicates it has specific questions in mind.  That

raises an obvious question:  Why not give some indication as to what those questions will cover?  It defies logic for the Bureau to claim that preparing for the hearing is not unreasonably burdensome when, at no cost or effort, it could remove the majority of that burden by explaining what it seeks to address at the hearing.   The Bureau could easily tailor its inquiry, but it refuses to do so.  Thus, the burden imposed on CEHE is undue.

And to be clear, that burden is substantial.  Conservatively, the time estimated for CEHE's CEO, Eric Juhlin, to prepare to give such testimony is at least three full weeks (120 hours). (Juhlin Decl. at ¶ 30). Mr. Juhlin will need to review the full history of CEHE's loan program since 2012, examine reports and data, meet with critical employees and vendors (some of which are no longer employed at CEHE), and evaluate trial testimony and exhibits from the four-week COAG trial. *Id.* at ¶¶ 31-32. Additionally, he will need to have multiple meetings with dozens of current and former key CEHE employees located in multiple states. *Id.* at ¶¶32.

Mr. Juhlin will also need to review another several hundreds of pages of reports, data, and materials provided by multiple third-party collections agencies CEHE has contracted with and another 100-200 pages of reports, data, and materials from the third-party vendor CEHE previously contracted with to service loans. *Id.* at ¶ 33.

As he undertakes this comprehensive review, Mr. Juhlin will also need to review documents from the COAG litigation.  To prepare to testify generally about events of the litigation, he will need to review, at least, hundreds of pages of materials from that case.  *Id.* at ¶ 33. However, given the number of exhibits, witnesses, and the breadth of the discovery in that case, it would take much longer to prepare to testify fully on the substance of the issues litigated.  *Id.*

Removing the CEO from an institution as large as CEHE for such a long time will substantially disrupt operations.  Mr. Juhlin is responsible for the oversight of roughly 1,900

employees employed at four colleges over numerous campuses. *Id.* at ¶ 5.  Further, he is currently overseeing several critical matters, several of which could lead to the closure of the school if not adequately addressed.  *See Id.* at ¶ 34-35.

It is unreasonable for the Bureau to remove CEHE's CEO from overseeing the entirety of CEHE's operations for a minimum of three weeks when it could easily limit his preparation time by tailoring the focus of the one-day hearing.  Instead, as discussed below, it seems the Bureau would rather keep this information hidden, creating opportunities to use its immense enforcement powers to penalize CEHE for its inevitable failure to testify in lock step with the hundreds of thousands of documents and hours of testimony involved in the COAG litigation.

C.  **The CID was Issued for an Improper Purpose:  The Bureau Exploits its Investigative Process to Harass CEHE**.

1.  *The Bureau was created to protect consumers, not give state Attorneys General a second bite at the apple when they disagree with a court's ruling.*

COAG and the Bureau likely collaborated in pursing claims against CEHE in Colorado.  If there was no collusion, it is hard to imagine the Bureau was not aware of the litigation.  Indeed, a former high-level Bureau employee, Assistant Director Rohit Chopra, provided expert testimony in that case.  Further, the Bureau sought documents from COAG following the close of evidence in that case—a violation of a protective order deemed serious enough by the court to require COAG to detail all correspondence between the agencies related to the improper disclosures. Unfortunately, the Colorado court did not require COAG to disclose all correspondence with the Bureau before that time.  But given the former Assistant Director's involvement as a key witness in COAG's case, it is difficult to believe there was no prior contact.

The Bureau's and COAG's coordinated efforts reflect an attempt to improperly reopen these matters to take "a second bite at the apple."  All indications to date from the Colorado court

suggest CEHE will be vindicated.  And the timing of the Bureau's issuance of the CID with COAG's disclosure of the protective order violation is more than coincidence.

The Bureau wields immense power, allowing it to cause substantial burden to individuals under its sweeping jurisdiction. The court must protect individuals when that power is marshalled in a blatant attempt to override valid court proceedings.  *See SEC v. Wheeling-Pittsburgh Steel Corp.*, 648 F.2d 118, 123 (3d Cir. 1981) ("it is the court's process which is invoked to enforce the administrative summons and a court may not permit its process to be abused").  CEHE has had its day in court, and it should be entitled to finality after being vindicated.

2.  *The Bureau's unsupported justification that it received multiple complaints further calls into question its true motives in investigating CEHE.*

At the May 14, 2019 meet and confer, in response to counsel for CEHE's revealing that there were no reported complaints on the Bureau's database, the Bureau countered that it had "numerous complaints" on a secret database.   But when asked, the Bureau refused to provide any information to CEHE about them.  If the Bureau has received complaints against CEHE, it has not offered any justification for why it will not reveal the nature of those complaints. It is also suspicious that the Bureau has now abandoned any mention of these complaints in its Petition for Enforcement to this Court.  If they provide such a compelling basis for imposing a massive, seven-year investigation on CEHE, certainly the Bureau could have disclosed the dates and general content of those complaints.

Certainly, knowing the bases for the alleged complaints would greatly narrow the expansive issues and time frames to which CEHE is expected to testify.  If the Bureau has legitimate complaints against CEHE and its practices, why not tailor the investigation to those specific issues?  But that is clearly not the Bureau's interest here.  It instead seeks to impose its powers to the greatest extent possible to impose as much burden to CEHE as possible.

3.   *The unreasonable scope of the CID testimony creates a "perjury trap*."

The Bureau's CID is for testimony, not documents, suggesting that it intends to expose CEHE to liabilities independent of its compliance with consumer credit laws. The inquiry into already investigated and litigated matters, along with the Bureau's requests to COAG for testimony from that case, appears designed to spring a "perjury trap."  The Bureau has represented it is only seeking a one-day hearing.  But preparing for that hearing is an undue burden as CEHE's CEO will be required to be informed about a vast amount of information, including the record of a four-week trial.

If the Bureau is actually interested in resolving specific complaints about CEHE's practices, it stands to reason that those interests would be better served if CEHE could focus its preparation efforts on those issues. This would ensure CEHE will be able to provide the information the Bureau is looking for.  But, if the Bureau's interest is to engineer discrepancies between what is said in the CID hearing and what occurred in the Colorado trial and COAG investigation, it would proceed as it has:  by imposing the impossible task of knowing the answer to every question that could be asked within the excessive scope of the CID.

And the Bureau's procedural rules provide little, if any, protection to CEHE from such abuses of the investigatory process.  For example, the Bureau's rules do not allow a witness to refuse to answer a question, and there is no time limit on how long the hearing can last.  The Bureau also drastically limits CEHE's right to counsel during this process.  A testifying witness cannot consult with counsel in any way while a question is pending (absent assertion of a valid privilege), and counsel is expressly prohibited from objecting to a question unless the question violates a constitutional or other legal right.  § 1080.9(b)(1-2).  Further, counsel may not interrupt the hearing to make any objection, clarification, or other statement on the record.  § 1080.9(b)(3).

And while the rules contemplate an opportunity to allow a witness to clarify a prior statement at the conclusion of the hearing, whether to consider any such clarifications, or even whether to allow the *opportunity* to clarify, is left solely to the discretion of the Bureau.  § 1080.9(b)(4).

It is within this one-sided process that any inadvertent or unintentional mischaracterization of fact will open CEHE up to contempt orders and the draconian enforcement measures available to the Bureau.  Forcing CEHE to go back over seven years of history—already testified to in the COAG proceedings—presents the Bureau with numerous opportunities to attempt to further harass CEHE if the new testimony is not in lock-step with hours upon hours of prior testimony and hundreds of thousands of pages of already-produced documents.

Certainly, the law must afford CEHE *some* protection against the abuse of such a process. And if that protection is not found through the accountability of elected officials or through the Bureau's own procedures, it must come from this Court.  CEHE is not asking the Court to rule that CEHE has no obligation to comply with a Bureau CID.  Rather, CEHE asks, at a minimum, that the Court require the Bureau to reasonably limit the scope of the CID or at least require the Bureau to provide details about the bases for the investigation to reduce the burden of preparing for the hearing.

## CONCLUSION

CEHE respectfully requests that this Court deny the Bureau's Petition to Enforce its CID because the Bureau is unconstitutionally structured and lacks the authority to enforce the CID, or alternatively, stay a ruling until the Supreme Court's decision in *Seila Law*.

If the Court does not so find, CEHE respectfully asks the Court to deny the Bureau's Petition because the CID is overly broad and unduly burdensome, or alternatively, to limit the CID's scope to the time frame occurring after the close of evidence in the Colorado litigation.

Dated: December 12, 2019

**Gombos Leyton, P.C.**

  /s/ Steven M. Gombos
Steven M. Gombos
David A. Obuchowicz
Jacob C. Shorter

*Counsel for Respondent Center for Excellence in Higher Education, Inc.*

**Snell & Wilmer L.L.P.**


Alan L. Sullivan
Paul W. Shakespear

**Certificate of Service**

I HEREBY CERTIFY that on December 12, 2019, I served the foregoing document via

the court's CM/ECF electronic filing system to all counsel of record, including the following:


Benjamin Konop, benjamin.konop@cfpb.gov
John Thompson, john.thompson@cfpb.gov
Bureau of Consumer Financial Protection
1700 G Street, N.W.
Washington, DC 20552

*Counsel for Petitioner Bureau of Consumer Financial Protection*


/s/ Steven M. Gombos
STEVEN M. GOMBOS