# Exhibit 11

Stephen T. Chema
Also admitted to practice in Maryland
and the District of Columbia

703-934-9835 Direct
stchema@glpclaw.com



# GOMBOS | LEYTON PC
### ATTORNEYS

11350 Random Hills Road | Suite 400 | Fairfax, Virginia 22030
703.934.2660 Main | 703.934.9840 Fax | www.glpclaw.com

October 7, 2019

**By email only**
Kathleen L. Kraninger, Director
Consumer Financial Protection Bureau
1700 G Street NW
Washington, D.C. 20552

Re: Reconsideration of the CFPB's August 18, 2019 decision

Dear Director Kraninger:

This letter follows discussions with CFPB counsel Ben Konop to reach a compromise as to the scope of the civil investigative demand ("CID"). We write to ask the CFPB to reconsider its August 18, 2019 decision denying Center for Excellence in Higher Education's ("CEHE") petition to set aside or modify the CFPB's civil investigative demand.

First, the scope of the CID exceeds the period in which CEHE offered any loan program. The CID describes CEHE to include the four colleges it owns (defining "the Company" and "you" and "your" to include CEHE's wholly owned subsidiaries). However, CEHE did not acquire ownership of the referenced colleges until December 31, 2012—a full year **after** the CID's opening timeframe. Prior to December 31, 2012, CEHE had no ownership interest in any institution of higher education and did not offer any loan or tuition-assistance program of any kind.

Second, the CID's notice of purpose and the corresponding topics for oral testimony are described in such broad language that CEHE cannot reasonably evaluate its own practice or policies or adequately prepare to testify without unduly disrupting its operations. The CID may target only one aspect of CEHE's operations, but as currently framed, it targets the entirety of that operation. Indeed, the detailed subpoints describing the topics for the hearing stretch the CID over every corner of CEHE's loan or tuition-assistance program.

Kathleen L. Kraninger, Director
October 7, 2019
Page 2

> The CFPB's decision shields the CID from criticism by claiming that broadness alone does not justify refusal **to enforce** a subpoena. (Dec. at 3). However, CEHE's petition asked the CFPB, as the issuing entity, to set aside **or modify** the scope of its CID in a more reasonable manner. In short, CEHE asked the CFPB to follow its own public comments about "provid[ing] more information about the potentially wrongful conduct under investigation." *See* April 23, 2019 Press Release: *CFPB Announces Policy Change Regarding Bureau Civil Investigative Demands*, available at https://www.consumerfinance.gov/about-us/newsroom/cfpb-announces-policy-change-regarding-bureau-civil-investigative-demands/.

Let us be clear: CEHE is not opposed to providing testimony. Our remaining request (and concern) is that the scope of the testimony be appropriate for CEHE's ownership and modified to minimize the preparatory burden on CEHE's Chief Executive Officer.

It would greatly help CEHE's preparation, for example, if the CFPB provided redacted copies of the complaints Mr. Konop indicated the Bureau has received about CEHE's loan or tuition-assistance program. Mr. Konop mentioned the complaints in one of our prior calls, but he has refused our request for information about the complaints. At this time, CEHE does not know when the complaints were filed, what period of time they address, or what aspects of its loan program elicited the complaints. Redacted copies of the complaints would make CEHE's preparation easier and would not impede the CFPB's ability to analyze CEHE's loan program.

The CFPB's decision also treats the words "unduly disrupt" as a talisman, rather than as a conclusion inferred from facts, all the while ignoring CEHE's description of the demands the CID imposes.

There is no doubt that compliance with the CID, as it is drafted, will unduly disrupt or seriously hinder CEHE's operations. As CEHE's petition explained, preparing for Hearing Topic number 1 would require a comprehensive review and evaluation of the activities of more than 40 individuals who are employees or former employees of CEHE, or representatives of various third party vendors who participated in CEHE's institutional student loan program or other forms of



financial assistance, or tuition-payment plans since 2012. It would also require the review of thousands of pages of documents produced by those individuals. Meanwhile the second topic related to litigation would require a similar review of the 2017 trial described in the Petition, which lasted 4 weeks and included testimony from 48 witnesses and 366 trial exhibits.

CEHE's CEO has estimated that he will need at least 3 full weeks, or 120 hours, to fully prepare for his testimony. That time is necessary to review the full history of CEHE's loan program dating back to the beginning of 2013 and the colleges' practices back to January 2012, examine reports and data, meet with critical people, review the trial testimony and exhibits from relevant litigation, and any other miscellaneous work. (See Ex. A, Declaration of Eric Juhlin).

As CEHE explained in its petition, the number of individuals with discrete information responsive to the CID will require significant one-on-one meetings to prepare Mr. Juhlin for his testimony. (See Petition at 8-9). Mr. Juhlin has conservatively estimated that he will need to have multiple meetings with CEHE's Director of Information Technology, current and former directors of Central Financial Aid, numerous representatives from multiple outside vendors with whom CEHE has contracted aspects of its loan program, and a meaningful sample size of employees who worked as campus directors or financial planners between 2012 and 2016. (See Ex. A, Declaration of Eric Juhlin). In addition, Mr. Juhlin estimates that he will have to review no less than 1,000 pages of material to fully prepare for his testimony. (*See id.*)

Absent some reasonable limit on the CID's scope or specificity about what the CFPB is investigating, the CID will unduly disrupt or seriously hinder CEHE's operations. Simply put, CEHE would have to operate without its CEO for approximately three full weeks.

The CFPB rejected those concerns about time constraints in its decision (see Decision at 4), explaining that CEHE had the summer to prepare while its petition was pending before the Bureau. Setting aside that CEHE could not know in advance how long the CFPB would deliberate, the decision suggests that CEHE should have considered its petition to set aside or modify the CID dead when it was filed.



Kathleen L. Kraninger, Director
October 7, 2019
Page 4

On the other hand, the decision suggests that the CFPB rules protect witnesses who may make inadvertent mistakes. The decision notes, in response to CEHE's petition, that witnesses may make changes to their testimony and provide an explanation for those changes. (See Decision at 4). That's at best a half-truth. While a witness may be free to submit changes to his or her testimony, it is an issue for the fact finder to determine what weight to give to the original testimony or to the errata sheet. And by all indications so far, the Bureau has made clear that there is no impartial ear for CEHE to bend so long as the CFPB holds all the cards (as investigator, jury, and judge). We are hopeful that has not been the intended message.

Fourth, the August 18, 2019 decision elides CEHE's supplemental petition. The decision rejected as insufficient CEHE's argument "on information and belief" that the CFPB had been communicating with the Colorado Attorney General's Office (see Decision at 6-7), while ignoring (minus one conclusory footnote) that CEHE later substantiated the basis for its information and belief allegation in a supplemental petition to set aside or modify the CID.

Finally, the CID is unenforceable because the CFPB is unconstitutionally structured. *See CFPB v. RD Legal Funding, LLC*, 332 F. Supp. 3d 729, 785 (S.D.N.Y. 2018) (terminating the Bureau as a party to the case because the Bureau is unconstitutionally structured and lacks authority to bring claims under the Consumer Financial Protection Act); Brief of the Solicitor General of the United States, *Seila Law LLC v. CFPB*, No. 19-7 (Sept. 17, 2019) (expressing the view of the Department of Justice and Director Kraninger that the CFPB is unconstitutionally structured).



Kathleen L. Kraninger, Director
October 7, 2019
Page 5

For these reasons, CEHE will not comply with the Bureau's CID as written, absent an enforcement order entered by an authorized federal court. We ask that you reconsider the decision and narrow the scope as argued above.

Respectfully,

Stephen T. Chema



# Exhibit A

Affidavit of Eric Juhlin

I, Eric Juhlin, hereby declare as follows:

1. I am over eighteen years of age and reside in Utah. I am the President and Chief Executive Officer ("CEO") for Center for Excellence in Higher Education, Inc. ("CEHE"), d/b/a Stevens-Henager College, CollegeAmerica, California College San Diego, and Independence University. I have served as CEHE's CEO since December 31, 2012. I have senior-level oversight and responsibility for the colleges that CEHE operates.

2. I have direct personal knowledge of the facts presented in this affidavit and, if called as a witness, I could competently testify to these facts as a representative of CEHE.

3. This declaration is offered in support of CEHE's letter requesting that Director Kraninger reconsider her August 18, 2019 decision denying CEHE's petition to set aside or modify the Consumer Financial Protection Bureau's civil investigative demand ("CID").

4. Following the Director's August 18, 2019 decision, and at the request of CEHE's counsel, I further analyzed how much time I would need to prepare to testify on CEHE's behalf under the CID's current terms. I conservatively estimate that I would need at least 3 full weeks (120 hours) to fully prepare my testimony.

5. In arriving at that estimate, I included the time I would need to review the full history of CEHE's loan program dating back to 2013 (when CEHE acquired the colleges) as well as the loan programs the colleges offered in 2012, examine

reports and data, meet with critical employees and vendors, and familiarize myself with virtually every aspect of the trial testimony and exhibits from the enormous record in CEHE's Colorado litigation (*Colorado v. CEHE*).

6. Specifically, I concluded that to fully prepare I would need to have multiple meetings with CEHE's director of information technology, CEHE's former directors of Central Financial Aid, Lana Moon and Ed Kraus; CEHE's current director of Central Financial Aid, Scott Schuler; 2-3 representatives from a third-party vendor CEHE used to service internal loans for a portion of the period at issue; representatives from multiple third-party collection agencies that were used during the relevant period; at least 15 of CEHE's current financial planners (one or more from each campus) to verify and assess adherence to CEHE's policies and practices; 6-8 former financial planners who worked at the campuses during the earliest years at issue; 3-4 employees working in CEHE's collections department; 3-4 Campus Directors to gather materials, reports, and data about the loan program dating back to 2012; and 3-4 additional former employees who may have useful knowledge about the loan program in the past.

7. I also estimated the volume of documents I would need to review in order to fully prepare for my testimony. And while difficult to predict before conducting the review, I reasonably estimate that I would need to review at least 200-400 pages of material from the Colorado litigation to fully prepare to testify to the CID's second hearing topic. I anticipate having to review approximately 300-500 pages of reports and materials to prepare to testify about how CEHE's loan

program was run, processed, and implemented for all time periods since 2012. Although I cannot know with certainty at this time, I anticipate reviewing another 200-400 pages of reports, data, and materials provided by multiple third-party collections agencies CEHE has contracted with and another 100-200 pages of reports, data, and materials from the third-party vendor CEHE previously contracted with to service loans.

8. The demands on my time as a result of the CID would significantly disrupt and impair my management and leadership of CEHE on a day-to-day basis. As CEO of CEHE, I am presently in charge of several critical matters relative to the operation of our colleges and our ability to serve students. These critical and time-consuming matters include the following.

(a) CEHE is in the process of recertifying and reapplying with the U.S. Department of Education ("USDOE") for all its colleges (15 locations) to renew their eligibility to participate in the federal Title IV financial aid programs. CEHE submitted its applications to the USDOE on September 25, 2019, and we have already received additional requests from the USDOE relative to these applications. CEHE must secure new approvals from the USDOE on or before December 30, 2019, before the colleges' current Program Participation Agreements expire. As CEO, it is my direct responsibility to respond to additional information requests from the USDOE, facilitate the ongoing review of CEHE's renewal applications and

ensure that the applications are reviewed and approved by the USDOE before the December deadline.

(b)  CEHE's colleges are currently on a system-wide probation with the colleges' accreditor, the Accrediting Commission of Career Schools and Colleges ("ACCSC").  CEHE provided ACCSC with a 15,000 page response on December 19, 2018 and a 7,000 page response on May 30, 2019.  CEHE expects ACCSC to require an additional response sometime this fall. CEHE must clear the probation items with ACCSC on or before September 2020. I am directly responsible for, and leading the implementation of, 2-3 strategies throughout CEHE's colleges to address areas of concerns from ACCSC.

(c) CEHE recently made the strategic decision to suspend the enrollment of *new* students in CEHE's ground campuses.  While CEHE is making this strategic shift, I am directly responsible for ensuring that all of CEHE's ground campuses remain fully staffed to provide all of the necessary education and services to existing students so that they can complete their degree programs and graduate.  To keep staff employed and motivated, I am personally visiting several on-ground campuses each month to oversee their continued smooth operation.

(d) Leading 2020 strategic planning.  Each fall (September – November) CEHE conducts company-wide strategic planning for the upcoming year.  During our planning cycle, CEHE develops and finalizes budgets for 2020, develops

marketing plans for 2020, develops student service plans for 2020, develops student retention plans for 2020, and finalizes capital expenditure plans and budgets for 2020.  In addition, CEHE reviews, updates, and modifies its 5-year plan each fall planning cycle.  As CEO, I lead, coordinate, and manage each of these important and critical planning events.  I am ultimately the single person responsible to CEHE Board of Directors for the development and completion of annual plans, budgets, and strategies.

Devoting up to three full weeks of my time to sufficiently prepare for the scope of the requested CID will jeopardize CEHE's ability to respond to current demands, prepare for the upcoming year, address important matters with the U.S. Department of Education and the Accrediting Council for Career Schools and Colleges,  and, most importantly, provide services and support to current students.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Executed on October 7, 2019, at Salt Lake City, Utah.

_____
Eric Juhlin