Benjamin Konop (OH Bar No. 0073458)
Benjamin.Konop@cfpb.gov
(202) 435-7265
John Thompson (NM Bar No. 139788)
John.Thompson@cfpb.gov
(202) 435-7270
Bureau of Consumer Financial Protection
1700 G Street, NW
Washington, DC 20552

## UNITED STATES DISTRICT COURT
## DISTRICT OF UTAH

| | |
|---|---|
| Bureau of Consumer Financial Protection, | Case Number: 2:19cv00877 DB-CMR |
| Petitioner, | |
| v. | **Reply in Support of Petition to Enforce Civil Investigative Demand** |
| Center for Excellence in Higher Education, | |
| Respondent. | |

## REPLY IN SUPPORT OF PETITION TO ENFORCE CIVIL INVESTIGATIVE DEMAND

**Preliminary Statement**

This petition concerns an investigation by the Bureau of Consumer Financial Protection (Bureau) into whether the private-student-loan program offered by the Center for Excellence in Higher Education (CEHE), which operates a group of colleges, violated the Consumer Financial Protection Act of 2010 (CFPA). The

1

Bureau issued a civil investigative demand (CID) to CEHE that seeks one day of testimony about CEHE's EduPlan loan program, and the litigation surrounding it, since 2012. The Bureau is investigating whether the colleges misrepresented the true nature of that loan program or enrolled students in the program without their knowledge or consent. Under binding Tenth Circuit precedent, this Court should compel CEHE's compliance and enforce the Bureau's CID because it seeks relevant information within the scope of the Bureau's investigative authority, and because compliance would not be unduly burdensome.[1] CEHE's arguments to the contrary lack factual support, legal support, or both.

**Arguments & Authorities**

**A.  The CID seeks information that is within the Bureau's authority, and it is not unduly burdensome merely because it seeks information covering a seven-year period.**

The Bureau's CID is narrowly targeted to obtain one day of sworn testimony about the colleges' EduPlan loan program, and the litigation surrounding that program, since 2012. The purpose of the investigation is to determine whether the colleges misrepresented the true nature of the EduPlan loan program and enrolled students in the program without their knowledge or consent in violation of the CFPA. An investigation into this sort of deceptive conduct falls squarely within the Bureau's authority, and CEHE has not argued otherwise.

---

[1] *See EEOC v. Univ. of N.M.*, 504 F.2d 1296, 1302 (10th Cir. 1974).

There is no legal basis for CEHE's contention that the Bureau "has failed to justify its need" for the testimony it seeks.[2] The Bureau need not justify its need to enforce its CID. Rather, the Bureau must show that the information it seeks is relevant to the scope of its investigation, as that scope is set forth in the CID's Notification of Purpose, and it has done so.[3] Indeed, that Notification provides CEHE with ample information regarding the Bureau's "specific concerns."[4]

CEHE's only argument on this point is that, if the Bureau wanted to sue the colleges for conduct that occurred in 2012, its CFPA claims would be time-barred. But the Bureau's investigative authority isn't limited to conduct that falls within the applicable limitations period.[5] And, even if it were, because limitations on CFPA claims begin to run on the date of discovery of the violations,[6] it's

---

[2] Resp. at 14.

[3] Pet. at 6-8.

[4] Resp. at 20.

[5] *See CFPB v. Harbour Portfolio Advisors, LLC*, No. 16-14183, 2017 WL 631914, at *5 (E.D. Mich. Feb. 16, 2017) (holding the standard for determining permissible temporal scope of CID "is whether such information is relevant to conduct for which liability may be imposed"); *see also NLRB v. Line*, 50 F.3d 311, 314-15 (5th Cir. 1995) (affirming enforcement of an administrative subpoena extending five years back when the applicable statute of limitations was six months).

[6] 12 U.S.C. § 5564(g)(1) ("[N]o action may be brought . . . more than 3 years after the date of discovery of the violation to which an action relates.").

impossible during an investigation to determine whether any conduct falls outside the limitations period.

CEHE has also failed to demonstrate that it would be unduly burdened by providing the one day of testimony that the CID requires.[7] It argues that the CID would require its president to spend 120 hours reviewing documents and testimony from a Colorado enforcement action that it has been defending since 2014. Not so; the Colorado enforcement action was much broader than the Bureau's investigation and touched nearly every aspect of the colleges' operations, not just their private-student-loan program. CEHE's president need not "virtually memorize" every aspect of the Colorado enforcement action to testify about the colleges' EduPlan loan program and the litigation surrounding it.

## B. Colorado's enforcement action does not preclude or circumscribe the Bureau's investigation.

CEHE has been in litigation with the Colorado Attorney General since 2014. Colorado's action—which raises only state-law claims—touches nearly every aspect of the colleges' operations in Colorado, including the EduPlan loan program offered in that state. Colorado's action does not, however, reach the colleges' operations in the other states with CEHE campuses; nor does it involve any CFPA

---

[7] *FTC v. Texaco*, 555 F.2d 862, 882 (D.C. Cir. 1977) (the recipient of an agency's investigative compulsory process bears the burden of showing that compliance would "unduly disrupt or seriously hinder normal operations of a business.").

claims for CEHE's conduct in Colorado. Nevertheless, CEHE argues that the Bureau can't investigate any conduct that occurred before the close of evidence in the Colorado action, suggesting that action will have claim- or issue-preclusive effect in any action the Bureau may bring. The argument fails for at least four reasons.

First, the Colorado action has not yet reached final judgment on the merits, which means that CEHE's preclusion arguments are not yet even ripe for determination.

Second, the Bureau's enforcement authority, unlike Colorado's authority under state law, is nationwide, so the Bureau may seek relief for students located outside Colorado. It cannot be the case that a state-enforcement action in Colorado to which the Bureau was not a party can impair the Bureau's authority to investigate and, if appropriate, obtain relief for students located elsewhere. This is especially so where, as here, the Bureau didn't receive advance notice of the Colorado action or have the practical opportunity to intervene and prosecute CFPA claims there.[8]

Third, CEHE cites no authority—and the Bureau is aware of none—for the proposition that a state-court judgment that didn't involve the Bureau or the CFPA bars the Bureau from investigating potential CFPA violations. Specifically, CEHE

---

[8] While states are required to notify the Bureau of their intent to file suit under the CFPA, *see* 12 U.S.C. § 5552(b), no such requirement exists for suits brought solely under state law, as the Colorado enforcement action was.

invites this Court to create a new rule that a finally adjudicated enforcement action, involving exclusively state-law claims in state court, can have nonmutual claim- or issue-preclusive effect against the federal government in a later investigation or action to enforce federal claims in federal court. The Court should decline to create this rule.

Finally, even if preclusion were theoretically available on these facts, CEHE must assume, without proof, that:

(a) the eventual final judgment on the merits in Colorado will resolve every contested fact issue related to the EduPlan loan program in CEHE's favor;

(b) the finally adjudicated issues in Colorado will completely overlap with matters under Bureau investigation, which include the administration of the EduPlan loan program at colleges outside Colorado;

(c) the Bureau will bring an enforcement action against CEHE on issues that have already been finally adjudicated in CEHE's favor;

(d) in this eventual, hypothetical Bureau action, CEHE will be able to establish that the Bureau and Colorado Attorney General were in privity in the Colorado action; and

(e) every claim the Bureau asserts in this hypothetical future action will require proof of facts that were conclusively determined in CEHE's favor in Colorado.[9]

---

[9] *See Nwosun v. Gen. Mills Rests., Inc.*, 124 F.3d 1255, 1257 (10th Cir. 1997) (outlining elements of claim preclusion in this jurisdiction); *Stan Lee Media, Inc. v. Walt Disney Co.*, 774 F.3d 1292, 1297 (10th Cir. 1998) (outlining elements of issue preclusion in this jurisdiction).

CEHE has made none of these showings. Moreover, the Court need not indulge this speculation because "[a]t the pre-complaint stage, the court is not free to speculate as to possible charges in a future complaint, and then determine the relevance of the subpoena requests on that basis."[10]

## C.  CEHE has failed to meet its heavy burden of showing the Bureau issued its CID for an improper purpose.

The Bureau is entitled to a presumption of good faith in the conduct of its investigations and CEHE bears a heavy burden when it challenges that presumption.[11] CEHE relies on speculation and innuendo in lieu of facts in its attempt to establish the Bureau has acted with an improper purpose. That effort fails.

First, CEHE suggests that it's nefarious that the Bureau has "collaborated" with Colorado. But there's nothing wrong with the Bureau obtaining relevant information from state-law-enforcement authorities to assist its investigation. Second, CEHE complains that, if the Bureau has received consumer complaints about the colleges' conduct, it should tailor its investigation to those complaints. There is no basis for CEHE's implication that the Bureau must have some specific

---

[10] *FTC v. Church & Dwight Co.*, 747 F. Supp. 2d 3, 9 (D.D.C. 2010).

[11] *United States v. Garden State Nat'l Bank*, 607 F.2d 61, 68 (3d Cir. 1979).

quantity of evidence of a violation before it issues a CID.[12] Third, CEHE argues that, if it complies with the CID, this will create a perjury trap. The "perjury trap" doctrine is a defense to a criminal perjury prosecution. It is not an excuse for failing to comply with an agency's compulsory process.[13]

**D.    Even if the CFPA's for-cause removal provision is unconstitutional, this does not entitle CEHE to dismissal of the CID.**

While the Bureau agrees with CEHE that the CFPA's for-cause removal provision (12 U.S.C. § 5491(c)(3)) is unconstitutional, this makes no difference for the purposes of enforcing its CID. As the Bureau has argued in *Seila Law LLC v. CFPB*, No. 19-7 (S. Ct.), were the Court to conclude that the for-cause removal provision is unconstitutional, the proper action for the Court to take would be to sever the provision from the CFPA and permit the Bureau, which would then be headed by a Director who is fully accountable to the President, to consider ratifying its decision to issue the CID.[14]

CEHE contends that this approach would "provide[] no relief to entities who were subject to actions taken while the Bureau was unconstitutionally

---

[12] *See United States v. Morton Salt Co.*, 338 U.S. 632, 642-43 (1950) (recognizing agency may investigate because it wants assurance that the law is not being violated).

[13] *See FTC v. First Universal Lending*, No. 09-cv-82322, 2011 WL 66149, at *5 & n.2 (S.D. Fla. Feb. 12, 2011) (observing that a witness may shield himself by testifying truthfully, not by refusing to testify).

[14] Brief for Respondent, *Seila Law*, 2019 WL 6727094, at *46 (Dec. 9, 2019).

structured."[15] But if this Court severs the provision and the Director authorizes the Bureau to proceed, CEHE would have received a remedy that completely addresses its constitutional challenge. It would then be subject to a Bureau CID only if that is the wish of a Bureau Director who is fully accountable to the President.

CEHE contends that severance is inappropriate because "there is . . . strong reason to doubt that Congress would have passed the CFPA absent the [for-cause] removal provision."[16] Resp. at 11. But that's wrong on its face, because the CFPA includes an express severability provision, which states that "[i]f any provision of this Act … is held to be unconstitutional, the remainder of this Act … and the application of such to any person shall not be affected thereby."[17]

Further, neither *Lucia*, *supra*, nor *FEC v. NRA Political Victory Fund*, 6 F.3d 821 (D.C. Cir. 1993), suggests a different result.[18] In *Lucia*, the Court held that the administrative law judge (ALJ) who presided over Lucia's administrative trial had not been constitutionally appointed. The Court then concluded that Lucia was entitled to a new trial before a properly appointed ALJ. But the Court didn't

---

[15] Resp. at 11, citing *Lucia v. SEC*, 138 S. Ct. 2044, 2055 (2018).

[16] Resp. at 11.

[17] 12 U.S.C. § 5302.

[18] *See* Resp. at 12.

dismiss the SEC's complaint. Instead, it permitted the agency to redo the portion of the proceeding that had been constitutionally tainted. Here, CEHE complains that the issuance of the CID was constitutionally tainted. Severance of the for-cause removal provision followed by ratification of the CID by a Director fully accountable to the President would correct that flaw.

In *NRA Political Victory Fund*, the D.C. Circuit concluded that the FEC was unconstitutionally structured and, as a result, it dismissed the FEC's action. But that dismissal was without prejudice,[19] so that a constitutionally structured FEC could renew its prosecution. Two years later, in *Legi-Tech*, Legi-Tech argued that the FEC's prosecution should be dismissed because the FEC had been unconstitutionally structured at the time it issued the complaint. The court rejected Legi-Tech's argument. After the FEC had commenced its prosecution of Legi-Tech, the court issued its decision in *NRA Political Victory Fund*, and, as a result of that decision, the FEC was restructured to comply with the Constitution. The FEC then voted to ratify its complaint against Legi-Tech.[20] The court held that, to the extent Legi-Tech had been subject to any prejudice as a result of the unconstitutionality of the FEC's structure at the time the complaint was issued,

---

[19] *See FEC v. Legi-Tech, Inc.*, 75 F.3d 704, 708 (D.C. Cir. 1996).

[20] *Id.* at 706.

ratification adequately addressed that prejudice.[21] The same would be true here were this Court to sever the for-cause removal provision from the CFPA and provide the Director an opportunity to ratify the CID—this would address any prejudice that CEHE might have suffered.

Additionally, in *Legi-Tech*, the court observed that, unlike CEHE here, "not even Legi-Tech dares request" dismissal with prejudice.[22] Granting such relief—thereby potentially precluding the Bureau from using compulsory process to investigate its conduct, and potentially making it more difficult, or even impossible, for the Bureau to challenge any violations of the Federal consumer financial laws by CEHE—would be an unjustified windfall for the colleges, and a misfortune for any consumers that they may have injured.

Finally, CEHE suggests that this Court should stay its ruling pending the Supreme Court's decision in *Seila Law*. But this Court need not wait in this summary CID-enforcement proceeding to resolve the constitutional question. An issue being raised before the Supreme Court does not preclude a lower court from addressing the same issue in a different case.[23] So, if this Court severs the CFPA's

---

[21] *Id.* at 709.

[22] *Id.* at 708.

[23] *See SEC v. Team Res. Inc.*, 942 F.3d 272, 274 (5th Cir. 2019); *Spokas v. Am. Family Mut. Ins. Co.*, 2015 WL 3948098 (D. Colo. 2015) (resolving issue of state law even though the same issue was pending before the state supreme court).

for-cause removal provision and gives the Director—who would then be fully

accountable to the President—the opportunity to ratify the CID, CEHE would have

received complete relief for the constitutional violation.

**Conclusion**

The Bureau's CID is enforceable because it seeks relevant information within

the scope of its investigative authority and doesn't impose an undue burden on

CEHE to comply. CEHE's arguments to the contrary are meritless. This Court

should enforce the Bureau's CID without further delay.

Respectfully submitted,

Cara Petersen
*Acting Enforcement Director*
Jeffrey Paul Ehrlich
*Acting Principal Deputy Enforcement Director*
Michael G. Salemi
*Acting Deputy Enforcement Director*
Owen Martikan
*Assistant Litigation Deputy*

s/ John Thompson
Benjamin Konop (OH Bar No. 0073458)
Telephone: (202) 435-7265
E-mail: benjamin.konop@cfpb.gov
John Thompson (NM Bar No. 139788)
Telephone: (202) 435-7270
E-mail: john.thompson@cfpb.gov
Bureau of Consumer Financial Protection
1700 G Street, NW
Washington, DC 20552
Facsimile: (202) 435-5477
*Attorneys for Petitioner Bureau of Consumer*
*Financial Protection*

12

## Certification of Word Count

As required by LR DUCIVR 7-1(b)(2)(C), I certify that the document contains

2,489 words, excluding the parts of the document that are exempted.

I declare under penalty of perjury that the foregoing is true and correct. Executed

on January 15, 2020.


   s/ John Thompson
JOHN THOMPSON

## Certificate of Service

I hereby certify that on January 15, 2020, I served the foregoing document via the court's CM/ECF electronic filing system to all counsel of record, including the following:

Paul W. Shakespear pshakespear@swlaw.com
Steven M. Gombos gombos@glpclaw.com
David A. Obuchowicz dobuchowicz@glpclaw.com
Jacob C. Shorter jshorter@glapclaw.com

    s/ John Thompson
JOHN THOMPSON