Paul W. Shakespear (14113)
SNELL & WILMER (UT)
15 W. South Temple, Ste. 1200
Gateway Tower West
Salt Lake City, Utah 84101
Telephone: (801) 257-1900
Email:  pshakespear@swlaw.com

Steven M. Gombos (*pro hac vice*)
David A. Obuchowicz (*pro hac vice*)
Jacob C. Shorter (*pro hac vice*)
GOMBOS LEYTON, P.C.
11350 Random Hills Road
Suite 400
Fairfax, VA 22030
Telephone: (703) 934-2660
Email:  sgombos@glpclaw.com
              dobuchowicz@glpclaw.com
              jshorter@glpclaw.com

Attorneys for Respondent Center for Excellence in Higher Education, Inc.

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH

| | |
|---|---|
| CONSUMER FINANCIAL PROTECTION BUREAU,<br><br>     PETITIONER,<br><br>vs.<br><br>CENTER FOR EXCELLENCE IN HIGHER EDUCATION,<br><br>     RESPONDENT. | **RESPONDENT'S OBJECTIONS TO MAGISTRATE JUDGE ROMERO'S REPORT AND RECOMMENDATION (ECF DKT. NO. 46)**<br><br>CASE NO. 2:19-CV-00877-DB-CMR<br><br>JUDGE DEE BENSON<br><br>MAGISTRATE JUDGE CECILIA M. ROMERO |

Respondent Center for Excellence in Higher Education (CEHE) respectfully submits the following objections to Magistrate Judge Romero's April 20, 2022 Report and Recommendation (ECF Dkt. No. 46).

### Introduction

Magistrate Judge Romero issued an order on April 20, 2022, enforcing a civil investigative demand (CID) issued to CEHE three years earlier. In the three-year interim, significant events have occurred that further undermine the reasonableness of the CID and further confirm that the Consumer Financial Protection Bureau (CFPB) issued the CID for improper purposes. And concerns about the CFPB's constitutionality remain. For those reasons, the Court should reverse Magistrate Judge Romero's report and recommendation and decline to enforce the CID. Moreover, even if the CID is upheld, Magistrate Judge Romero's order to submit for testimony within 30 days—i.e., by May 18, 2022—is unreasonable. Given the time that has elapsed since the CID's issuance in 2019, any witness preparation or other factual and legal analysis conducted before the matter was taken under advisement will have to be revisited if not fully redone.

### Background

The CFPB issued the CID on April 19, 2019, demanding testimony from CEHE on two topics. *See* Exhibit A to ECF Dkt. No. 2-3. The first topic concerned CEHE's private student loan programs dating back to 2012. At the time the CID issued, CEHE operated four private, nonprofit colleges consisting of fifteen physical campuses and one online college. ECF Dkt. No. 16, Ex. 1, Declaration of Eric Juhlin. CEHE offered students a form of private loan, which CEHE called

EduPlan, when federal grants and loans were unavailable or failed to cover the full cost of attendance. *Id.*

The second topic concerned litigation involving CEHE's student-loan program since 2012. In December 2012, the Colorado Office of the Attorney General served the first of two subpoenas on CEHE seeking records related to CEHE's Colorado colleges (which did business as CollegeAmerica). *Id.* at 2-3. After a two-year investigation, the Colorado Attorney General filed a complaint alleging violations of two Colorado statutes. The result was a four-week trial in 2017, which included 48 witnesses and 366 exhibits. *Id.* at 3. A primary theory of the state's case at trial was that CEHE's loan program was unconscionable. In other words, Colorado's case pursued the same issue as the CFPB's CID. In fact, one of Colorado's expert witnesses, who testified about CEHE's private-loan program, was Rohit Chopra—the CFPB's former student loan ombudsman. *Id.*

Mr. Chopra was not the only link with the CFPB. During the course of the state litigation, the Colorado Office of the Attorney General violated a court order by providing sealed documents to the CFPB. *Id.* at 3-4. After discovering that it violated the protective order, the Colorado Office of the Attorney General waited days to disclose the violation to CEHE, during which time the CFPB issued its CID. *See* ECF Dkt. No. 16, Ex. 1, Declaration of Eric Juhlin. The violation was serious enough that the state court ordered the Colorado Office of the Attorney General to disclose its correspondence with the CFPB related to the improper disclosures.

The parties met and conferred after the CFPB issued its CID. During the course of those discussions, the CFPB claimed that it had received numerous

2

complaints against CEHE. Because there were no complaints against CEHE on the CFPB's public complaint database, CEHE representatives asked CFPB counsel for any details that might allow CEHE to prepare to testify. Counsel for the CFPB refused to provide any information—about the dates of any complaints, about the subject matter, or about any other detail—and stated the CFPB maintained a secret complaint database it would not permit CEHE to review. ECF Dkt. No. 46 at 3.

When the informal meet-and-confer process proved unsuccessful, CEHE filed an administrative petition with the CFPB to modify or set aside the CID. The CFPB denied that petition and CEHE informed the CFPB it would not appear for the hearing absent a court order. ECF Dkt. No. 46 at 3.

The CFPB filed a petition to enforce the CID on November 8, 2019. ECF Dkt. No. 2. On December 12, 2019, CEHE filed its response, raising three primary arguments—(1) that the CFPB was unconstitutionally structured and the CID thus unenforceable, (2) that the CID was unreasonably oppressive, and (3) that the CID was issued for an improper purpose. *See* ECF Dkt. No. 16.

On April 20, 2022, the magistrate judge recommended that the CFPB's petition to enforce be granted in part and denied in part. ECF Dkt. No. 46 at 12. While Magistrate Judge Romero recommended "that the Petition be [granted] as to information concerning CEHE's private-student-loan program," she recommended that it be denied "as to information regarding any previous litigation in which CEHE has been a party since 2012." *Id.* Magistrate Judge Romero further recommended that CEHE be ordered to submit to the CID within 30 days. *Id.*

3

In the three-year interim between the issuance of the CID and the magistrate judge's report, three significant events have occurred. First, on or about August 1, 2021, CEHE closed the four colleges it previously operated. Second, the Colorado state court concluded that CEHE's loan program was not unconscionable, and the Colorado Court of Appeals denied the Attorney General's request to reverse that decision.[1] Finally, after testifying against CEHE as an expert witness during the Colorado state court action, Rohit Chopra is now the CFPB's Director, creating a clear impartiality concern.

## Standard of Review

A litigant may object to a magistrate judge's report and recommendation within 14 days after being served. Under Federal Rule of Civil Procedure 72(b)(3),[2] if a party timely files objections to a magistrate judge's recommendation, the district court must make a *de novo* determination of the magistrate judge's recommended disposition. *See* F.R.C.P. 72(b)(3).

## Argument

1. **The CFPB's structure violates the Constitution by shielding the CFPB from the congressional appropriations process.**

When Congress created the CFPB, it "took unprecedented steps to insulate the CFPB against control by the elected branches." *CFPB v. All American Check*

---

[1] The Colorado Office of the Attorney General filed a petition for writ of certiorari in November 2021, which remains pending with the Colorado Supreme Court.

[2] Magistrate Judge Romero's recommendation to enforce the CID is a dispositive motion subject to *de novo* review under Rule 72(b)(3). *See* ECF Dkt. No. 22 (referring case for report and recommendation on all dispositive matters).

*Cashing, Inc.*, No. 18-60302 at 8 (May 2, 2022) (*en banc*) (Jones, J. concurring). It freed the CFPB from political accountability by restricting presidential removal of the CFPB Director except for cause. *See Seila Law LLC v. CFPB*, 140 S.Ct. 2183 (2020). And the enacting Congress also precluded future congressional oversight of the CFPB by exempting it from the ordinary congressional appropriations process. 12 USC §§ 5497(a)(1); *id.* at (2)(A)(iii). The CFPB instead receives its annual funding from the Federal Reserve Board. *Id.* By design then, the CFPB was placed beyond the reach of any elected branch. *See* ECF Dkt. No. 16 at 9 (citing *PHH Corp. v. CFPB*, 881 F.3d at 75, 137-38 (D.C. Cir. 2018) (*en banc*) (Henderson, J., dissenting)).

In *Seila Law LLC v. CFPB*, 140 S.Ct. 2183 (2020), the Supreme Court held that this first step to insulate the CFPB was unconstitutional. The CFPB's leadership by a single director protected from presidential removal except for cause violated the separation of powers. *Id.* at 2211. While the CFPB's for-cause removal provision was unconstitutional, the Supreme Court held that it was severable from the Consumer Financial Protection Act. In other words, the CFPA was upheld with the offending for-cause provision removed. *Id.* at 2211. Later, in a case raising the same general issue, the Supreme Court held that actions taken by the director of an unconstitutionally structured agency were not void *ab initio*. *See Collins v. Yellen*, 141 S.Ct. 1761, 1787 (2021) (distinguishing the remedy for an unconstitutional removal protection from other separation of powers violations).

The CFPB's exclusion from the congressional appropriations process was not addressed in either *Seila Law* or *Collins*. Yet it raises no less serious concerns about

the CFPB's structure. Joined by four other judges on the Fifth Circuit, Judge Edith Jones made the point powerfully just this week: "No executive agency with broad legislative, adjudicative, and law-enforcement powers has ever enjoyed complete funding independence." *All American Check Cashing, Inc.*, No. 18-60302 at 13 (May 2, 2022) (*en banc*) (Jones, J. concurring) ("[T]he CFPB's funding structure is wholly unprecedented.").

Our Constitution gives Congress the power of the purse. The Appropriations Clause is the cornerstone of this power, and it vests Congress with the authority to control public spending through the appropriations process. U.S. Const. Art. I, § 9, cl. 7 ("No Money shall be drawn from the Treasury, but in Consequence of Appropriations made by Law."); *see also Seila Law*, 140 S.Ct. at 2203 (citing The Federalist No. 58 to describe the "power over the purse" as the "'most compleat and effectual weapon' in  representing the interests of the people").[3] Exempting the CFPB from the appropriations process improperly frees it from congressional control. *See All American Check Cashing, Inc.*, No. 18-60302 at 28-29 (Jones, J. concurring) (collecting examples where the CFPB has snubbed efforts by legislators to seek "an accounting of the CFPB's spending and policies").

Given that CFPB's funding mechanism violates the separation of powers, the appropriate remedy is to dismiss the CID. *See All American Check Cashing, Inc.*, No. 18-60302 at 43. In *Collins*, the Supreme Court held that the actions of a properly

---

[3] *See also U.S. Dep't of Navy v. FLRA*, 665 F.3d 1339, 1347 (D.C. Cir. 2012) (Kavanaugh, J.) ("The power over the purse was one of the most important authorities allocated to Congress in the Constitution's 'necessary' [separation of powers].").

appointed director do not become void because the statute "unconstitutionally limited the President's authority to remove" the director. 141 S.Ct. at 1787 (distinguishing remedy in removal clause cases from remedy in appointments clause cases). But *Collins* is inapplicable to the separation of powers problem arising from the CFPB's exclusion from the appropriations process. "An agency's funding is the very lifeblood that empowers it to act. Thus, much like Appointments Clause cases, and others, the separation of powers problem flowing from the CFPB's budgetary independence concerns the CFPB's power to act." *All American Check Cashing, Inc.*, No. 18-60302 at 42 (en banc) (Jones, J., concurring). Dismissal of the CID is appropriate here "because the CFPB lacked authority to use the funds necessary to pursue the enforcement action against [CEHE]." *Id.; see also FEC v. NRA Political Victory Fund*, 6 F.3d 821, 822 (D.C. Cir. 1993).

2. **Recent events further demonstrate the CID was issued for an improper purpose and is unreasonably oppressive.**

In the multi-year interim between the CFPB's issuance of the CID and Magistrate Judge Romero's report, CEHE's circumstances have significantly changed. Last August, CEHE closed its colleges. CEHE currently has approximately 15 employees; it employed approximately 1,900 people when the CFPB issued the CID. *See* Ex. 1, Declaration of Matthew Gerber. As a result, CEHE has lost significant institutional knowledge. Departed employees possessed relevant information about EduPlan's creation, development, and implementation.

Under these changed circumstances,[4] the CID is overly burdensome, even as limited by Magistrate Judge Romero. *See* ECF Dkt. No. 46 (finding the CID overly burdensome and narrowing the CID's scope to only the first topic). The CFPB has offered no explanation for such wide-reaching investigation of conduct fully litigated in a prior proceeding and far beyond the CFPB's own statute of limitations. Even if agencies "have the power to investigate purely because they want assurance that the law is not being violated," ECF Dkt. No. 46 at 9 (citing *U.S. v. Morton Salt Co.*, 338 U.S. 632, 643-44 (1950)), an investigative demand must not be unreasonable or excessive, which depends on "the nature, purposes, and scope of the inquiry," *Oklahoma Press Pub. Co. v. Walling*, 327 U.S. 186, 209 (1946).

Here, the CFPB has offered no explanation for investigating CEHE's private-loan programs dating back to 2012. And the fact the current CFPB Director served as an expert witness and testified about CEHE's private-loan program in the Colorado state action belies the notion that additional information will aid the CFPB in assessing whether CEHE's private-loan program complied with the law.[5] The CID is punitive—not informative.

Moreover, the CID is overly burdensome in view of the final decision in the Colorado state court action. At the close of the four-week trial, the Colorado district

---

[4] *See Stephens v. Tolbert*, 471 F.3d 1173, 1175-1177 (11th Cir. 2006) (concluding that the district court may consider new arguments and evidence not presented to the magistrate judge).

[5] In the event the Court accepts Magistrate Judge Romero's recommendation, CEHE respectfully asks that the Court enter an order excluding Director Chopra from direct or indirect involvement in the CFPB's investigation of CEHE based on his prior role as an expert witness against CEHE.

court identified findings related to 14 named students who took out EduPlan loans but rejected Colorado's claim that the EduPlan program was unconscionable.[6] The Colorado Office of the Attorney General later appealed the district court's decision, seeking to reverse the district court's finding that CEHE's EduPlan loans were not unconscionable, which the Colorado Court of Appeals denied. *See Colorado v. CEHE*, 2021 COA 117, ¶¶ 9, 13, 90-116 (Colo. Ct. App. 2021).

In its decision rejecting CEHE's petition to set aside the CID, the CFPB cast aside CEHE's entitlement to finality at the completion of the Colorado litigation, deeming those concerns "speculative." *See* ECF Dkt. No. 2-3 at ECF pg. 57. But those concerns are no longer speculative given the status of the Colorado litigation. To the extent the CID seeks testimony about CEHE's EduPlan program, which has been litigated in the Colorado action, the CID is overly burdensome.

The significant events that have occurred in the interim between the CFPB issuing the CID and Magistrate Judge Romero's report support setting aside or further limiting the CID. At a minimum, CEHE ask that the Court limit the CID to the time period after the close of evidence in the Colorado trial—i.e., after 2017.

---

[6] The Colorado district court ordered CEHE to forgive any remaining EduPlan loan balance and remit payments received from 14 named students. *See Colorado v. CEHE*, 2021 COA 117, ¶¶ 115 (Colo. Ct. App. 2021). CEHE remitted payment and forgave any remaining balance for each named student.

**3.    If the Court enforces the CID, it should allow CEHE sufficient time to prepare.**

Even if the Court enforces the CID, it should decline Magistrate Judge Romero's recommendation that CEHE be ordered to respond to the CID within 30 days. Given the time that has elapsed since the CID's issuance in 2019, any witness preparation conducted before the matter was taken under advisement will have to be revisited if not fully redone. Moreover, given the substantial turnover in CEHE's staff since the closure of its colleges, preparing for testimony now will be more burdensome than it would have been when the CFPB first issued the CID. If the Court enforces the CID, CEHE asks that the Court provide 90 days from entry of any order to comply.

**Conclusion**

CEHE respectfully asks that the Court decline Magistrate Judge Romero's Report and Recommendation and instead issue an order dismissing the CID. In the alternative, CEHE asks that the Court limit the CID's scope to the time frame occurring after the close of the evidence in the Colorado litigation—i.e., 2017 or after.

Dated: May 4, 2022

SNELL & WILMER L.L.P.

_____
Paul W. Shakespear

GOMBOS LEYTON, P.C.

 /s/ Jacob C. Shorter
Steven M. Gombos

10

David A. Obuchowicz
Jacob C. Shorter

*Counsel for Respondent Center for Excellence in Higher Education, Inc.*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on May 4, 2022, I served the foregoing document via the court's CM/ECF electronic filing system to all counsel of record.

/s/ Jacob C. Shorter
JACOB C. SHORTER